**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HUGHES RIVER FM, LLC, a Delaware limited liability company, individually, and derivatively on behalf of XIMALAYA, INC., <br><br> Plaintiff, <br><br> v. <br><br> XIMALAYA, INC., a Cayman Islands corporation, YU JIANJUN, an individual, SEAMAN YU, an individual, XIAOYU CHEN, an individual, LI HAIBO, an individual, and TENCENT MUSIC ENTERTAINMENT GROUP, INC., a Cayman Islands corporation, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:25-cv-06217 <br><br> **PLAINTIFF DEMANDS TRIAL BY JURY** |

**<u>AMENDED COMPLAINT</u>**

Plaintiff, HUGHES RIVER FM, LLC, by and through its undersigned attorney, complains against Defendants, XIMALAYA, INC., YU JIANJUN, SEAMAN YU, XIAOYU CHEN, LI HAIBO, and TENCENT MUSIC ENTERTAINMENT GROUP, INC., as follows:

### I. <u>The Parties And Others</u>

1. Plaintiff, HUGHES RIVER FM, LLC ("Hughes River"), is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 1100 Jensen Road, Lake Forest, Illinois 60045. Hughes River has been a shareholder at Ximalaya at all relevant times. Kai Jiang is the sole manager and

1

member of Hughes River, a citizen of the State of Illinois, and resides in this judicial district.

2. Defendant, XIMALAYA, INC. ("Ximalaya" or the "Company"), is a corporation organized and existing under the laws of the Cayman Islands, with its registered agent located at c/o Maples Corporate Services Limited, PO Box 309, George Town, KY1-1104, KY, and its principal place of business is located at Building 1-2, Guochuang Centre III, No. 799 Dangui Road, Zhangjiang, Pudong New Area, Shanghai, the People's Republic of China. Ximalaya is privately owned, and its stock is privately traded.

3. Ximalaya has several stockholders who are citizens and residents of the State of Illinois, including, but not limited to, Goldman Sachs (Chicago), Sierra Ventures (Chicago and Champaign), and CCV Capital (Chicago).

4. Ximalaya is a leading online audio platform. It offers a diverse range of user-generated content, including audiobooks, podcasts, radio shows, and more. Founded in 2012, it has quickly grown to be the largest online audio platform in China, boasting over 600 million subscribers and users, including individuals located in the U.S., the State of Illinois, and this judicial district.

5. Ximalaya's media platform is available to subscribers in the State of Illinois and this judicial district. The app can be downloaded from the App Store (for iOS devices) and Google Play (for Android devices). Podcasts, Audiobooks, and Educational content, primarily in the

2

Mandarin dialect, are available to subscribers in the State of Illinois and this judicial district. There are also approximately 5,000,000 content creators for Ximalaya located around the world, including, upon information and belief, in the State of Illinois and this judicial district. Ximalaya is doing business in the State of Illinois, but has not registered with the Illinois Secretary of State to do business in the state.

6. Defendant, YU JIANJUN, is an individual and citizen of the People's Republic of China. Yu Jianjun is a member of the Board of Directors and the Founder and Chief Executive Officer ("CEO") of Ximalaya. Yu Jianjun has communicated with Hughes River, through its manager, Kai Jiang, here in the State of Illinois, and in this judicial district, regarding Hughes River's investment in Ximalaya. Hughes River also made efforts on behalf of Ximalaya, through Yu Jianjun, to expand its global reach and enhance its business in the United States and the State of Illinois.

7. Defendant, SEAMAN YU, is an individual and a citizen of the People's Republic of China. Seaman Yu is a member of the Board of Directors and the Co-CEO of Ximalaya.

8. Defendant, XIAOYU CHEN, is an individual and citizen of the People's Republic of China. Xiaoyu Chen is a member of the Board of Directors and the Co-CEO of Ximalaya. (Yu Jianjun, Seaman Yu, and Xiaoyu Chen are referred to collectively herein as the "Officers").

9. Defendant, LI HAIBO, is an individual and citizen of the People's Republic of China.  Li Haibo is a member of the Board of Directors of Ximalaya.

(Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo are referred to collectively herein as the "Board of Directors").

10. Defendant, TENCENT MUSIC ENTERTAINMENT GROUP, INC ("Tencent"), is a corporation organized and existing under the laws of the Cayman Islands, with its registered agent located at c/o Maples Corporate Services Limited, PO Box 309, George Town, KY1-1104, KY, and its principal place of business located in Unit 3, Building D, Kexin g Science Park, Kejizhongsan Avenue, Hi-Tech Park, Nanshan District, Shenzen, 518057, the People's Republic of China.

11. Tencent, whose stock trades on the New York Stock Exchange (NYSE) under the symbol TME, is China's leading online music and audio entertainment platform. It operates globally through a portfolio of highly popular and innovative music apps, such as QQ Music, Kugou Music, Kuwo Music, and WeSing, all of which are available for purchase to users in the United States, the State of Illinois, and this judicial district.

12. Upon information and belief, there are thousands of subscribers or users of Tencent's media content located here in the State of Illinois and this judicial district. Several State of Illinois pension plans, including the Illinois State Teachers Retirement System, Chicago Policemen's Annuity and Benefit Fund, Chicago Firefighters' Annuity and Benefit Fund, and the Illinois State Board of Investment, all based in the State of Illinois, have acquired and hold direct investments in the stock of Tencent.

4

13. Tencent has a market capitalization exceeding 4.76 trillion USD and has over 9 billion outstanding shares of stock, which are traded publicly in the State of Illinois and this judicial district.

14. Tencent is doing business in the State of Illinois, but has failed to register with the Illinois Secretary of State.

## II. Jurisdiction And Venue

15. This Court has subject matter jurisdiction of this action under *28 U.S.C. §§ 1331 and 1337*, and the Exchange Act Section 27; *15 U.S.C § 78aa*.

16. This Court also has subject matter jurisdiction of the state law claims set forth herein under *28 U.S.C. § 1332*, as the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs. Ximalaya should be realigned according to its real interests as a Defendant, as it is under the complete control of its Board of Directors, Defendants Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo, and Ximalaya has failed to act.

17. This Court has personal jurisdiction over Ximalaya because, at all relevant times, it has been regularly conducting business in the State of Illinois and this judicial district. In addition, the sale of stock in Ximalaya to Hughes River set forth herein either occurred in, or is substantially connected with, the State of Illinois and this judicial district, and the Merger at issue is with Tencent, whose securities are traded on the New York Stock Exchange. Shares of Tencent stock are traded and owned by shareholders located in the State of Illinois and this judicial district.

Moreover, as set forth herein, Ximalaya has committed a tort in the State of Illinois and this judicial district. *(735 ILCS 5/2-209(1) & (2)).*

18. This Court has personal jurisdiction over Tencent because, at all relevant times, it has been regularly conducting business in the State of Illinois and this judicial district through the trading of its shares on the New York Stock Exchange and the purchase and sale of its stock in the State of Illinois and this judicial district. Tencent also operates globally through a portfolio of highly popular and innovative music apps, including QQ Music, Kugou Music, Kuwo Music, and WeSing, all of which are, upon information and belief, available to purchasers in the United States, the State of Illinois, and this judicial district.

19. In addition, the conduct of Tencent as set forth herein constitutes the commission of a tort in the State of Illinois. *(735 ILCS 5/2-209(1) & (2)).*

20. The Court has personal jurisdiction over Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo as they have committed a tort, as set forth herein, in the State of Illinois and this judicial district. (735 ILCS 5/2-209(2)). In addition, as members of the Board of Directors of Ximalaya and Officers of Ximalaya, they have performed and controlled all of the unlawful actions and other conduct as set forth herein, as Ximalaya, a corporation, can only act through individuals.

21. Venue is proper in this judicial district under *28 U.S.C. § 1391(b)* and Section 27 of the Exchange Act *(15 U.S.C. § 78aa(c)).* As set forth herein, substantial acts in furtherance of the claims have occurred in this judicial

district, and Ximalaya and Tencent are doing business in this judicial district.

22. The venue is also proper in this judicial district under *28 U.S.C. § 1391(b)*. As reflected in the Amended Complaint, substantial acts on the part of the Defendants in furtherance of the merger between Ximalaya and Tencent and the alleged torts have occurred in this judicial district, and they are doing business in this judicial district. Many of the acts set forth herein have occurred substantially in this judicial district. Finally, as they are all foreign corporations and citizens, venue is proper over the Defendants in any judicial district, including this judicial district.

### III.   Allegations Common To All Counts

### A. The Ximalaya Acquisition

23. On or about June 5, 2017, in consideration for 200,000,000 RMB (200 million RMB equals 32,258,064.50 USD), Hughes River acquired 5,078,577 shares of the preferred stock of Ximalaya from the founder of Ximalaya, who, upon information and belief, was acting on behalf of Ximalaya in the sale of shares. (the "Ximalaya Acquisition").

24. In 2021, when Ximalaya was preparing to list its stock on a United States-based stock exchange, its valuation was 5.3 billion USD. Prior to its planned listing in the United States, Tencent had proposed to acquire Ximalaya for USD 4 billion, but Yu Jianjun, the CEO of Ximalaya, rejected the offer on behalf of Ximalaya.

25. Ximalaya's revenues were 2.697 billion RMB in 2019, 4.076 billion RMD in 2020, and 5.856 billion RMB in 2021.

26. From the fourth quarter of 2022 to the end of 2024, Ximalaya achieved continuous profitability, with revenues of 6.060 billion RMB in 2022, 6.163 billion RMB in 2023, and profits of 230 million RMB. In 2024, revenues reached 6.528 billion RMB, accompanied by profits of 520 million RMB.

27. In 2024, Ximalaya initiated the process of going public by obtaining a listing on the Hong Kong Stock Exchange, but subsequently abandoned those efforts to engage in the Merger with Tencent.

28. The Board of Directors of Ximalaya is now preparing to proceed with the sale of Ximalaya's assets at an acquisition price of 2.4 billion USD, which is approximately 40% of Ximalaya's peak valuation. The Board of Directors' move is tantamount to forcing its shareholders, including Hughes River, to sell their shares of stock in Ximalaya at a price less than half of fair value for cash.  (the "Merger").

B. **The Merger With Tencent**

29. On April 16, 2025, Ximalaya sent a form entitled "Election To Receive Portion Of Cash Consideration in TME Ordinary Shares" by email to Hughes River in this judicial district notifying it that Tencent was acquiring Ximalaya, and offering Hughes River the choice of either accepting the proceeds of the forced sale of its stock at 5 USD per share for a total of 24,750,390 USD, in either 1) a combination of cash and securities or, 2) all cash. ("Failure to return the completed slip by the deadline will be deemed as a **waiver** of your election right, and you will receive **100% of your consideration in cash**.") ("Election Form") (emphasis in original) (A

true and correct copy of the April 16, 2025, Election Form is attached hereto as Exhibit "A" and made a part hereof.).

30. At the same time, the Board of Directors, CEO, Officers, and certain senior management of Ximalaya, including Yu Jianjun, agreed with Tencent to sell their shares in Ximalaya to Tencent for **10 USD per share, a 5 USD premium** over what Ximalaya was paying Hughes River and its other shareholders for their shares.

31. Upon information and belief, the Board of Directors of Ximalaya did not engage an independent or special committee or independent board of directors to consider the approval of the terms of the Merger.

32. The Board of Directors and Officers of Ximalaya all own significant numbers of shares of stock in Ximalaya and, therefore, have a conflict of interest in considering, approving, and accepting the terms of the Merger, especially because of the disparate offer by Tencent intended to induce the Founder and CEO, Yu Jianjun, the Board of Directors and its Officers to agree to the patently unfair terms of the Merger.

33. Unbeknownst to Hughes River and the other Ximalaya shareholders, the live streaming and educational segments of Ximalaya were not being sold to Tencent as part of the terms of the Merger.

34. Nothing in the Election Form informed Hughes River that the Merger would exclude Ximalaya's live streaming and educational segments of the business, which, unbeknownst to Hughes River, were owned solely by Yu Jianjun, the Founder and CEO of Ximalaya, or an entity that he owns and/or controls. (the "Excluded Assets").

35. Nothing in the Election Form informed Hughes River that, under the terms of the Merger, Tencent would pay 10 USD per share for the shares owned by Yu Jianjun, Ximalaya's Board of Directors, the Officers, and certain other senior management of Ximalaya. At the same time, Hughes River would only receive 5 USD per share as a result of the Merger.

36. The terms of the Merger, including the share price of USD 10 being paid by Tencent to the Board of Directors and Officers and certain other members of senior management of Ximalaya, and the share price of 5 USD to Ximalaya's other shareholders, were approved by the Board of Directors of Ximalaya, namely Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo.

37. Ximalaya has made multiple external investments. The fair value of these external investments has not been disclosed to Ximalaya's shareholders, including Hughes River, in the Election Form or otherwise. It is not included in the 5 USD being paid to the shareholders of Ximalaya by Tencent.

38. Believing that 5 USD for each of the preferred shares in Ximalaya was well below fair value, Hughes River, dissenting to the Merger terms, did not sign and return the Election Form.

39. Despite its patently unfair terms, Ximalaya, its Board of Directors and Officers, and Tencent intend to proceed with the Merger, with an anticipated closing date in late Fall 2025.

40. On June 9, 2025, a shareholders' meeting of Ximalaya was held to vote on the acquisition of Ximalaya by Tencent. Hughes River was not invited

or notified to attend the meeting. By doing so, Ximalaya and the Board of Directors directly deprived Hughes River of its voting rights.

## C. Demand Futility

41. It would be futile for Hughes River to make a demand upon Ximalaya to bring suit against its Founder and CEO, Yu Jianjun, its Board of Directors, Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo, and its Officers for the conduct and actions set forth herein. These individuals are responsible for the actions set forth in this Amended Complaint, and it is therefore a virtual certainty that they would not commence a lawsuit against themselves, as it is not in their financial interest to do so.

42. It would be futile for Hughes River to make a demand upon Ximalaya to bring suit against Tencent for the conduct and actions set forth herein. The Board of Directors and Officers are responsible for the actions set forth in this Amended Complaint, and it is therefore a virtual certainty that they would not commence a lawsuit against Tencent, who is aiding and abetting them in the tortious conduct set forth herein, as it is not in their financial interest to do so.

43. Hughes River was not informed of the merger between Ximalaya and Tencent until the merger had already been publicly announced.

44. Hughes River has not been invited to any meetings of Ximalaya's shareholders and has not been allowed to vote as a shareholder on the Merger.

45. This lawsuit is not a collusive action to confer jurisdiction that the

Court would otherwise lack.

## IV.     Claims

### FIRST CLAIM

### (Violation of the Federal Securities Exchange Act of 1934, *Rule 10(b)(5),17 CFR 240.10b5*-Hughes River FM, LLC, derivatively on behalf of Ximalaya, Inc.—Against Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo)

46. Plaintiff, Hughes River, derivatively on behalf of Ximalaya, Inc., repeats and realleges the allegations contained in Paragraphs 1 through 45 of the Amended Complaint as Paragraph 46 of the First Claim of the Amended Complaint as though actually set forth herein.

47. Rule 10b-5 prohibits any individual or entity from employing "any device, scheme, or artifice to defraud; (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) to engage any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

48. As alleged herein, Ximalaya's Board of Directors and its Officers engaged in a fraud and deceit against Ximalaya, and Ximalaya's shareholders, including Hughes River, when they omitted to state a material fact, namely, failing to timely disclose that the sale of Ximalaya's assets to Tencent, via the Merger, excluded certain assets of the Company, known as the entertainment and educational segments of

12

Ximalaya, and that there was a disparity in share price (10 USD v. 5 USD) being paid to the shareholders of Ximalaya by Tencent under the terms of the Merger.

49. The Excluded Assets are very valuable, and their exclusion resulted in a substantial and material loss in the fair value of Hughes Rivers' and other shareholders' shares in Ximalaya, and reduced the price offered by Tencent for the purchase of the shareholders' shares in Ximalaya.

50. By the Merger and its terms, Hughes River and other shareholders of Ximalaya who did not execute the Election Form are "forced sellers."

51. The forced seller doctrine provides an exception, granting standing to plaintiffs who, due to a merger, have had their interest in a security fundamentally changed, involuntarily, into a claim for cash or a fundamentally different security.

52. The failure to disclose the fact that the Excluded Assets were not part of the assets of Ximalaya being transferred to Tencent was material information that the shareholders of Ximalaya, including Hughes River, were entitled to know in connection with approving the Merger and completing the Election Form, but was not disclosed.

53. The failure to disclose to all of the shareholders of Ximalaya the disparity in the monies being paid to the insiders, namely, that the Board of Directors and Officers of Ximalaya would be paid 10 USD per share, and only 5 USD would be paid per share by Tencent to the other shareholders was material, and did not permit the shareholders to make an informed decision in connection with the Merger.

54. The fact that there was a disparity in share price being paid to the shareholders (10 USD v. 5 USD) was material information that the shareholders, including Hughes River, were entitled to have been informed by the Board of Directors and Officers at all relevant times, but were not.

55. As alleged herein, Ximalaya, Yu Jianjun, Seaman Yu, Xiaoyu Chen, also failed to include the multiple external investments and the fair value of the same in the amount being sought for the benefit of Ximalaya's shareholders, including Hughes River, from Tencent in connection with the Merger. The failure to disclose this fact, which was material, to its shareholders, including Hughes River, constitutes a violation of 10b-5 of the Exchange Act of 1934. (*17 CFR 240.10b5)*.

56. The failure on the part of the Board of Directors and Officers of Ximalaya to provide sufficient disclosures in connection with the Merger, such that a forced seller could make an informed decision, constitutes a violation of 10b-5 of the Exchange Act of 1934. (*17 CFR 240.10b5)*.

57. The Board of Directors and Officers of Ximalaya acted with scienter as they were fully aware of the Excluded Assets, lack of a fair valuation of the shares, and the disparity in compensation to be paid to them in comparison to the other shareholders, including Hughes River (10 USD v. 5 USD), and they acted in their own self-interest and not in an independent capacity and are as a result, wasting the assets of the Company and damaging its shareholders.

58. Hughes River and its shareholders relied upon the accuracy and completeness of the disclosures and the lack of any further disclosures made by Ximalaya and its Board of Directors in connection with the Merger.

59. Had the Board of Directors and Officers disclosed the information set forth herein to its shareholders, upon information and belief, the Merger would not have been approved by the shareholders of Ximalaya, and Hughes River and other shareholders, including Hughes River, would not have been involuntarily forced to sell their shares as a part of the Merger for cash.

60. As a direct and proximate result of the omissions of the Board of Directors and Officers, the shareholders of Ximalaya, including Hughes River, have sustained (and will sustain) damages in an amount in excess of $1,000,000,000, plus reasonable attorneys' fees, appraisal and expert fees, interest, and costs.

WHEREFORE, Plaintiff, HUGHES RIVER FM, LLC, derivatively on behalf of XIMALAYA, INC., respectfully requests this Court to enter judgment against Defendants, YU JIANJUN, SEAMAN YU, XIAOYU CHEN, and LI HAIBO, for compensatory damages in an amount in excess of $1,000,000,000, plus reasonable attorney's fees, expenses, interest and costs, as well as an Order of this Court voiding the Merger, and/or for such other and further relief as the Court deems necessary and/or appropriate under the circumstances.

## SECOND CLAIM

**(Breach of Fiduciary Duty-Hughes River FM, LLC, derivatively on behalf of Ximalaya, Inc.—Against Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo)**

61. Plaintiff, Hughes River FM, LLC, derivatively on behalf of Ximalaya, repeats and realleges the allegations set forth in Paragraphs 1 through 45 of the Amended Complaint as Paragraph 61 of the Second Claim of the Amended Complaint as though fully set forth herein.

62. At all relevant times, Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo owed fiduciary duties to Ximalaya, Hughes River and the other shareholders of Ximalaya of, among others, loyalty, honesty, and good faith.

63. At all relevant times, Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo owed fiduciary duties to Ximalaya, Hughes River and the other shareholders of Ximalaya of, among others, not to engage in self-dealing, not to act solely in their personal best interests, and not to act where they have a conflict of interest without involving an independent or special committee or an independent board of directors.

64. Ximalaya and its Board of Directors and Officers—comprising Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo—have a conflict of interest in assessing the fairness of the Merger, as Tencent will pay them twice as much per share (10 USD v. 5 USD) than the shares held by Hughes River and the other shareholders of Ximalaya.

16

65. As alleged herein, Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo breached the fiduciary duties they owed to Ximalaya, Hughes River and the other shareholders of Ximalaya in connection with the Merger and delivery of the Election Form by failing to disclose that substantial and material assets of Ximalaya, namely the entertainment and educational segments of Ximalaya, are owned by either Yu Jianjun, or an entity owned and controlled by Yu Jianjun, not Ximalaya itself, and that they will not be sold as a part of the sale to, or Merger with, Tencent. This amounts to a breach of the fiduciary duties of honesty, loyalty, and good faith and constitutes self-dealing on their parts.

66. The act of agreeing to arrange for the sale of the shares of Ximalaya owned by Hughes River and other shareholders to Tencent for 5 USD per share, while at the same time negotiating the sale of their shares to Tencent, and allowing themselves to be induced by Tencent, for 10 USD per share, also constitutes a breach of their fiduciary duties of honesty, loyalty and good faith, and constitutes self-dealing on the part of Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo, and is a breach of their duty not to act in the face of a conflict of interest.

67. As alleged herein, Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo also breached the fiduciary duties they owed to Ximalaya, Hughes River and the other shareholders of Ximalaya in connection with the Merger and delivery of the Election Form by failing to disclose to Hughes River and the other shareholders of Ximalaya that Ximalaya has made multiple external investments and that the fair value of these external

investments is intentionally not reflected in the 5 USD being paid to the shareholders of Ximalaya, including Hughes River, by Tencent. This amounts to a breach of the fiduciary duties of honesty, loyalty, and good faith and constitutes self-dealing on their parts.

68. As alleged herein, Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo also breached the fiduciary duties they owed to Hughes River in connection with the Merger by failing to include the multiple external investments and the fair value of the same in the amount being sought for the benefit of Hughes River from Tencent in connection with the Merger. This amounts to a breach of the fiduciary duties of honesty, loyalty, and good faith and constitutes self-dealing on their parts.

69. As a direct and proximate result of the breach of their fiduciary duties in the actions taken by Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo in the course of the Merger, Ximalaya has suffered damages in an amount in excess of $1,000,000,000.

WHEREFORE, Plaintiff, HUGHES RIVER FM, LLC, derivatively on behalf of XIMALAYA, INC., respectfully requests this Court to enter judgment against Defendants, YU JIANJUN, SEAMAN YU, XIAOYU CHEN, and LI HAIBO, for compensatory damages in an amount in excess of $1,000,000,000, plus reasonable attorneys' fees, interest and costs, as well as an Order of this Court voiding the Merger, and/or for such other and further relief as the Court deems necessary and/or appropriate under the circumstances.

**PLED IN THE ALTERNATIVE TO THE SECOND CLAIM**

**THIRD CLAIM**

**(Breach of Fiduciary Duty-Hughes River FM, LLC,—Against Ximalaya, Inc., Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo)**

70. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 45 of the Amended Complaint as Paragraph 70 of the Third Claim of the Amended Complaint as though fully set forth herein.

71. At all relevant times, Ximalaya, Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo owed fiduciary duties to Hughes River of, among others, loyalty, honesty, and good faith.

72. At all relevant times, Ximalaya, Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo owed fiduciary duties to Hughes River of, among others, not to engage in self-dealing, not to act solely in their personal best interests, and not to act where they have a conflict of interest without involving an independent or special committee or independent board of directors.

73. Ximalaya and its Board of Directors and Officers—comprising Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo—have a conflict of interest in assessing the fairness of the Merger, as Tencent will pay them twice as much (10 USD v. 5 USD) per share than the shares held by Hughes River to induce them to engage in a patently unfair Merger.

74. As alleged herein, Ximalaya, Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo breached the fiduciary duties they owed to Hughes River in

connection with the Merger and delivery of the Election Form by failing to disclose that those assets, namely the entertainment and educational segments of Ximalaya, that are owned by either Yu Jianjun, or an entity owned and controlled by Yu Jianjun, not Ximalaya itself, will not be sold as a part of the sale to, or merger with, Tencent. This amounts to a breach of the fiduciary duties of honesty, loyalty, and good faith and constitutes self-dealing on their parts.

75. The act of agreeing to arrange for the sale of the shares of Ximalaya owned by Hughes River to Tencent for 5 USD per share, while at the same time negotiating the sale of their shares to Tencent for 10 USD per share, also constitutes a breach of their fiduciary duties of honesty, loyalty and good faith, and constitutes self-dealing on the part of Ximalaya, Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo, and is a breach of their duty not to act in the face of a conflict of interest or commit corporate waste.

76. As alleged herein, Ximalaya, Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo also breached the fiduciary duties they owed to Hughes River in connection with the Merger and delivery of the Election Form by failing to disclose to Hughes River that Ximalaya has made multiple external investments and that the fair value of these external investments is intentionally not reflected in the 5 USD being paid to Hughes River by Tencent. This amounts to a breach of the fiduciary duties of honesty, loyalty, and good faith and constitutes self-dealing on their parts.

77. As alleged herein, Ximalaya, Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo also breached the fiduciary duties they owed to Hughes River in connection with the Merger by failing to include the multiple external investments and the fair value of the same in the amount being sought for the benefit of Hughes River from Tencent in connection with the Merger. This amounts to a breach of the fiduciary duties of honesty, loyalty, and good faith and constitutes self-dealing on their parts.

78. As a direct and proximate result of the breach of their fiduciary duties in the actions taken by Ximalaya, Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo in the course of the Merger, Hughes River has suffered damages in an amount in excess of $25,000,000.

WHEREFORE, Plaintiff, HUGHES RIVER FM, LLC, respectfully requests this Court to enter judgment against Defendants, XIMALAYA, INC., YU JIANJUN, SEAMAN YU, XIAOYU CHEN, and LI HAIBO, for compensatory damages in an amount in excess of $25,000,000, plus reasonable attorneys' fees, interest and costs, as well as an Order of this Court voiding the Merger, and/or for such other and further relief as the Court deems necessary and/or appropriate under the circumstances.

### FOURTH CLAIM

### (Violation of the Illinois Business Corporation Act, 805 ILCS 5/1, et seq. ("IBCA") Hughes River FM, LLC, derivatively on behalf of Ximalaya, Inc.- -Against Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo)

79. Plaintiff, Hughes River FM, LLC, derivatively on behalf of Ximalaya, Inc., repeats and realleges the allegations set forth in Paragraphs 1 through

21

78 of the Amended Complaint as Paragraph 79 of the Fourth Claim of the Amended Complaint as though fully set forth herein.

80. As set forth herein, Ximalaya is doing business in the State of Illinois, but has failed to register with the Illinois Secretary of State to do business in the state.

81. As set forth herein, the conduct of the Board of Directors, and each of them, constitutes corporate waste.

82. As set forth herein, none of the Board of Directors or Officers dissented to the Merger.

83. As set forth herein, each member of the Board of Directors and the Officers, held shares of stock in Ximalaya and, in approving the Merger, acted while having a conflict of interest, as they worked for their own self-interest and financial benefit, effectively ignoring the interests of the shareholders, including Hughes River.

84. As set forth herein, the Board of Directors, and each of them, including the Officers, behaved illegally, oppressively, and fraudulently, to the disadvantage of the shareholders of Ximalaya, including Hughes River.

85. As a direct and proximate result of the actions set forth herein, the shareholders of Ximalaya, including Hughes River, have suffered $1,000,000,000 in damages, plus reasonable attorneys' fees, expenses, interest, and costs.

86. By this Amended Complaint, Hughes River seeks the following relief under the IBCA:

22

A. Compensatory damages for the unlawful conduct of the Board of Directors and Officers as set forth herein;

B. The purchase by Ximalaya and the Board of Directors of the shares of stock in Ximalaya owned by Hughes River and other dissenting shareholders of Ximalaya at fair value;

C. The removal of the Board of Directors of Ximalaya and the replacement of the same with an Independent Board of Directors;

D. An injunction prohibiting the Merger from being consummated;

E. An Order of this Court voiding the Merger;

F. An Order of this Court requiring the Board of Directors of Ximalaya, and each of them, and the Officers to disgorge all of the unlawful profits obtained as a result of their unlawful behavior as set forth herein; and

G. Reasonable attorneys' fees, appraisal fees, expenses, and costs.

WHEREFORE, Plaintiff, HUGHES RIVER FM, LLC, derivatively on behalf of XIMALAYA, INC., respectfully requests this Court to enter judgment against Defendants, YU JIANJUN, SEAMAN YU, XIAOYU CHEN, and LI HAIBO, as follows:

A. Compensatory damages for the unlawful conduct of the Board of Directors and Officers as set forth herein;

B. The purchase by Ximalaya and the Board of Directors of the shares of stock in Ximalaya owned by Hughes River and other dissenting shareholders at fair value;

C. The removal of the Board of Directors of Ximalaya and the replacement of the same with an Independent Board of Directors;

D. An injunction prohibiting the Merger from being consummated;

E. An Order of this Court voiding the Merger;

F. An Order of this Court requiring the Board of Directors and the Officers of Ximalaya, and each of them, to disgorge all of the unlawful profits obtained as a result of their unlawful behavior as set forth herein;

G. Reasonable attorneys' fees, appraisal fees, expenses, and costs; and

H. Whatever other and further relief this Court deems necessary and/or appropriate under the circumstances.

## FIFTH CLAIM

## (Common Law Fraud-Hughes River FM, LLC—Against Ximalaya, Inc.)

87. Plaintiff, Hughes River FM, LLC, individually, repeats and realleges the allegations set forth in Paragraphs 1 through 45 of the Amended Complaint as Paragraph 87 of the Fifth Claim of the Amended Complaint as though fully set forth herein.

88. At the time it acquired the shares, Ximalaya failed to disclose to Hughes River that substantial and material assets, namely the entertainment and educational segments of Ximalaya, were owned either by Yu Jianjun or an entity owned or controlled by Yu Jianjun, and not Ximalaya itself (the "Excluded Assets").

24

89. Ximalaya intentionally failed to disclose the actual ownership of the Excluded Assets to Hughes River. Ximalaya intended the failure to make such a disclosure to deceive Hughes River into believing the entertainment and educational segments of Ximalaya's business were owned and controlled by Ximalaya.

90. The entertainment and educational segment of Ximalaya's business was material to the fair market value of its stock, including the preferred shares acquired by Hughes River in 2017, as set forth herein.

91. Hughes River relied upon the inclusion of the entertainment and educational segments of the business in Ximalaya when acquiring the preferred shares in 2017.

92. Had it known that the entertainment and educational segments of the business were not owned and controlled by Ximalaya, Hughes River would not have acquired the preferred shares in Ximalaya, or would have done so at a materially lower purchase price.

93. As a direct and proximate result of the fraudulent omission on the part of Ximalaya, Hughes River suffered damages in an amount in excess of $25,000,000 due to the loss in fair market value of the preferred stock due to the Excluded Assets.

94. Hughes River did not learn of the facts set forth herein constituting fraud until recently.

95. Even with the exercise of due diligence, Hughes River would not have been able to learn of the facts set forth herein, which constitute fraud, until recently.

25

WHEREFORE, Plaintiff, HUGHES RIVER FM, LLC, respectfully requests this Court to enter judgment against Defendant, XIMALAYA, INC., for compensatory damages in an amount in excess of $25,000,000, plus punitive damages in an amount sufficient to punish and deter Ximalaya, Inc. from engaging in such misconduct in the future, reasonable attorney's fees, expenses, interest and costs and for such other and further relief as the Court deems necessary and/or appropriate under the circumstances.

## SIXTH CLAIM

### (Conversion-Hughes River FM, LLC, derivatively on behalf of Ximalaya, Inc.—Against Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo,)

96. Plaintiff, Hughes River FM, LLC, derivatively on behalf of Ximalaya, repeats and realleges the allegations set forth in Paragraphs 1 through 46 of the Amended Complaint as Paragraph 96 of the Sixth Claim of the Amended Complaint as though fully set forth herein.

97. The Merger contemplates the involuntary conversion of the shares of stock of Ximalaya held by its shareholders, including Hughes River, into cash.

98. In entering into the Merger, the Board of Directors and Officers have exercised dominion and control over the shares of stock owned by Ximalaya's shareholders, including Hughes River, as well as over the conversion of the same to cash.

99. Those dissenters to the Merger will not have further ability to possess their stock in Ximalaya, despite their intention to do so. Instead, in exercising dominion and control over the stock of the shareholders of

Ximalaya and Hughes River, the stock will be converted into cash at the direction and control of the Board of Directors of Ximalaya.

100. The involuntary conversion of the stock owned by Hughes River and other Ximalaya shareholders into cash, in an amount well below fair value as set forth herein, constitutes the tort of conversion.

101. As a direct and proximate result of the tortious conduct of the Board of Directors and the Officers as set forth herein, the Company and its shareholders have been damaged in an amount in excess of $1,000,000,000, plus interest and costs.

WHEREFORE, Plaintiff, HUGHES RIVER FM, LLC, derivatively on behalf of Ximalaya, Inc., respectfully requests this Court to enter judgment against Defendants, YU JIANJUN, SEAMAN YU, XIAOYU CHEN, and LI HAIBO, for compensatory damages in an amount in excess of $1,000,000,000, plus punitive damages in an amount sufficient to punish and deter them from engaging in such misconduct in the future, interest and costs and for such other and further relief as the Court deems necessary and/or appropriate under the circumstances.

## SEVENTH CLAIM

### (Declaratory Judgment, Rule 57 of the Federal Rules of Civil Procedure--Hughes River FM, LLC, derivatively on behalf of Ximalya, Inc.--Against Tencent Music Entertainment Group, Inc., Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo)

102. Plaintiff, Hughes River FM, LLC, derivatively on behalf of Ximalaya, Inc., repeats and realleges the allegations set forth in Paragraphs 1 through 45 of the Amended Complaint as Paragraph 102 of the Seventh Claim of the Amended Complaint as though fully set forth.

27

103.     As set forth herein, the conduct of the Board of Directors and the Officers, and each of them, constitutes corporate waste.

104.     As set forth herein, none of the Board of Directors or Officers dissented to the Merger.

105.     As set forth herein, each member of the Board of Directors and the Officers held shares of stock in Ximalaya and, in approving the Merger, acted while having a conflict of interest, as they worked for their own self-interest and financial benefit, effectively ignoring the interests of the shareholders, including Hughes River.

106.     As set forth herein, the Board of Directors and the Officers, and each of them, behaved illegally, oppressively, and fraudulently, to the disadvantage of the shareholders of Ximalaya, including Hughes River.

107.     As set forth herein, there is an actual controversy between the parties.

108.     To prevent harm from the Merger, Hughes River, acting derivatively on behalf of Ximalaya, seeks a declaratory judgment under the Federal Declaratory Act, *28 U.S.C. § 2201*, that the Merger is unlawful, oppressive, and unfair to Hughes River and the other Ximalaya shareholders, who will receive only USD 5 per share.

WHEREFORE, Plaintiff, HUGHES RIVER FM, LLC, derivatively on behalf of Ximalaya, Inc., respectfully requests this Court to declare that the proposed Merger between Defendants, XIMALAYA, INC. and TENCENT MUSIC ENTERTAINMENT GROUP, INC., is unlawful, oppressive and unfair to the shareholders of Ximalaya, Inc., including Hughes River, and for such other

and further relief as the Court deems necessary and/or appropriate under the circumstances.

## EIGHTH CLAIM

### (Aiding and Abetting A Breach of Fiduciary Duty-Hughes River FM, LLC, derivatively on behalf of Ximalaya, Inc.--Against Tencent Music Entertainment Group, Inc.)

109.    Plaintiff, Hughes River FM, LLC, derivatively on behalf of Ximalaya, Inc., repeats and realleges the allegations set forth in Paragraphs 1 through 78 of the Amended Complaint as Paragraph 109 of the Eighth Claim of the Amended Complaint as though fully set forth herein.

110.    At all relevant times, Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo owed Ximalaya, Hughes River, and the other Ximalaya shareholders fiduciary duties of loyalty, honesty, and good faith.

111.    At all relevant times, Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo owed fiduciary duties to Ximalaya, Hughes River and the other shareholders of Ximalaya of, among others, not to commit corporate waste, not to engage in self-dealing, not to act solely in their personal best interests, and not to act where they have a conflict of interest.

112.    Ximalaya's Board of Directors and its Officers had and have a conflict of interest in assessing the fairness of the Merger.

113.    The Board of Directors and Officers of Ximalaya committed corporate waste in approving the Merger.

114.    The Board of Directors and Officers of Ximalaya engaged in self-dealing in soliciting Tencent to pay them 10 USD for each of their shares

of stock in Ximalaya, while agreeing to take only 5 USD for the shares of other shareholders of Ximalaya, including Hughes River.

115. As alleged herein, Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo breached the fiduciary duties they owed to Ximalaya, Hughes River and the other shareholders of Ximalaya in connection with the Merger by a) approving the terms of the Merger as set forth herein; b) approving the Election Form delivered to Hughes River as set forth herein; c) failing to disclose to the shareholders of Ximalaya, including Hughes River, the fact that substantial and material assets of Ximalaya, namely the entertainment and educational segments of Ximalaya, were, owned either by Yu Jianjun, or by an entity controlled by Yu Jianjun, and not Ximalaya itself, and would not be transferred to Tencent as a part of the Merger, and that the CEO, the Officers and the Board of Directors of Ximalaya would receive 10 USD per share for their shares in Ximalaya, while Hughes River would only receive 5 USD per share; and d) failing to account for the fair value of the External Investments of Ximalaya in the share price to Hughes River and the other shareholders of Ximalaya under the terms of the Merger and Election Form.

116. The Excluded Assets will not be sold as part of the Merger and will, instead, remain under the ownership of Yu Jianjun or an entity owned or controlled by Yu Jianjun. This amounts to a breach of his fiduciary duties of honesty, loyalty, and good faith and constitutes self-dealing on his part.

117.     The Board of Directors and the Officers' agreement to sell the shares of Ximalaya owned by the shareholders, including Hughes River, to Tencent for 5 USD per share while negotiating the sale of their shares for 10 USD per share constitutes a breach of the Officers and the Board of Directors of Ximalaya's fiduciary duties of honesty, loyalty, good faith, and not to engage in self-dealing, not to act in their personal best interests, and not to act in the face of a conflict of interest-without the appointment of an independent board or special committee of independent individuals.

118.     Tencent was aware that Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo owed fiduciary duties to Ximalaya, Hughes River, and the other Ximalaya shareholders.

119.     Tencent was aware that, under the circumstances set forth herein, Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo's approval of the Merger constituted a breach of their fiduciary duties to Ximalaya, Hughes River, and the other shareholders of Ximalaya.

120.     Tencent was aware that, under the circumstances set forth herein, Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo's approval of the Election Form constituted a breach of their fiduciary duties to Ximalaya, Hughes River, and the other shareholders of Ximalaya.

121.     Tencent actively induced the Founder and CEO, Yu Jianjun, to breach his fiduciary duties to both Ximalaya and Hughes River and the other shareholders of Ximalaya by offering to pay him 10 USD per share,

while at the same time agreeing only to pay the other shareholders of Ximalaya only 5 USD per share.

122. Tencent actively induced Seaman Yu, Xiaoyu Chen, and Li Haibo to breach their fiduciary duties to both Ximalaya and Hughes River and the other shareholders of Ximalaya by offering to pay them 10 USD per share, while at the same time agreeing to pay the other shareholders of Ximalaya only 5 USD per share.

123. Tencent has actively assisted Yu Jianjun, Seaman Yu, Xiaoyu Chen, and Li Haibo in designing and approving the terms of the Merger, which also omitted material information, as set forth herein, regarding the terms of the Merger to which it was a party and had full knowledge.

124. The conduct of Tencent constitutes aiding and abetting the breach of fiduciary duties by the Board of Directors and the Officers of Ximalaya.

125. As a direct and proximate result of aiding and abetting a breach of fiduciary duties by Tencent, Ximalaya has suffered damages in an amount in excess of $1,000,000,000.

WHEREFORE, Plaintiff, HUGHES RIVER FM, LLC, derivatively, on behalf of XIMALAYA, INC., respectfully requests this Court to enter judgment against Defendant, TENCENT MUSIC ENTERTAINMENT GROUP, INC., for compensatory damages in an amount in excess of $1,000,000,000, plus expenses, interest and costs, as well as voiding the Merger and/or for such other and further relief as the Court deems necessary and/or appropriate under the circumstances.

32

Respectfully submitted,

HUGHES RIVER FM, LLC,
individually, and derivatively
on behalf of XIMALAYA, INC.,
Plaintiff

By:*/s/Daniel J. Voelker*
Its Attorney

Daniel J. Voelker, Esq.
**Voelker Litigation Group**
33 N. Dearborn Street
Suite 400
Chicago, Illinois 60602
312.505.4841
dvoelker@voelkerlitigationgroup.com
ARDC #6189578

Dated: July 28, 2025

## CERTIFICATE OF SERVICE

I, Daniel J. Voelker, an attorney, hereby certify that on July 28, 2025, I caused to be filed the foregoing **Amended Complaint** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, via the ECF Filing System, and served all counsel of record via the same.

*/s/Daniel J. Voelker*

33

EXHIBIT A TO AMENDED COMPLAINT

April 16, 2025

**To: Hughes River FM, LLC**
致：Hughes River FM, LLC

**Re: Election to Receive Portion of Cash Consideration in TME Ordinary Shares**
关于选择以 **TME** 普通股股份形式获得部分现金对价的通知

Dear Hughes River FM, LLC,
尊敬的 Hughes River FM, LLC：

We refer to the proposed acquisition of Ximalaya Inc., a Cayman Islands company (Company No. 281196) (the "**Company**"), by Tencent Music Entertainment Group ("**TME**"), pursuant to an Agreement and Plan of Merger entered into by, among others, the Company and TME (the "**Transaction**").
兹提述腾讯音乐娱乐集团（"**TME**"）根据与喜马拉雅控股（"**公司**"）等各方签署的《合并协议》，拟通过一项或一系列交易，收购公司（注册地：开曼群岛，注册号：281196）（下称"**本次交易**"）。

The total consideration payable by TME in the Transaction in exchange for the following classes of shares of the Company held by you is as follows:
TME 在本次交易中就您持有公司以下类别的股份应支付的总对价如下：

| Class of Shares Held 您持有的股份类别 | Number of Shares Held 您持有的股份数量 | Total Cash Consideration Payable to You (USD) 您应取得的现金对价金额（美金） |
|---|---|---|
| B-1 | 4,950,078 | 24,750,390 |

With respect to Series B-1 shares of the Company you held, you may elect to receive up to **15% of the cash consideration** of each series of shares in the form of TME ordinary shares (the "Election Shares"), which will represent up to 0.0176788500% of the total issued and outstanding shares of TME immediately prior to the closing of the Transaction.
针对您持有的公司 B-1 轮股份，您可选择将该轮股份对应的最高 **15%的现金对价**转为 TME 普通股股份（"**选择股份**"），该部分选择股份将占 TME 在本次交易交割前已发行且流通股份的比例最高达 0.0176788500%。

To make such an election, you must:
如您希望行使此选择权，请务必：

1. Complete and return the **Acknowledgment and Election Slip** below, indicating the percentage (up to 15%) of your cash consideration you wish to convert into TME ordinary shares;
   填写并返回本信末尾的**确认及选择回执**，注明您希望转换为 TME 普通股的对应比例（不超过 15%）；

2. Return the slip **no later than 5:00 p.m. local time on 20 April 2025** to: kan.chen@ximalaya.com.

请于 2025 年 4 月 20 日当天下午 5:00（当地时间）前将回执发送至：kan.chen@ximalaya.com。

Failure to return the completed slip by the deadline will be deemed as a **waiver** of your election right, and you will receive **100% of your consideration in cash**.
如未在截止时间前提交有效回执，将视为您**放弃选择权**，届时您将**全额以现金形式**获得对价。

We thank you for your attention and support.
感谢您的支持与配合！

2

## Acknowledgment and Election Slip / 确认及选择回执

**Shareholder Name / 股东姓名**: Hughes River FM, LLC

☐ We hereby acknowledge receipt of this letter and confirm the following:
我司确认收到上述通知信，并作出如下确认：

**(i)**    With respect to the Series B-1 shares of the Company that we held, we elect to receive ____% (maximum 15%) of the cash consideration corresponding to such Series of shares in TME ordinary shares.
针对我司持有的 B-1 轮股份，我司选择将占我司该轮股份对应的现金对价的____%（不超过 15%）转换为 TME 普通股股份。

**(ii)**   We agree to vote in favor of the Transaction at any shareholders' meeting convened to approve it, and waive any and all rights to dissent or appraisal under Section 238 of the Companies Act (as revised) of the Cayman Islands.
我司同意在为批准本次交易召开的任何股东大会上投赞成票，并放弃根据《开曼群岛公司法》（经修订）第 238 条项下的所有异议权或股份评估权。

☐ We do not wish to receive any TME shares and elect to receive the full consideration in cash. We also agree to vote in favor of the Transaction and waive any dissent or appraisal rights.
我司不希望获得 TME 股份，选择全额现金对价，并同意在股东大会上投赞成票及放弃任何异议权或股份评估权。

**Signature / 签字**: _____

**Date / 日期**: _____

Please return this slip to:
请将本回执提交至：

*kan.chen@ximalaya.com*

3