**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

HUGHES RIVER FM, LLC,
*a Delaware limited liability company*,

                  Plaintiff,

        -against-

XIMALAYA, INC.,
*a Cayman Islands corporation*,
YU JIANJUN, *an individual*,
SEAMAN YU, *an individual*,
XIAOYU CHEN, *an individual*,
LI HAIBO, *an individual*,
and TENCENT MUSIC ENTERTAINMENT
GROUP, INC., *a Cayman Islands
corporation*,

                 Defendants.

Civil Case No. 1:25-cv-06217

Hon. Edmond E. Chang

**ORAL ARGUMENT REQUESTD**


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
XIMALAYA, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT**

# **Table of Contents**

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ............................................................................................... 3

LEGAL STANDARD ......................................................................................... 4

ARGUMENT .................................................................................................... 4

   I.    THE AMENDED COMPLAINT SHOULD BE DISMISSED AGAINST
       XIMALAYA FOR LACK OF PERSONAL JURISDICTION............................. 4

      A.   Legal Standard ........................................................................... 4

      B.   The Court Does Not Have General Jurisdiction Over Ximalaya ............... 5

      C.   The Court Does Not Have Specific Jurisdiction over Ximalaya.................. 6

  II.     PLAINTIFF'S DERIVATIVE CLAIMS MUST BE DISMISSED FOR FAILURE
       TO COMPLY WITH RULE 23.1 ............................................................... 8

  III.    THE FRAUD CLAIM AGAINST XIMALAYA MUST BE DISMISSED........... 11

      A.   Legal Standards ........................................................................ 11

      B.   The Fraud Claim Lacks Particularity and Does Not Satisfy Rule 9(b) ...... 11

  IV.    PLAINTIFF'S FRAUD CLAIM FAILS AS A MATTER OF LAW .................. 12

  V.    PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM FAILS ........................ 12

  VI.  THE DOCTRINE OF *FORUM NON CONVENIENS* WARRANTS DISMISSAL . 13

      A.   Legal Standard ......................................................................... 13

      B.   The Forum Selection Clause Requires Arbitration in Hong Kong............................ 13

      C.   The Court Need Only Consider Public Interest Factors, Which Favor Dismissal ..... 14

CONCLUSION .............................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abbott Lab'ys Infant Formula S'holder Derivative Litig.*,
No. 22 CV 05513, 2024 WL 3694533 (N.D. Ill. Aug. 7, 2024) ............................................. 10

*Abbott Lab'ys v. Takeda Pharm. Co.*,
476 F.3d 421 (7th Cir. 2007) ................................................................................................ 14

*Addiction & Detoxification Inst., LLC v. Yee*,
No. 14 C 05648, 2015 WL 997166 (N.D. Ill. Mar. 3, 2015) ................................................ 5, 6

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) .................................................................................................. 7

*Alholm v. Vrdolyak L. Grp. LLC*,
No. 22-CV-01820, 2023 WL 199339 (N.D. Ill. Jan. 17, 2023) ............................................. 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................. 4

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013) ............................................................................................................ 13, 14

*B.D. by & through Myer v. Samsung SDI Co.*,
91 F.4th 856 (7th Cir. 2024) ................................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................................. 4

*Bogie v. Rosenberg*,
705 F.3d 603 (7th Cir. 2013) ................................................................................................. 12

*Borsellino v. Goldman Sachs Grp., Inc.*,
477 F.3d 502 (7th Cir. 2007) ................................................................................................. 11

*Bristol-Myers Squibb Co. v. Superior Court*,
582 U.S. 255 ............................................................................................................................. 8

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 ............................................................................................................................. 6

*Cabrera v. Ledger SAS*,
777 F. Supp. 3d 900 (N.D. Ill. 2025) ..................................................................................... 13

*Cozzi Iron & Metal, Inc. v. U.S. Off. Equip., Inc.*,
  250 F.3d 570 (7th Cir. 2001) ..................................................................12

*Curry v. Revolution Lab'ys, LLC*,
  949 F.3d 385 (7th Cir. 2020) ....................................................................6

*D'Kids Partners, LP v. Kirlin*,
  No. 16-CV-10472, 2017 WL 6945592 (N.D. Ill. Feb. 24, 2017) ............5

*Dahmani v. SHL Med. AG*,
  No. 23 CV 04448, 2024 WL 3011330 (N.D. Ill. June 14, 2024)...........15

*DeLeo v. Swirsky*,
  No. 00 C 6917, 2002 WL 989526 (N.D. Ill. May 14, 2002) ....................9

*Fischer v. Magyar Allamvasutak Zrt.*,
  777 F.3d 847 (7th Cir. 2015) ..................................................................15

*Gutierrez v. Wemagine.AI LLP*,
  No. 21 C 5702, 2022 WL 252704 (N.D. Ill. Jan. 26, 2022) ...................5

*Hunter Tech. Corp. v. Omega Glob. Techs., Inc.*,
  505 F. Supp. 3d 802 (N.D. Ill. 2020) .......................................................4

*IAC/InterActiveCorp v. Roston*,
  44 F.4th 635 (7th Cir. 2022) ..................................................................13

*Instituto Mexicano del Seguro Soc. v. Zimmer Biomet Holdings, Inc.*,
  29 F.4th 351 (7th Cir. 2022) ..................................................................14

*Kamen v. Kemper Fin. Servs., Inc.*,
  939 F.2d 458 (7th Cir. 1991) ..................................................................10

*Laures v. Progressive Cas. Ins. Co.*,
  2022 WL 4778000 (S.D. Ill. Oct. 2, 2022) .............................................14

*Linkepic Inc v. Vyasil, LLC*,
  146 F. Supp. 3d 943 (N.D. Ill. 2015) .......................................................5

*Menzies v. Seyfarth Shaw LLP*,
  943 F.3d 328 (7th Cir. 2019) ..................................................................11

*Mueller v. Apple Leisure Corp.*,
  880 F.3d 890 (7th Cir. 2018) ..................................................................15

*Garza ex rel. Navistar Int'l Corp. v. Belton*,
  No. 08 C 1387, 2010 WL 3324881 (N.D. Ill. Aug. 13, 2010)................10

iv

*Northbound Grp., Inc. v. Norvax, Inc.*,
  5 F. Supp. 3d 956 (N.D. Ill. 2013), *aff'd,* 795 F.3d 647 (7th Cir. 2015) ...............................12

*Phillips v. Prudential Ins. Co. of Am.*,
  714 F.3d 1017 (7th Cir. 2013) ............................................................................................3

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
  338 F.3d 773 (7th Cir. 2003) .............................................................................................4

*Richardson v. Se. Conf.*,
  612 F. Supp. 3d 753 (N.D. Ill. 2020) ................................................................................8

*Rock Hemp Corp. v. Dunn*,
  51 F.4th 693 (7th Cir. 2022) .............................................................................................14

*Siegel v. Shell Oil Co.*,
  480 F. Supp. 2d 1034 (N.D. Ill. 2007) ...........................................................................11

*Solo Cup Co. v. First Sw. Vending & Food Serv.*,
  No. 07 C 4384, 2008 WL 2787442 (N.D. Ill. July 17, 2008) ................................8, 9

*Thomas v. Illinois Cent. R.R. Co.*,
  No. 23 C 13311, 2025 WL 1638475 (N.D. Ill. June 9, 2025) ................................15

*TMF Tool Co. v. H.M. Financiere & Holding, S.A.*,
  689 F. Supp. 820 (N.D. Ill. 1988) ...................................................................................7

*Trinidad v. PDD Holdings, Inc.*,
  No. 23-CV-04786, 2024 WL 3177912 (N.D. Ill. June 26, 2024) .............................6

*U.S.O. Corp. v. Mizuho Holding Co.*,
  547 F.3d 749 (7th Cir. 2008) ...........................................................................................15

*United Airlines, Inc. v. Zaman*,
  152 F. Supp. 3d 1041 (N.D. Ill. 2015) .............................................................................8

*United States v. Am. at Home Healthcare & Nursing Servs., Ltd.*,
  No. 14-CV-1098, 2018 WL 319319 (N.D. Ill. Jan. 8, 2018) .................................14

*Vanco v. Mancini*,
  495 F. Supp. 3d 712 (N.D. Ill. 2020) ............................................................................10

*Westmoreland Cnty. Emp. Ret. Sys. v. Parkinson*,
  727 F.3d 719 (7th Cir. 2013) .............................................................................................8

*Williamson v. Curran*,
  714 F.3d 432 (7th Cir. 2013) .............................................................................................4

Ximalaya, Inc. ("**Ximalaya**") by and through its undersigned counsel, respectfully submits this Memorandum of Law in Support of its Motion pursuant to Fed. R. Civ. P. 9(b), 12(b)(2), (6), and 23.1 to Dismiss ("**Motion**") Plaintiff Hughes River FM, LLC's ("**Hughes River**") Amended Complaint ("**AC**"). The parties have conferred and the Motion will be contested. For the reasons set forth herein, Ximalaya respectfully requests the Motion be granted in its entirety.

## PRELIMINARY STATEMENT

This action is an attempt by Plaintiff, a sophisticated investor and shareholder of Ximalaya, a Cayman Islands and Chinese company, to strong-arm an unwarranted higher price for its shares of stock. Plaintiff chose to ignore the mandatory arbitration clauses in the controlling agreements providing for arbitration in Hong Kong. Absent that arbitration clause Plaintiff could have brought a derivative action or dissenting shareholder's action in the Cayman Islands to have the fair value of its shares determined by the Grand Court because Ximalaya is a Cayman Islands entity and Cayman Islands law applies to Plaintiff's claims. *See* Declaration of Judge Alexander Henderson ("**Henderson Decl.**") ¶¶ 35, 44, n. 11. Despite these readily available remedies, procedural mechanisms, and *fora*, Plaintiff premises this action upon allegations that it maintains its principal place of business in, and its sole member resides in, Illinois—both dubious assertions. *See* AC (Dkt. 42) ¶ 1. There is no factually based allegation that any act underlying Plaintiff's claims took place in, or was directed into, Illinois. In any event, this suit is unwarranted for several reasons.

First, the AC must be dismissed because there is no personal jurisdiction over Ximalaya. The AC provides only threadbare jurisdictional allegations, namely that Ximalaya is "the largest online audio platform in China," with an unspecified number of users presumed to be located in Illinois. AC ¶ 4. It further alleges without specificity that Ximalaya regularly conducts business in Illinois and that an unspecified part of the transaction at issue occurred in Illinois. *Id*. ¶¶ 5, 17. Ximalaya's operation of an online platform in China does not support a finding of general

1

jurisdiction over it—a Cayman Islands company with its principal place of business in Shanghai and no presence in Illinois. *See* § I(B). The only alleged connection to Illinois is the transmission of one email to Plaintiff, even though Plaintiff holds itself out as a Chinese entity and its sole member participated in multiple in-person meetings in China with Ximalaya shortly before and after that email was transmitted. *See* Yu Decl. ¶¶ 17, 38.

Second, Plaintiff's derivative claims must be dismissed for failure to satisfy the requirements of Rule 23.1. Plaintiff cannot fairly and adequately represent the interests of other shareholders—a prerequisite to standing—when it has antagonistic interests to them. Further, the Court should strike the derivative claims as Plaintiff has failed to adequately allege demand futility.

Third, Plaintiff's fraud claim against Ximalaya must be dismissed for lack of particularity and as a matter of law. The AC omits all material details and fails to satisfy Rule 9(b). Plaintiff alleges that it relied on unspecified omissions made by unspecified parties at an unspecified date and location. AC ¶¶ 88-92. Plaintiff allegedly acquired its Ximalaya shares on or about June 5, 2017 from an unidentified "founder" (*id*. ¶ 23), but this is unsupportable because it was not incorporated until *one year later*, on June 29, 2018. *See* Decl. of Ms. Yi He, Esq. ("**He Decl.**") ¶ 2. Exhibit 4 to the Declaration of Mr. Jianjun Yu ("**Yu Decl.**") establishes that Plaintiff acquired its shares from non-party ZendaiFM LP in June 2020. Yu Decl. ¶ 23. Plaintiff further could not have relied on any purported omission about Ximalaya's Carve-Out Business (defined below), the concept of which did not exist when Plaintiff acquired its Ximalaya shares. *Id*. ¶¶ 46-48.

Next, the breach of fiduciary duty claim against Ximalaya must be dismissed as Ximalaya does not and cannot owe a fiduciary duty to Plaintiff under Cayman Islands law. *See infra* § V. Lastly, the doctrine of *forum non conveniens* further warrants dismissal because the agreement governing Plaintiff's purchase of the shares contains a mandatory arbitration clause. *See* § VI.

## BACKGROUND

Ximalaya is a Cayman Islands company headquartered in Shanghai, China. AC ¶ 2; Yu Decl. ¶ 5. Plaintiff did not acquire its Ximalaya shares from Ximalaya in 2017, instead, it acquired its shares from non-party ZendaiFM LP on or about June 30, 2020, pursuant to a Share Transfer Agreement ("**STA**").[1] Yu Decl. ¶ 23, Ex. 4. Ximalaya did not participate in any negotiation or make any representation to Plaintiff concerning the purchase of those shares. *Id.* ¶¶ 26-27.

Plaintiff has held itself out as a Chinese business located in Shanghai. Yu Decl. ¶¶ 17-19. On or about April 16, 2025, Ximalaya sent Plaintiff a Voting Undertaking Letter ("**VUL**")[2] by email in connection with the proposed acquisition of Ximalaya ("**Cayman Merger**") by Tencent Music Entertainment Group ("**TME**"). AC ¶ 29, Ex. A; Yu Decl. ¶¶ 34, 36, Ex. 6. On or about April 10, April 22, and May 28, 2025, Ximalaya and Hughes River had four (4) face-to-face meetings in Shanghai to discuss the VUL and the Cayman Merger. *Id.* ¶ 38. Mr. Jiang was present in-person at each meeting. *Id.* On or about April 16, 2025, Plaintiff responded to the VUL by email; the signature block of Plaintiff's email provides an address in Shanghai. *Id.* ¶ 41, Ex. 7.

On June 10, 2025, the Agreement and Plan of Merger ("**Merger Agreement**") for the Cayman Merger was executed in Shanghai and Beijing. *Id.* ¶ 42. Pursuant to the agreement, two business segments of Ximalaya, the Parent-Child Training Business and Xibo Business ("**Carve-Out Business**"),[3] will be carved out and divested from the assets acquired by TME prior to the closing of the Cayman Merger. *Id.* ¶ 43, Ex. 8. The concept of Carve-Out Business did not exist prior to 2025, and certainly not at the time Hughes River acquired its shares in Ximalaya. *Id.* ¶¶

---

[1] The Court may consider the STA, the Shareholder Register, the VUL, and other exhibits attached to the Yu Declaration because they are referenced or attached to the AC and/or central to the claims alleged therein. Courts "must consider not only 'the complaint itself,' but also 'documents attached to the complaint'" and "documents that are critical to the complaint and referred to in it." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (citations omitted).
[2] The AC describes the VUL as the "Election Form." AC ¶ 29.
[3] The AC describes the Carve-Out Business as "Excluded Assets." AC ¶ 34.

46-48. Ximalaya owned the Carve-Out Business at the time this case was filed and still owns it. *Id*. The consideration provided in the Merger Agreement reflects the total value of Ximalaya's businesses and investments, including the Carve-Out Business. *Id*. ¶ 51. The contemplated divestment of the Carve-Out Business will reduce only the consideration receivable by the Founders, not any other shareholder of Ximalaya. *Id*. ¶ 49.

## LEGAL STANDARD

A complaint should be dismissed where, as here, its claims suffer from legal deficiencies as a matter of law and thus do not give rise to "entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The "complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Courts in this Circuit "have taken a broader view of documents that may be considered on a motion to dismiss," including "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Where "the defendant has submitted affidavits and other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting [] jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 783 (7th Cir. 2003).

## ARGUMENT

## I. THE AMENDED COMPLAINT SHOULD BE DISMISSED AGAINST XIMALAYA FOR LACK OF PERSONAL JURISDICTION

### A. Legal Standard

"If a court lacks personal jurisdiction over a party to an action, it must dismiss the case as to that party." *Hunter Tech. Corp. v. Omega Glob. Techs., Inc.*, 505 F. Supp. 3d 802, 805 (N.D. Ill. 2020). Personal jurisdiction must comport with due process by way of general or specific jurisdiction. "The 'constitutional touchstone' is 'whether the defendant purposefully established

4

'minimum contacts' in the forum State . . . such that he should reasonably anticipate being haled into court there.'" *Addiction & Detoxification Inst., LLC v. Yee*, No. 14 C 05648, 2015 WL 997166, at *2 (N.D. Ill. Mar. 3, 2015) (citation omitted). The "plaintiff bears the burden of establishing that jurisdiction is proper." *Linkepic Inc v. Vyasil, LLC*, 146 F. Supp. 3d 943, 948 (N.D. Ill. 2015).

### B. The Court Does Not Have General Jurisdiction Over Ximalaya

To establish general jurisdiction over Ximalaya, its contacts must be so "continuous and systematic" as to render it "essentially at home" in" Illinois. *D'Kids Partners, LP v. Kirlin*, No. 16-CV-10472, 2017 WL 6945592, at *1 (N.D. Ill. Feb. 24, 2017). A corporation's "place of incorporation and the principal place of business are the bases for general jurisdiction." *Id.* Ximalaya is a Cayman Islands entity with its principal place of business in Shanghai. AC ¶ 2. Ximalaya does not conduct business, has no registered agent, has no offices or employees, owns no property, and has no bank account or assets in Illinois. Yu Decl. ¶¶ 7-15.

The AC alleges no fact that would allow this Court to exercise general jurisdiction over Ximalaya. *See generally* AC. Instead, it asserts only conclusory allegations that Ximalaya is the "largest online audio platform in China," has "been regularly conducting business" in Illinois, and that it allegedly has users in Illinois. *Id.* ¶¶ 4, 5, 17. These allegations are insufficient to establish general jurisdiction. *See Gutierrez v. Wemagine.AI LLP*, No. 21 C 5702, 2022 WL 252704, at *3 (N.D. Ill. Jan. 26, 2022) (no personal jurisdiction based on allegations that mobile application "[wa]s available and used by Illinois residents" and where "there is no evidence that [defendant] purposefully directed any of its conduct toward Illinois, did any Illinois-specific shipping, marketing, or advertising, or sought out the Illinois market in any way"). Plaintiff "offers not a single other fact specifying how Illinois . . . has been touched or effected"—its "position is that the operation of a website opens up jurisdiction to wherever a user who may potentially view that website may be, which, in our wired age, would result in a long arm indeed . . . That sweeping

argument is wrong." *Yee*, 2015 WL 997166, at *2-3 (website that "solicits customers" in Illinois was not at home in Illinois); *see also Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 400 (7th Cir. 2020) ("[s]ignificant caution" is warranted "to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state").

### C. The Court Does Not Have Specific Jurisdiction over Ximalaya

This Court does not have specific jurisdiction over Ximalaya. The AC makes no allegation that the asserted fraud or breach of fiduciary occurred in or was directed at Illinois.

Specific personal jurisdiction requires "(1) purposeful availment—the defendant must have purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the forum; (2) relatedness—the alleged injury must arise out of or relate to the defendant's forum-related activities; and (3) fairness—the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024). The allegations "must create a substantial connection with the forum. . . . Unrelated contacts or contacts that fail to 'provide the factual basis for the [] claim are not relevant to a specific jurisdiction inquiry.'" *Trinidad v. PDD Holdings, Inc.*, No. 23-CV-04786, 2024 WL 3177912, at *5 (N.D. Ill. June 26, 2024).

First, Ximalaya did not purposefully avail itself of any Illinois benefit. A defendant avails itself of a forum's benefits when it intentionally directs its activities such that it should reasonably expect to be haled there. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473–76. That did not occur. The alleged fraud has no relation to Illinois. The AC's allegation that "the sale of stock in Ximalaya to Hughes River" creates connection to Illinois (AC ¶ 17) is unavailing because Ximalaya did not sell the stock to Plaintiff and the sale did not occur in Illinois. *See supra* at 3; *see also* Yu Decl. ¶¶ 21-27, Ex. 4. There are *no allegations* supporting Plaintiff's fraud claim that are asserted to have occurred in, or been directed at, Illinois. *See* AC ¶¶ 23, 87-95; *see also TMF*

6

*Tool Co. v. H.M. Financiere & Holding, S.A.*, 689 F. Supp. 820, 824 (N.D. Ill. 1988) (granting dismissal where there was no allegation of "any aspect of the alleged fraud in Illinois").

The AC asserts a breach of fiduciary duty claim against Ximalaya—even though a company cannot owe a fiduciary duty under controlling Cayman law (*infra* § V)—for the sole purpose of attempting to establish connection to Illinois based on the alleged transmission of the VUL by email to Plaintiff "in this Judicial District" (AC ¶ 29) from Shanghai. Yu Decl. ¶¶ 34, 36. However, the VUL was drafted and negotiated in China and the email transmitting the VUL was directed to Shanghai, not Illinois. *See id*. ¶ 35. The VUL was sent to two recipients who are authorized to receive notices on behalf of Plaintiff under Ximalaya's Shareholders Agreement— which provides an address for each recipient in Shanghai. *See Id*. ¶ 37, Ex. 2 at Schedule E. Indeed, Plaintiff has always held itself out as a Chinese entity. *Id*. ¶ 17. Ximalaya's Shareholders Agreement indicates that Plaintiff is based in Shanghai, and in January of 2025, Plaintiff moved its offices from one address to another in Shanghai. *Id*. ¶¶ 18-19. The contemporaneous email correspondence from Plaintiff indicates that it is and has been based in Shanghai at all relevant times. *Id*. ¶¶ 19, 33, 41. Moreover, prior to and after the delivery of the VUL, representatives of Ximalaya and Plaintiff, including Mr. Jiang, had multiple in-person meetings in Shanghai. *Id*. ¶ 38. The allegation that Ximalaya directed activity at Illinois is unsupported and unsupportable. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014), *as corrected* (May 12, 2014) (no jurisdiction where defendant sent emails to the forum because "email does not exist in any location at all; it bounces from one server to another, it starts wherever the account-holder is sitting when she clicks the 'send' button, and it winds up wherever the recipient happens to be at that instant"); *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041,

1052-53 (N.D. Ill. 2015) (no jurisdiction where the majority of communications were with an individual whose signature block provided an address outside of the forum).

Second, the AC does not allege a substantial connection between the VUL or the Cayman Merger and the alleged fraud. *See Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264 ("[w]hen there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State"). The circumstances underlying the alleged fraud and breach of fiduciary duty have no connection to Illinois but, instead, relate to dealings between Plaintiff and a non-party entity unrelated to Ximalaya at an undisclosed location in 2020, or at best a single email directed to Shanghai. Yu Decl. ¶¶ 23-27; AC ¶¶ 23[4], 87-95; *Richardson v. Se. Conf.*, 612 F. Supp. 3d 753, 766 (N.D. Ill. 2020) (where a plaintiff alleges an intentional tort, "the inquiry focuses on whether the conduct underlying the claim[] was purposely directed at the forum").

Third, compelling Ximalaya—a Cayman Islands and Chinese business with no connection to Illinois—to litigate in a forum where it has no contacts would be unduly burdensome and violate traditional notions of fair play and substantial justice. *See Solo Cup Co. v. First Sw. Vending & Food Serv.*, No. 07 C 4384, 2008 WL 2787442, at *7 (N.D. Ill. July 17, 2008) (no personal jurisdiction where defendant's "leased premises," "employees and potential witnesses," and "presumably all of [defendant's] documents relevant to this lawsuit are located" out of state).

## II.    PLAINTIFF'S DERIVATIVE CLAIMS MUST BE DISMISSED FOR FAILURE TO COMPLY WITH RULE 23.1

Plaintiff's derivative claims must be dismissed because they fail to satisfy Rule 23.1. *See Westmoreland Cnty. Emp. Ret. Sys. v. Parkinson*, 727 F.3d 719, 722 (7th Cir. 2013).

*First*, Hughes River does not fairly and adequately represent the interests of other Ximalaya shareholders as required under Rule 23.1(a). This requirement "means that the named plaintiff

---

[4] The AC alleges Plaintiff acquired the shares on or about June 5, 2017.

must not have antagonistic interests." *DeLeo v. Swirsky*, No. 00 C 6917, 2002 WL 989526, at *3 (N.D. Ill. May 14, 2002), *report and recommendation approved*, No. 00 C 6917, 2002 WL 1447855 (N.D. Ill. July 2, 2002) (citations omitted). "Antagonistic interests . . . may exist where the named plaintiff is involved in separate litigation with the defendant corporation or its directors . . . or where the named plaintiff has a personal dispute with the defendant directors." *Id.* (disqualifying named plaintiff where plaintiff brought a separate direct lawsuit in New York) (citations omitted).

Plaintiff's antagonistic interests are apparent as it asserts individual claims of fraud and breach of fiduciary duty against Ximalaya and the Individual Defendants *in the same lawsuit* in which it asserts derivative claims against the same Individual Defendants. Plaintiff's fraud-based allegations have no bearing on, and are separate from, the parallel derivative claims. *See* AC ¶¶ 23, 88-93. The fraud claim advances only Plaintiff's interests and is antagonistic to the interests of other Ximalaya shareholders as it seeks to recover from Ximalaya over $25,000,000—which would ultimately be borne by the other Ximalaya shareholders. *See DeLeo*, 2002 WL 989526 at *6 ("As long as [the shareholder] is a named plaintiff in this derivative suit, [other] shareholders are exposed to this potentially unfavorable outcome, and they are not in a position to take a position to protect themselves from it."). Both Ximalaya and its shareholders have a clear interest in defeating this fraud claim. Curiously, the AC also asserts an alternative individual claim for breach of fiduciary duty against Ximalaya and the Individual Defendants (Third Claim), relying on identical factual allegations—including the transmission of a single email as basis for jurisdiction—underlying the derivative claim for breach of fiduciary duty (Second Claim). This is a transparent attempt by Plaintiff to keep this lawsuit in Illinois, where it does not belong, and further illustrates Plaintiff's antagonistic interests. *See id.* (recognizing plaintiff "has made other

tactical and strategic decisions in this derivative suit not to further the interests of [other] shareholders . . . but to protect his own interests"); *see also* Henderson Decl. ¶¶ 61-63.

 *Second*, the derivative claims should be dismissed for failure to allege demand futility with particularity. Fed. R. Civ. P. 23.1(b)(3)(B); *see* Henderson Decl. ¶¶ 53-60.[5] The AC conclusorily states a demand would have been futile because the Individual Defendants are responsible for the alleged wrong and it is "a virtual certainty that they would not commence a lawsuit against themselves." AC ¶ 41. However, only Mr. Yu served on the Board during the relevant times.[6] The AC fails to explain why the other five non-party, independent directors would not have approved a demand. Henderson Decl. ¶¶ 55-59. These allegations provide "no factual detail . . . are stated entirely in conclusion, and are insufficient to satisfy Rule 23.1." *Garza ex rel. Navistar Int'l Corp. v. Belton*, No. 08 C 1387, 2010 WL 3324881, at *4 (N.D. Ill. Aug. 13, 2010) (dismissing complaint for failure to allege demand futility and rejecting argument that a majority of directors "face a substantial likelihood of being held liable for breaching their fiduciary duties") (citations omitted); *Kamen v. Kemper Fin. Servs., Inc.*, 939 F.2d 458, 460-61 (7th Cir. 1991) (allegation that directors were under the control of the company "alleges no facts pertinent to control" and "flunks the 'particularity' requirement of Rule 23.1").

 *Third*, the AC must be dismissed as it does not satisfy Rule 23.1(b)'s verification requirement. Fed. R. Civ. P. 23.1(b) ("The complaint must be verified"); *Vanco v. Mancini*, 495 F. Supp. 3d 712, 729 (N.D. Ill. 2020) (verification requires plaintiff to "assure[] [the court] that the plaintiff . . . has investigated the charges and found them to have substance").

---

[5] Cayman Islands law governs the demand futility requirements. *See In re Abbott Lab'ys Infant Formula S'holder Derivative Litig.*, No. 22 CV 05513, 2024 WL 3694533, at *5 (N.D. Ill. Aug. 7, 2024) ("The law of the state of the company's incorporation controls these substantive rights and governs what excuses are adequate for failure to make a demand.") (citation omitted).
[6] *See* Yu Decl. Ex. 1 (the other members of the Board of Directors include Mingwang Xiong, Xiaodong Liang, Xingren Li, Jieqiang Shen, and Yanjing Zheng); *see generally* Individual Defendants' Motion § IX.

### III.  THE FRAUD CLAIM AGAINST XIMALAYA MUST BE DISMISSED

#### A.  Legal Standards

Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  A complaint asserting fraud must specify "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034, 1039 (N.D. Ill. 2007).  Plaintiff must provide "the who, what, when, where, and how." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

#### B.  The Fraud Claim Lacks Particularity and Does Not Satisfy Rule 9(b)

Plaintiff's fraud claim must be dismissed as it fails to meet Rule 9(b)'s heightened pleading requirement.  The few conclusory allegations that (i) Ximalaya "failed to disclose to" Plaintiff that the Carve-Out Business was not owned by Ximalaya; (ii) Plaintiff "relied upon the inclusion" of the Carve-Out Business when acquiring the shares; and (iii) it "would not have acquired" the shares "[h]ad it known" about the ownership of the Carve-Out Business (AC ¶¶ 88-92) fall far short of Rule 9(b)'s particularity requirement.

The AC conspicuously omits any allegations concerning the circumstances giving rise to the alleged fraud.  It does not allege: (i) from whom Plaintiff acquired its shares or when; (ii) what statements were made in connection with the transfer of the shares to it—or the actual omissions made by Ximalaya regarding its assets; (iii) who from Ximalaya failed to make a required disclosure; (iv) where the alleged omissions occurred; or (v) when they were made. *See, e.g.*, *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019) (each instance of fraud must be alleged with "precision and some measure of substantiation").  The AC fails to plead any details of the alleged fraud because Plaintiff did not buy its shares from Ximalaya and the concept of the Carve-Out Business did not exist when Plaintiff purchased its shares. Yu Decl. ¶¶ 23-27, 46-48.

## IV.    PLAINTIFF'S FRAUD CLAIM FAILS AS A MATTER OF LAW

Under Illinois law, fraud requires: "(1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, and (5) damage to the other party resulting from such reliance." *Alholm v. Vrdolyak L. Grp. LLC,* No. 22-CV-01820, 2023 WL 199339, at *4 (N.D. Ill. Jan. 17, 2023) (citation omitted).

Ximalaya could not have "failed to disclose the actual ownership of the [Carve-Out Business]" (AC ¶89) because the concept of Carve-Out Business did not exist when Plaintiff acquired its shares from ZendaiFM LP. *See* Yu Decl. ¶¶ 46-48. Ximalaya owned all of its assets at the time the AC was filed and still does. *Id*. ¶ 48. Ximalaya and TME negotiated the carve-out of two business segments as part of the Cayman Merger. *Id*. ¶ 43. Accordingly, the AC fails to state a false statement or knowledge of any alleged omission. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit contradicts the allegations in the complaint, ruling against [the plaintiff] on a motion to dismiss is consistent with our obligation to review all facts in the light most favorable to [the plaintiff]."). For the same reasons, the AC fails to allege reliance. *See Cozzi Iron & Metal, Inc. v. U.S. Off. Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001).

## V.    PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM FAILS

Cayman Islands law applies because Ximalaya is incorporated in the Cayman Islands. "[A] suit for breach of fiduciary duty is governed by the law of the state of incorporation." *Northbound Grp., Inc. v. Norvax, Inc.*, 5 F. Supp. 3d 956, n. 16 (N.D. Ill. 2013), *aff'd,* 795 F.3d 647 (7th Cir. 2015). Plaintiff's breach of fiduciary duty claim must be dismissed because under Cayman Islands law a company cannot owe a fiduciary duty to anyone. Henderson Decl. ¶¶ 35, 42-43. Accordingly, Hughes River does not have a claim for breach of fiduciary duty against Ximalaya. *Id*.

12

## VI.    THE DOCTRINE OF *FORUM NON CONVENIENS* WARRANTS DISMISSAL

### A.  Legal Standard

"[A] valid forum selection clause [should be] given controlling weight in all but the most exceptional cases" and enforced through the doctrine of *forum non conveniens*.  *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 50, 60, 63 (2013) (citations omitted).  If there is a forum selection clause, "the plaintiff's choice of forum bears no weight, the burden falls on the plaintiff to establish that dismissal in favor of the bargained-for forum is unwarranted, the parties' private interests are irrelevant, and the original venue's choice of law rules are not considered." *Cabrera v. Ledger SAS*, 777 F. Supp. 3d 900, 908 (N.D. Ill. 2025) (citations omitted); *see also IAC/InterActiveCorp v. Roston*, 44 F.4th 635, 645 (7th Cir. 2022) ("the Supreme Court has narrowed our review" in cases with a forum selection clause).

### B.  The Forum Selection Clause Requires Arbitration in Hong Kong

Plaintiff did not acquire its Ximalaya shares until June 30, 2020.  Yu Decl. ¶ 23.  The STA concerning that purchase is governed by Cayman Islands law and requires that "all disputes and controversies arising out of or in connection with [the] [a]greement" be referred to final binding arbitration in Hong Kong. *See id*. at Ex. 4, §§ 7.7, 7.8; Henderson Decl. ¶ 21.[7]

Plaintiff's fraud claim against Ximalaya falls within the scope of that arbitration and forum selection clause.  Henderson Decl. ¶¶ 22-26 (even without Ximalaya being a party to the STA, it is a concession by Plaintiff as to the appropriate forum; "The scope of the Two Clauses extends to and covers the fraud claim."); *see also Abbott Lab'ys v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007) (courts interpret a forum selection clause using the law governing the contract).

---

[7] Ximalaya's Shareholders Agreement similarly provides for arbitration in Hong Kong.  *See* Yu Decl. at Ex.2, § 13.4; Henderson Decl. ¶ 49.

The STA requires Plaintiff to submit this dispute to arbitration in Hong Kong. *See* Yu Decl. at Ex. 4; Henderson Decl. ¶ 21. Therefore, that forum selection clause mandates dismissal of the AC against Ximalaya in favor of arbitration in Hong Kong. *See, e.g.*, *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022) (affirming dismissal and noting the motion was "more accurately styled as a motion under the doctrine of *forum non conveniens*" in light of the arbitration clause).

### C. The Court Need Only Consider Public Interest Factors, Which Favor Dismissal

"[A] district court may consider arguments about public-interest factors only," because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient[,]" and a court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atlantic Marine*, 571 U.S. at 64. Public interest factors include: "(1) the 'administrative difficulties stemming from court congestion'; (2) the 'local interest in having localized disputes decided at home'; (3) the 'interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action'; (4) the 'avoidance of unnecessary problems in conflicts of laws or in the application of foreign law'; and (5) the 'unfairness of burdening citizens in an unrelated forum with jury duty.'" *Instituto Mexicano del Seguro Soc. v. Zimmer Biomet Holdings, Inc.*, 29 F.4th 351, 360 (7th Cir. 2022) (citation omitted).

The AC makes no allegation that would render Plaintiff "at home" in Illinois. Indeed, Plaintiff is incorporated in Delaware, He Decl. ¶ 2[8]; it is not registered to do business in Illinois, *id.* ¶ 3; its alleged principal place of business is a residential property owned by individual non-parties, Xue-Bing Jiang and Xue-Qin Jin, *id.* ¶¶ 4-6; it holds itself out as a Chinese business located

---

[8] *See United States v. Am. at Home Healthcare & Nursing Servs., Ltd.*, No. 14-CV-1098, 2018 WL 319319, at *2 (N.D. Ill. Jan. 8, 2018) ("[t]his Court may take judicial notice of information from the Illinois Secretary of State's website"); *Laures v. Progressive Cas. Ins. Co.*, 2022 WL 4778000, at *2 (S.D. Ill. Oct. 2, 2022) ("If the documents contradict Plaintiff's allegations, the Court will not accept Plaintiff's allegations as true and will instead, rely on the actual documents themselves.").

in Shanghai, Yu Decl. ¶ 17; and the AC fails to allege the place in which the negotiations of Plaintiff's purchase of its shares occurred (***Public Interest Factors 2 and 3***). *See U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 752 (7th Cir. 2008) ("The fact that a Japanese company has a Delaware corporate certificate but no offices or personnel in Chicago . . . should not make it feel more at home litigating in Chicago than in Tokyo."); *Dahmani v. SHL Med. AG*, No. 23 CV 04448, 2024 WL 3011330, at *8 (N.D. Ill. June 14, 2024) ("Illinois has no particular stake in . . . th[e] dispute" even though plaintiff contends that it "was an Illinois resident during many of the events underlying his claims" and the contractual relationship arose in Chicago). The STA is governed by Cayman Islands law (***Factors 3 and 4***). *See* Yu Decl. Ex. 4, § 7.7; Henderson Decl. ¶ 21; *see Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 871 (7th Cir. 2015) (the factors "point towards dismissal where the court would be required to 'untangle problems in conflict of laws, and in law foreign to itself'") (citation omitted). Dragging all witnesses to Chicago, "would impose unreasonable burdens not only on the defendants but also on the district court." (***Factor 5***). *See Mizuho Holding*, 547 F.3d at 751, 755 ("to burden Americans with jury duty to resolve an intramural Japanese dispute would be gratuitous"). Further, congested dockets are a concern as "an average judge in the Northern District of Illinois had 969 pending cases," and "the median time for civil cases to proceed from filing to trial in the Northern District of Illinois was 55.4 months" (***Factor 1***). *Thomas v. Illinois Cent. R.R. Co.*, No. 23 C 13311, 2025 WL 1638475, at *3 (N.D. Ill. June 9, 2025). Therefore, public interest weighs in favor of dismissal. *See Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018) (public interest factors "are 'rarely' strong enough to override the parties' preselected forum"); Henderson Decl. ¶¶ 21, 23, 27-33, 64-66.

## CONCLUSION

For the foregoing reasons, Defendant Ximalaya respectfully requests that the Court Dismiss the AC against Ximalaya in its entirety with prejudice.

Dated: August 27, 2025

RESPECTFULLY SUBMITTED,

By: /s/ Vincent Filardo, Jr.
     Vincent Filardo, Jr. *(pro hac vice)*
     Andrew Sklar *(pro hac vice)*
     Yi He *(pro hac vice)*
     King & Wood Mallesons LLP
     500 Fifth Avenue, 50th Floor
     New York, NY 10110
     (212) 319-4755
     vincent.filardo@us.kwm.com
     andrew.sklar@us.kwm.com
     yi.he@us.kwm.com

     Kenneth J. Vanko
     Clingen Callow & McLean, LLC
     2300 Cabot Drive, Suite 500
     Lisle, Illinois 60532
     (630) 871-2609
     vanko@ccmlawyer.com

     *Counsel for Defendant Ximalaya, Inc.*

16

**CERTIFICATE OF SERVICE**

I certify that on August 27, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filings to all registered users.


Dated: August 27, 2025


*/s/ Vincent Filardo, Jr.*
Vincent Filardo, Jr.