**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

HUGHES RIVER FM, LLC,
*a Delaware limited liability company*,

           Plaintiff,

-against-

XIMALAYA, INC.,
*a Cayman Islands corporation*,
YU JIANJUN, *an individual*,
SEAMAN YU, *an individual*,
XIAOYU CHEN, *an individual*,
LI HAIBO, *an individual*,
and TENCENT MUSIC ENTERTAINMENT
GROUP, INC., *a Cayman Islands
corporation*,

           Defendants.

Civil Case No. 1:25-cv-06217

Hon. Edmond E. Chang

**DECLARATION OF JIANJUN YU**

I, Jianjun Yu, hereby declare and state under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1.     I am the executive director, chairman of the board, and chief executive officer of Defendant Ximalaya, Inc. ("**Ximalaya**") and have held this position since August 2012. In that role, I am responsible for the overall executive and business direction, as well as the overall management of Ximalaya and its subsidiaries.

2.     I am familiar with Ximalaya's corporate structure, business operations and transactions, and offices and locations in different countries.

1

3. The matters which I refer to in this declaration are true and within my personal knowledge, except where I state them to be upon information and belief and as to those matters I believe them to be true. I am fully familiar with the facts set forth herein, and if called as a witness, I could and would testify competently to these facts under oath.

4. I have read and am generally familiar with the allegations in Plaintiff Hughes River FM, LLC's ("**Hughes River**") amended complaint ("**Amended Complaint**").

5. Ximalaya is a Cayman Islands corporation with its headquarters and principal place of business in Shanghai, China.

6. Ms. Yuxin Chen and I are co-founders ("**Founders**") of Ximalaya. A true and correct copy of Ximalaya's current Cayman Register of Directors is attached hereto as **Exhibit 1**.

### A. Ximalaya Does Not Conduct Business in the State of Illinois

7. Ximalaya is not registered to, and does not, conduct business in the State of Illinois.

8. Ximalaya does not have a registered agent in Illinois.

9. Ximalaya does not have any offices or employees in Illinois or any other state within the United States.

10. Ximalaya does not own any interest in real property or personal property located in Illinois.

11. Ximalaya does not have a bank account or other assets in Illinois.

12. Prior to this action, Ximalaya had never brought a lawsuit or been sued in the state or federal courts of Illinois.

13. Ximalaya has not directed any advertising toward Illinois.

14. Other than Hughes River, who alleges to have its principal place of business in Illinois, Ximalaya does not have any shareholders who are citizens or residents of Illinois.

15. Ximalaya owns and operates a mobile application called "喜马拉雅," which is not available from the U.S. App Store (for iOS devices) or Google Play (for Android devices).

**B. Hughes River's Principal Office and Other Addresses**

16. Upon information and belief, Hughes River's sole member, Mr. Kai Jiang, was born and raised in China.

17. Upon information and belief, Hughes River has never informed Ximalaya that it maintains offices in Illinois and has held itself out as a Chinese business.

18. Pursuant to the Second Amended and Restated Shareholders Agreement dated December 30, 2020 ("**Shareholders Agreement**"), wherein Hughes Rivers is listed as one of the Series B-1 Preferred Shareholders, the address specified for Hughes Rivers to receive all relevant notices, requests, waivers and other communications pursuant to the Shareholders Agreement is: Level 36, International Finance Center, Tower 2, 8 Century Avenue, Pudong District, Shanghai. A true and correct copy of the Shareholders Agreement is attached hereto as **Exhibit 2**.

19. In or about January 2025, Hughes River informed Ximalaya that it moved its offices to a new address located at 53/F, White Magnolia Plaza, 588 Dongchangzhi Road, Hongkou District, Shanghai.

20. Upon information and belief, the address of Hughes River's registered agent in the United States is 850 New Burton Road, Suite 201, Dover (County of Kent), DE 19904, U.S.A. This is the same address of Hughes River that appears on Ximalaya's Shareholder Register.

**C. Hughes River's Shares in Ximalaya and the Share Transfer Agreement**

21. Hughes River did not acquire its shares in Ximalaya from Ximalaya's Founders. *See* Am. Compl. ¶ 23.

22. On or about June 4, 2020, the Founders of Ximalaya executed a Consent Letter ("**Consent Letter**") pursuant to which they waived any and all Rights of First Offer (as prescribed under the Shareholders Agreement of Ximalaya, Inc. dated March 4, 2019) with respect to ZendaiFM LP's transfer of 5,078,577 Series B-1 Preferred Shares of Ximalaya to its affiliate Hughes River for nominal consideration (i.e., at a per share purchase price of USD 0.0001). A true and correct copy of the Consent Letter is attached hereto as **Exhibit 3**.

23. On or about June 30, 2020, ZendaiFM LP and Hughes River, among others, entered into a Share Transfer Agreement ("**Share Transfer Agreement**") for the transfer of the 5,078,577 shares to Hughes River. A true and correct copy of the Share Transfer Agreement is attached hereto as **Exhibit 4**.

24. Ximalaya is not a party to the Share Transfer Agreement.

25. ZendaiFM LP is not related to Ximalaya.

26. Ximalaya did not participate in any negotiations concerning the transfer of the shares from ZendaiFM LP to Hughes River. Ximalaya was not involved in the negotiation, drafting, or execution of the Share Transfer Agreement.

27. Neither Ximalaya nor its Founders, officers, directors, or employees made any representation to Hughes River regarding Ximalaya's assets in connection with the transfer of the shares from ZendaiFM LP to Hughes River.

28. Ximalaya's current Shareholder Register indicates that Hughes River holds 4,950,078 Series B-1 Preferred Shares of the company. A true and correct copy of an excerpt of the Shareholder Register is attached hereto as **Exhibit 5**.

29. I have never communicated with Mr. Jiang in the State of Illinois or in this judicial district regarding Hughes River's investment in Ximalaya.

30. Hughes River has never "made efforts on behalf of Ximalaya," through me, to expand Ximalaya's global reach and enhance its business in the United States or in Illinois. *See* Am. Compl. ¶ 6.

**D. The Cayman Merger and the Voting Undertaking Letter**

31. Both Ximalaya and Tencent Music Entertainment Group, Inc. ("**TME**"), retained outside counsel, who were primarily based in Beijing and Shanghai to negotiate TME's acquisition of Ximalaya ("**Cayman Merger**").

32. The majority of the negotiations relating to the Cayman Merger took place in person in Beijing. The parties also had a few online meetings. Upon information and belief none of Ximalaya's or TME's representatives were located in Illinois when they participated in the online meetings.

33. On April 14, 2025, Ximalaya received an email from Mr. Peter Zhu, who is authorized to receive formal notices and communications on behalf of Hughes River pursuant to Schedule E (Notices and Process Agents) of the Shareholders Agreement. The address listed under his signature block in this email is the same as Hughes River's new business address described under paragraph 19. A true and correct copy of this email is attached hereto as **Exhibit 6.**

34. On or about April 16, 2025, Ximalaya sent Hughes Rivers a Voting Undertaking Letter ("**VUL**") in connection with the Cayman Merger. I understand that the VUL is the "Proposed Agreement" alleged in the Amended Complaint.

35. The VUL was prepared by Ximalaya's outside counsel located in Beijing, under the direction of the company's in-house legal team who are based in Shanghai.

36. A member of Ximalaya's Investor Relations team, Mr. Kan (Chris) Chen, who is based in Shanghai, sent an email with the VUL attached to Hughes River's email addresses

5

provided in the Shareholders Agreement: (i) dragonkai8@yahoo.com, and (ii) peter@kaicapitallp.com. A true and correct copy of this email is attached hereto as **Exhibit 7**.

37. The Shareholders Agreement at Schedule E specifies that the email address dragonkai8@yahoo.com belongs to the sole member of Hughes River Mr. Kai Jiang, whereas the email address peter@kaicapitallp.com belongs to Mr. Peter Zhu.

38. On or about April 10, April 22, and May 28, 2025, Ximalaya and Hughes River had four (4) face-to-face meetings in Shanghai to discuss the Cayman Merger and the VUL. I participated in those meetings. Mr. Kai Jiang was present in person at each meeting.

39. During those meetings, the participants discussed the consideration to be received by Hughes River under the Cayman Merger. Neither Ximalaya nor its Founders, officers, directors, or employees made any representation to Hughes River or Mr. Jiang regarding Ximalaya's assets in connection with the Cayman Merger.

40. Ximalaya held similar meetings with all of its shareholders between February and May 2025.

41. On April 16, 2025, Hughes River responded to Ximalaya's email and the VUL. *See* **Exhibit 7**. The address under the signature block in Hughes River's email was 53/F, White Magnolia Square, 501 Dong Da Ming Road, Shanghai, China.

42. The Cayman Merger ultimately received the requisite approvals, and, on June 10, 2025, the relevant parties executed the Agreement and Plan of Merger ("**Merger Agreement**") in Shanghai and Beijing and exchanged signature pages electronically via email.

**E. The Carve-Out Business and Ximalaya's External Investments**

43. Pursuant to Exhibit F (Restructuring Steps) of the Merger Agreement, two business segments of Ximalaya, namely the Parent-Child Training Business and Xibo Business ("**Carve-**

6

**Out Business**"), will be carved out and divested from the assets being acquired prior to the closing of the Cayman Merger. A true and correct copy of Exhibit F of the Merger Agreement is attached hereto as **Exhibit 8**.

44. I understand the Amended Complaint to be referring to the Carve-Out Business when it defines "the entertainment and educational segments of Ximalaya" to be the "Excluded Assets." *See* Am. Compl. ¶¶ 34, 88.

45. Although the Amended Complaint references Ximalaya's "live streaming" business (Am. Compl. ¶¶ 33-34), the Carve-Out Business does not include any live streaming business.

46. The concept of the Carve-Out Business did not exist until the Cayman Merger.

47. There was no concept of the Carve-Out Business at the time Hughes River acquired its shares in Ximalaya from ZendaiFM LP.

48. Ximalaya owned the Carve-Out Business at the time the Amended Complaint was filed, and still does.

49. The divestment of the Carve-Out Business will reduce only the consideration receivable by the Founders but will not reduce the cash or stock consideration payable to other shareholders, including Hughes River.

50. It is not clear to me what "external investments" in the Amended Complaint is referring to. *See* Am. Compl. ¶¶ 28, 38, 44.

51. TME's valuation of Ximalaya, as well as the consideration provided in the Merger Agreement, reflects the total value of Ximalaya's businesses and investments, including the Carve-Out Business. There is no exception for "external investments."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: August 27, 2025
                Shanghai, China

/s/ Jianjun Yu

8