**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HUGHES RIVER FM, LLC,<br>*a Delaware limited liability company,*<br><br>Plaintiff,<br><br>-against-<br><br>XIMALAYA, INC.,<br>*a Cayman Islands corporation,*<br>YU JIANJUN, *an individual,*<br>SEAMAN YU, *an individual,*<br>XIAOYU CHEN, *an individual,*<br>LI HAIBO, *an individual,*<br>and TENCENT MUSIC ENTERTAINMENT GROUP, INC., *a Cayman Islands corporation,*<br><br>Defendants. | Civil Case No. 1:25-cv-06217<br><br>Hon. Edmond E. Chang |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**YU JIANJUN, SEAMAN YU (DUPLICATE OF YU JIANJUN),**
**XIAOYU *[SIC]* CHEN, AND LI HAIBO'S**
**MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**


FACTUAL BACKGROUND ....................................................................................4

LEGAL STANDARD .........................................................................................5

ARGUMENT ......................................................................................................7

I. THE COMPLAINT SHOULD BE DISMISSED AGAINST THE INDIVIDUAL DEFENDANTS FOR LACK OF PERSONAL JURISDICTION. .....................................7

A. Legal Standard ..............................................................................................7

B. The Court Does Not Have General Jurisdiction Over The Individual Defendants ........................................................................................................7

C. The Court Does Not Have Specific Jurisdiction Over The Individual Defendants ........................................................................................................8

II. THE COMPLAINT WAS NOT PROPERLY SERVED ON THE INDIVIDUAL DEFENDANTS. ...........................................................................................12

A. Legal Standard ............................................................................................12

B. The Complaint Should Be Dismissed Because It Was Not Served on The Individual Defendants Through The Procedures of The Hague Convention. ..........................................................................................................13

III. THE DOCTRINE OF *FORUM NON CONVENIENS* REQUIRES DISMISSAL. ...........14

IV. PLAINTIFF'S DERIVATIVE CLAIMS MUST BE DISMISSED FOR FAILURE TO COMPLY WITH RULE 23.1. ...............................................................................14

V. PLAINTIFF'S RULE 10B-5 CLAIM (COUNT I) MUST BE DISMISSED. ..................15

A. Legal Standard ............................................................................................15

B. Plaintiff Has Failed to Properly Allege a 10b-5 Claim. .......................................17

VI. PLAINTIFF'S ILLINOIS BUSINESS CORPORATION ACT CLAIM (COUNT IV) MUST BE DISMISSED. ..................................................................................20

VII. PLAINTIFF'S CONVERSION CLAIM (COUNT VI) MUST BE DISMISSED. ...........20

A. Legal Standard ............................................................................................20

B. Plaintiff Has Failed to Properly Allege the Elements of a Conversion Claim .....................................................................................................................21

VIII. PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT (COUNT XII) MUST BE DISMISSED. .....................................................................................22

A. Legal Standard ............................................................................................22

B. Plaintiff Has Failed to Properly Allege a Claim for Declaratory Judgment. .........23

IX. THE BREACH OF FIDUCIARY DUTY CLAIM MUST BE DISMISSED. ..................23

A. Plaintiff's Breach of Fiduciary Claim Must Be Brought Derivatively. .................23

B. The Claim Against Mr. Li and Ms. Chen Fails Because They Did Not Owe a Fiduciary Duty. ....24

CONCLUSION ....25

# TABLE OF AUTHORITIES


Page(s)

**CASES**

*Abraham v. State Farm Mut. Auto. Ins. Co.*,
No. 19-CV-3028, 2021 WL 1209854 (N.D. Ill. Mar. 31, 2021)......6

*Addiction & Detoxification Inst., LLC v. Yee*,
No. 14 C 05648, 2015 WL 997166 (N.D. Ill. Mar. 3, 2015)......7

*Advanced Tactical Ordnance Sys., LLC v. Real Action Painall, Inc.*,
751 F.3d 796 (7th Cir. 2014)......10

*AIT Worldwide Logistics, Inc. v. Ramp Logic, Inc.*,
No. 03 C 7661, 2004 WL 769399 (N.D. Ill. Apr. 9, 2004)......9

*AnchorBank, FSB v. Hofer*,
649 F.3d 610 (7th Cir 2011)......15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......6

*Atkins v. City of Chicago*,
631 F.3d 823 (7th Cir. 2011)......6

*B.D. by & through Myer v. Samsung SDI Co.*,
91 F.4th 856 (7th Cir. 2024)......9

*Basic Inc. v. Levinson*,
485 U.S. 224, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988)......16, 19

*Beale v. Edgemark Fin. Corp.*,
164 F.R.D. 649 (N.D. Ill. 1995)......17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......6

*Bill Mareks the Competitive Edge, Inc. v. Mickelson Group, Inc.*,
346 Ill. App. 3d 996, 806 N.E.2d 280, 282 Ill. Dec. 305 (Ill. App. Ct. 2004)......22

*Bogie v. Rosenberg*,
705 F.3d 603 (7th Cir. 2013)......5

*Bristol-Myers Squibb Co. v. Superior Court*,
582 U.S. 255......11

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)......9

*Cardenas v. City of Chicago*,
646 F.3d 1001 (7th Cir. 2011) ....................12, 14

*Caremark, Inc. v. Coram Healthcare Corp.*,
113 F.3d 645 (7th Cir. 1997) ....................17

*Chen v. Partnerships & Unincorporated Associations Identified on Schedule A*,
2025 WL 47972 (N.D. Ill. Jan. 8, 2025) ....................12, 27

*Cohn v. Guaranteed Rate Inc.*,
130 F. Supp. 3d 1198 (N.D. Ill. 2015) ....................24

*Cornielsen v. Infinium Capital Mgmt., LLC*,
916 F.3d 589 (7th Cir. 2019) ....................16

*Design Inc. v. Synthetic Diamond Tech., Inc.*,
674 F. Supp. 1564 (N.D. Ill. 1987)

*Dixie Gas & Food, Inc. v. Shell Oil Co.*,
No. 03 C 8210, 2005 U.S. Dist. LEXIS 12010, 2005 WL 1273273 (N.D. Ill. May 25, 2005) ....................24

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) ....................20

*ePRINTit USA, LLC v. EnvisionWare, Inc.*,
No. 24 C 2298, 2024 U.S. Dist. LEXIS 240421, (N.D. Ill. Sep. 11, 2024) ....................6

*Gen. Motors Corp. v. Douglass*,
206 Ill. App. 3d 881, 565 N.E.2d 93, 96-97, 151 Ill. Dec. 822 (Ill. App. Ct. 1990)..........20, 21

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ....................16, 17, 19

*Groot Indus. v. Cordell*,
No. 08 C 4907, 2009 U.S. Dist. LEXIS 107628, 12-13 (N.D. Ill. Nov. 17, 2009)....................22

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258, 134 S. Ct. 2398 (2014)....................17

*High v. Oberhelman*,
No. 97 C 0184, 1999 WL 47034 (N.D. Ill. Jan. 25, 1999) ....................14

*Huang v. Fluidmesh Networks*,
LLC, No. 16-cv-9566, 2017 U.S. Dist. LEXIS 111608 (N.D. Ill. July 18, 2017)....................23

*Hunter Tech. Corp. v. Omega Glob. Techs., Inc.*,
505 F. Supp. 3d 802 (N.D. Ill. 2020)....................7

*Hyatt Int'l Corp. v. Coco*,
302 F.3d 707 (7th Cir. 2002

*In re Thebus*,
108 Ill.2d 255, 483 N.E.2d 1258, 91 Ill. Dec. 623 (Ill. 1985) ....................22

*Laures v. Progressive Cas. Ins. Co.*,
2022 WL 4778000 (S.D. Ill. Oct. 2, 2022) ....................26

*Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*,
938 F.3d 874 (7th Cir. 2019) ....................7

*LHLC Corp. v. Cluett, Peabody & Co.*,
842 F.2d 928 (7th Cir. 1988) ....................17

*Linkepic Inc v. Vyasil, LLC*,
146 F. Supp. 3d 943 (N.D. Ill. 2015) ....................7

*Long v. Bank of Am., N.A.*,
No. 17 CV 2756, 2018 U.S. Dist. LEXIS 190124 (N.D. Ill. Nov. 7, 2018) ....................24

*Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*,
391 F. Supp. 3d 816 (N.D. Ill. 2019) ....................12, 13

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27, 131 S. Ct. 1309 (2011) ....................20

*McCauley v. City of Chicago*,
671 F.3d 611 (7th Cir. 2011) ....................8

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) ....................23

*Menzies v. Seyfarth Shaw LLP*,
943 F.3d 328 (7th Cir. 2019) ....................19

*Merrill Lynch Equity Mgmt., Inc. v. Kazmi*,
No. 87 C 10712, 1988 WL 121585 (N.D. Ill. Nov. 4, 1988) ....................14

*Motorola Sols., Inc. v. Hytera Commc'ns Corp.*,
365 F. Supp. 3d 916 (N.D. Ill. 2019) ....................13

*Northbound Grp., Inc. v. Norvax, Inc.*,
5 F. Supp. 3d 956 (N.D. Ill. 2013), *aff'd*, 795 F.3d 647 (7th Cir. 2015) ....................24, 26

*NSM Music, Inc. v. Villa Alvarez*,
No. 02 C 6482, 2003 WL 685338 (N.D. Ill. Feb. 25, 2003) ....................12, 13

*Patel v. CBC Pharma Holdco LLC*,
No. 24 C 8110, 2025 WL 972868 (N.D. Ill. Mar. 31, 2025) ....................................................8

*Philips Med. Sys. (Cleveland), Inc. v. Buan*,
No. 19 CV 2648, 2021 WL 83736 (N.D. Ill. Jan. 11, 2021)....................................................6

*Phillips v. Prudential Ins. Co. of Am.*,
714 F.3d 1017 (7th Cir. 2013) ..........................................................................................5

*Pugh v. Tribune Co.*,
521 F.3d 686 (7th Cir. 2008) ..........................................................................................15

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
338 F.3d 773 (7th Cir. 2003) ........................................................................................7, 8

*Ray v. Karris*,
780 F.2d 636 fn. 1 (7th Cir. 1985) ..................................................................................17

*Richardson v. Se. Conf.*,
612 F. Supp. 3d 753 (N.D. Ill. 2020) ...............................................................................11

*Richardson RFPD, Inc. v. Nexus Techs., Inc.*,
No. 20-CV-02754, 2021 WL 4264380, (N.D. Ill. Sept. 20, 2021) ...................................11, 12

*Santa Fe Industries, Inc. v. Green*,
430 U.S. 462, 51 L. Ed. 2d 480, 97 S. Ct. 1292 (1977) ..........................................................18

*Sears v. Likens*,
912 F.2d 889 (7th Cir. 1990) ..........................................................................................16

*SEC v. Jakubowski*,
150 F.3d 675 (7th Cir. 1998) ..........................................................................................17

*Solo Cup Co. v. First Sw. Vending & Food Serv.*,
No. 07 C 4384, 2008 WL 2787442 (N.D. Ill. July 17, 2008) .............................................9, 11

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
128 S. Ct. 761, 169 L. Ed. 2d 627 (2008) ..........................................................................15

*Strnad v. Kabel*,
No. 24-cv-6177, 2024 WL 4802565 (N.D. Ill. Nov. 15, 2024) ...............................................25

*Sungard Data Sys., Inc. v. Cent. Parking Corp.*,
214 F. Supp. 2d 879 (N.D. Ill. 2002) .................................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308, 324, 127 S. Ct. 2499 (2007)..........................................................................20

*Toll Processing Servs., LLC v. Kastalon Polyurethane Prods.*,
880 F.3d 820 (7th Cir. 2018) ....................21, 22

*Toscano v. Koopman*,
148 F. Supp. 3d 679 (N.D. Ill. 2015) ....................25

*Tricontinental Indus. v. PricewaterhouseCoopers, LLP*,
475 F.3d 824 (7th Cir. 2007) ....................20

*Trinidad v. PDD Holdings, Inc.*,
No. 23-CV-04786, 2024 WL 3177912 (N.D. Ill. June 26, 2024) ....................9

*Uni*Quality, Inc. v. Infotronx, Inc.*,
974 F.2d 918 (7th Cir. 1992) ....................16

*United Airlines, Inc. v. Zaman*,
152 F. Supp. 3d 1041 (N.D. Ill. 2015) ....................11

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
20 F.3d 771 (7th Cir. 1994) ....................16

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
486 U.S. 694 (1988) ....................13

*Water Splash Inc. v. Menon*,
137 S. Ct. 1504 (2017) ....................13

*Williamson v. Curran*,
714 F.3d 432 (7th Cir. 2013) ....................6

*Wragge v. Boeing Co.*,
No. 20-CV-04457, 2022 WL 4119777 (N.D. Ill. Sept. 9, 2022) ....................26

*Yates v. Yee Mei Cheung*,
No. C10-5404 TEH, 2012 WL 3155700 (N.D. Cal. Aug. 2, 2012) ....................13

**RULES**

Fed.R.Civ.P. 4 ....................14

Fed. R. Civ. P. 4(f) ....................12

Fed. R. Civ. P. 9(b) ....................15, 19

Fed. R. Civ. P. 12(b)(2) ....................1, 4, 26

Fed. R. Civ. P. 12(b)(4) ....................1, 4, 26

Fed. R. Civ. P. 12(b)(5) ....................1, 4, 14, 26

Fed. R. Civ. P. 12(b)(6) ........ 1, 4, 26

Fed. R. Civ. P. 23.1(b)(3) ........ 25

Rule 9(b) ........ 16, 18

Rule 10b-5 ........ passim

Rule 12(b)(2) ........ 6

Rule 12(b)(6) ........ 6

Rule 23.1 ........ 1, 3, 15

**STATUTES**

15 U.S.C. § 78u-4(b)(2)(A) ........ 16

28 U.S.C. § 2201(a) ........ 23

Section 10(b) ........ 3, 15, 20

Section 21D(b)(2) ........ 16

It is difficult to overstate the comprehensive deficiencies of the claims of the Plaintiff Hughes River FM, LLC ("**Hughes River**") against the Defendants Yu Jianjun, Seaman Yu (duplicate of Yu Jianjun), Xiaoyu [*sic*] Chen, and Li Haibo (collectively, the "**Individual Defendants**"). Specifically:

- In its Amended Complaint (or "AC"), the Plaintiff fails entirely to state allegations of fact establishing personal jurisdiction over the Individual Defendants;
- The Plaintiff has not even attempted proper service upon the Individual Defendants;
- The Plaintiff simply ignores the governing arbitration clause of the Shareholder Agreement, which requires arbitration of Plaintiff's claims and thus dismissal of this action on grounds of *forum non conveniens*;
- As to its derivative claim for securities fraud, the Plaintiff fails to state a competent Rule 10b-5 claim on multiple grounds, and both that and all of Plaintiff's other derivative claims are subject to dismissal for their wholesale failure to meet the requirements of Rule 23.1;
- As to its claims putatively arising out of corporate law, those claims also are governed by Caymans law and are fatally ill-pled; and
- Plaintiff's ostensible tort claims and claims for breach of fiduciary duty lack supporting allegations of specific fact, sufficient to avoid dismissal.

All of these deficiencies remain even after the Plaintiff has amended its Complaint, and there is no prospect that they can be remedied. The Individual Defendants thus respectfully request that, pursuant to Federal Rule of Civil Procedure 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6), the Court dismiss the claims against them, in their entirety and with prejudice.

## PRELIMINARY STATEMENT

This action is brought by a sophisticated shareholder of a Cayman Islands company, the principal of which is a repeat player in shareholder disputes, in an attempt to strong-arm from Defendant Ximalaya, Inc. ("**Ximalaya**") an unwarranted higher price for its -- and only its -- shares of stock. Plaintiff failed to bring an arbitration in Hong Kong despite a governing mandatory arbitration agreement, or to bring a derivative action or a dissenting shareholder's action in the Cayman Grand Court to establish the fair value of its shares. Instead, Plaintiff chose to commence this action in Illinois, ostensibly because its sole member is alleged to reside in Lake Forest, Illinois, and Plaintiff allegedly maintains its principal place of business in Lake Forest, Illinois. AC (Dkt. 42) ¶¶ 1, 11; Plaintiff's Corporate Disclosure Statement (Dkt. 25) at 1. Upon information and belief, however, Plaintiff's supposed Illinois "principal place of business" is a residential property held by two individuals, Xue-Bing Jiang and Xue-Qin Jin, who are not party to this action.

Plaintiff asserts a series of claims against the Individual Defendants, alleging that they approved of the proposed acquisition of Ximalaya by Tencent Music Entertainment Group ("**Tencent Acquisition**"), and engaged in several instances of wrongdoing in connection with that proposed acquisition. However, none of the Individual Defendants or the AC's allegations have any relation to this forum and, as discussed herein, the AC's allegations are both visibly meritless and, fatally for purposes of the present Motion, categorically insufficient to state any claim.

The AC must be dismissed against the Individual Defendants because there is no personal jurisdiction over them in Illinois. The AC provides only threadbare jurisdictional allegations, asserting that the Individual Defendants generally have been regularly conducting business in the State of Illinois, including the transaction at issue or some part thereof, and that the Individual Defendants approved of the Tencent Acquisition and that a form agreement was sent to Plaintiffs.

*See* AC, *passim*. But in reality, none of the Individual Defendants conduct business in the United States, own property in the United States, have a bank account in the United States, or directed any actions into Illinois. *See* Ex. A, Declaration of Jianjun Yu ("**Yu Decl.**") ¶¶ 8-11; Ex B., Declaration of Yuxin Chen ("**Chen Decl.**") ¶¶ 6-8; Ex. C, Declaration of Haibo Li ("**Li Decl.**") ¶¶ 6-8. The only alleged connection between the relevant transaction and Illinois is the delivery of one email from Ximalaya to Plaintiff's representatives, Mr. Kai Jiang and Mr. Peter Zhu. However, Mr. Jiang appeared in person in multiple negotiations with Ximalaya in Shanghai, China, shortly before and after the identified email was transmitted. Furthermore, Plaintiff had disclosed its address as being located in Shanghai in Ximalaya's 2020 Shareholder Agreement ("**Shareholder Agreement**"). *See* Declaration of Jianjun Yu in support of Ximalaya's Motion to Dismiss (Dkt. 55-2) ("**Yu Xim. Decl.**") ¶ 18. In addition, in January 2025, Plaintiff informed Ximalaya that it moved to another Shanghai address, and in April 2025, Mr. Zhu communicated with Ximalaya with an email signature providing his address to be in Shanghai. *See Id.* ¶¶ 19, 33.

Moreover, Plaintiff has made no attempt to properly serve the Individual Defendants pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("**Hague Convention**"), and the AC should also be dismissed, in its entirety, on grounds of *forum non conveniens*, in favor of arbitration in Hong Kong. Further, Plaintiff's breach of fiduciary claim is governed by Cayman Islands law under which it must be brought derivatively, and many of the AC's allegations—such as that Haibo Li is a Ximalaya director (he is not)—are false.

Plaintiff's derivative claims—all of the Plaintiff's claims against the Individual Defendants but one—should likewise be dismissed for failure to comply with the requirements of Rule 23.1. Plaintiff's claim for securities fraud, under Section 10(b) of the Securities Exchange Act and Rule 10b-5, should be dismissed for Plaintiff's failure to plead an actionable misrepresentation or

omission, causation, reliance, loss and loss causation. The Plaintiff's claim for "Violation of the Illinois Business Corporation Act" fails even to state a cognizable claim under the law, and the Plaintiff's remaining claims in tort are thoroughly devoid of specific factual allegations in support.

The Individual Defendants thus respectfully request that the Court grant their Motion to Dismiss the AC in its entirety pursuant to Fed. R. Civ. P. 12(b)(2), (4), (5), and (6), with prejudice.

## FACTUAL BACKGROUND

Ximalaya is a Cayman Islands company with its principal place of business in Shanghai, China. AC ¶ 2. The AC alleges that Plaintiff is a Delaware company with its principal place of business located at 1100 Jensen Road, Lake Forest, Illinois. AC ¶ 1. Upon information and belief, Plaintiff is not registered to do business in the State of Illinois and the Lake Forest address is not a business address, but the address of a residential property owned by two non-party individuals, Xue-Bing Jiang and Xue-Qin Jin.

The Individual Defendants all reside in China, are Chinese citizens, and do not conduct business, have bank accounts or own property in the United States. *See* Li Decl. ¶¶ 3-8; *see also* Declaration of Yuxin Chen ("**Chen Decl.**") ¶¶ 6-8; *see also* Yu Decl. ¶¶ 6-10. Mr. Li was employed by Ximalaya from June 1, 2016 to January 15, 2022 as a Business Development Director; he never served on Ximalaya's Board of Directors. *See* Li Decl. ¶¶ 9-10. Ms. Chen and Mr. Yu are co-founders of Ximalaya; Ms. Chen stepped down from Ximalaya's board of directors on April 30, 2021, and Mr. Yu is on Ximalaya's board of directors and serves as Chief Executive Officer. *See* Chen Decl. ¶ 10; *see also* Yu Decl. ¶ 2. Plaintiff is a Ximalaya shareholder which purchased its shares in 2020 from a third-party that is unrelated to Ximalaya. *See* Yu Xim. Decl. ¶ 28, Ex. 5 (Register of Members) (Dkt. 55-2)[1]; *id.* at Ex. 3 (Consent Letter).

[1] The Court may consider the exhibits attached to Mr. Yu's declaration in support of Ximalaya's motion to dismiss because they are referenced or attached to the AC and/or central to the claims

On or about April 16, 2025, Ximalaya sent Plaintiff a Voting Undertaking Letter ("**VUL**")[2] in connection with the Tencent Acquisition. AC ¶ 29; *id.* at Exhibit A (the AC describes it as the "Election Form"); *see also* Yu Xim. Decl. ¶ 34 (Dkt. 55-2). The VUL was sent by email to Mr. Jiang and Mr. Peter Zhu—Plaintiff's representatives identified in Ximalaya's Shareholder Agreement. *Id.* ¶ 36, Ex. 7. Hughes River, in Ximalaya's Shareholder Agreement, disclosed its address to be *in Shanghai* and informed Ximalaya in January of 2025 that it changed its address to a new address *in Shanghai*. *See id.* ¶¶ 18-19. On or about April 10, April 22, and May 28, 2025, representatives of Ximalaya and Hughes River had four face-to-face meetings in Shanghai to discuss the VUL and the Tencent Acquisition. *Id.* ¶ 38. Mr. Jiang and Mr. Yu were present in person at each meeting. *Id*. On April 14 and 16, 2025, Plaintiff's representative emailed Ximalaya with an email signature block that provides an address in Shanghai. *Id.* ¶ 41, Ex. 7.

On June 12, 2025, Plaintiff attempted to serve the Individual Defendants by delivering copies of the Complaint to Ximalaya's agent in the Cayman Islands. *See* Dkt. 27, 29, 31, 32. Plaintiff has not attempted to serve the Individual Defendants through the procedures of the Hague Convention. *See, e.g.*, Dkt. 26, Joint Initial Status Report at p. 5, § 2(a) ("Plaintiff is considering attempting to serve the Individual Defendants personally by way of the Hague Convention.").

## LEGAL STANDARD

A complaint should be dismissed where, as here, its claims suffer from legal deficiencies as a matter of law and thus do not give rise to "entitlement to relief." *Bell Atl. Corp. v. Twombly*,

---

alleged therein. On a motion to dismiss, courts "must consider not only the complaint itself, but also documents attached to the complaint" and "documents that are critical to the complaint and referred to in it." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013) (citation and internal quotation marks omitted). "When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

[2] The Amended Complaint describes the VUL as the "Election Form." *Id.* ¶ 29.

550 U.S. 544, 558 (2007). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] their claims across the line from conceivable to plausible" and the "allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 570. Courts are "free to reject at the motion to dismiss stage . . . a legal conclusion." *Abraham v. State Farm Mut. Auto. Ins. Co.*, No. 19-CV-3028, 2021 WL 1209854, at *4 (N.D. Ill. Mar. 31, 2021).

A court should "read[] the complaint and assess[] its plausibility as a whole." *ePRINTit USA, LLC v. EnvisionWare*, Inc., No. 24 C 2298, 2024 U.S. Dist. LEXIS 240421, at *5 (N.D. Ill. Sep. 11, 2024) (citing *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011)). In the Seventh Circuit, courts "have taken a broader view of documents that may be considered on a motion to dismiss," including "documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Likewise, "[i]t is well-settled that the court is not cabined to the four corners of the complaint when evaluating a motion to dismiss for lack of personal jurisdiction." *See Philips Med. Sys. (Cleveland), Inc. v. Buan*, No. 19 CV 2648, 2021 WL 83736, at *2 (N.D. Ill. Jan. 11, 2021) (quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003)); *see also Sungard Data Sys., Inc. v. Cent. Parking Corp.*, 214 F. Supp. 2d 879, 880 (N.D. Ill. 2002). Indeed, where, as here, "the defendant has submitted affidavits and other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue,* 338 F.3d at 783.

## ARGUMENT

### I. THE COMPLAINT SHOULD BE DISMISSED AGAINST THE INDIVIDUAL DEFENDANTS FOR LACK OF PERSONAL JURISDICTION.

#### A. Legal Standard

"If a court lacks personal jurisdiction over a party to an action, it must dismiss the case as to that party." *Hunter Tech. Corp. v. Omega Glob. Techs., Inc.*, 505 F. Supp. 3d 802, 805 (N.D. Ill. 2020) (citing Fed. R. Civ. P. 12(b)(2)). The exercise of personal jurisdiction must comport with due process requirements and must be supported by allegations of specific fact establishing the existence of general or specific personal jurisdiction. "The 'constitutional touchstone' is 'whether the defendant purposefully established 'minimum contacts' in the forum State ... such that he should reasonably anticipate being haled into court there.'" *Addiction & Detoxification Inst., LLC v. Yee*, No. 14 C 05648, 2015 WL 997166, at *2 (N.D. Ill. Mar. 3, 2015) (citation omitted). The "plaintiff bears the burden of establishing that jurisdiction is proper[.]" *Linkepic Inc v. Vyasil, LLC*, 146 F. Supp. 3d 943 (N.D. Ill. 2015).

#### B. The Court Does Not Have General Jurisdiction Over The Individual Defendants

General jurisdiction permits a court to hear any claim against a defendant, regardless of whether the claim has any connection to the forum state. *See Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019). "For a state to have such extensive jurisdiction over a defendant, however, the defendant's contacts must be so []continuous and systematic[] as to render [it] essentially at home in the forum state." *Id.* (citation and internal quotation marks omitted). With respect to an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Patel v. CBC Pharma Holdco LLC*, No. 24 C 8110, 2025 WL 972868, at *6 (N.D. Ill. Mar. 31, 2025) (citation omitted).

The AC asserts no allegations that would allow this Court to exercise general jurisdiction over the Individual Defendants. Rather, the AC concedes that all Individual Defendants are Chinese citizens. *See* AC ¶¶ 6-9. None of the Individual Defendants own property in the United States, have bank accounts in the United States, or conduct any business in the United States. *See* Yu Decl. ¶¶ 9-11; Chen Decl. ¶¶ 6-8; Li Decl. ¶¶ 6-8. All the Individual Defendants are Chinese citizens domiciled in China. *See* Yu Decl. ¶¶ 6-7; Chen Decl. ¶¶ 3-5; Li Decl. ¶¶ 3-5. While Plaintiff alleges that the Individual Defendants "have committed a tort . . . in the State of Illinois and this judicial district," (AC ¶ 20) this is a legal conclusion with no supporting factual allegations that can and should be disregarded. *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) ("alleged 'facts' [that] are actually legal conclusions . . . may be disregarded on a motion to dismiss"). Thus, the Court does not have general jurisdiction over the Individual Defendants. *See Patel*, 2025 WL 972868, at *6 (no general jurisdiction where individual defendants did not "live or work in Illinois, nor do they have bank accounts, property, or offices in Illinois").

### C. The Court Does Not Have Specific Jurisdiction Over The Individual Defendants

The exercise of specific personal jurisdiction requires

> "(1) purposeful availment—the defendant must have purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the forum;
> (2) relatedness—the alleged injury must arise out of or relate to the defendant's forum-related activities; and
> (3) fairness—the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice."

*B.D. by & through Myer v. Samsung SDI Co.*, 91 F.4th 856, 861 (7th Cir. 2024) (internal citation omitted). The party's activities at issue "must create a substantial connection with the forum. … Unrelated contacts or contacts that fail to 'provide the factual basis for the plaintiff's claim are not

relevant to a specific jurisdiction inquiry.'" *Trinidad v. PDD Holdings, Inc.*, No. 23-CV-04786, 2024 WL 3177912, at *5 (N.D. Ill. June 26, 2024) (citations omitted).

Here, Plaintiff alleges no facts establishing specific personal jurisdiction over the Individual Defendants. None of the allegations in the AC that support Plaintiff's claims against these Defendants have any substantive relation to Illinois. Rather, as set forth in greater detail below, the allegations that pertain (only glancingly) to Illinois have nothing to do with the claims, and the allegations having to do with the claims have nothing to do with Illinois. Forcing the Individual Defendants to litigate in Illinois thus plainly would not comport with fair play and substantial justice. *See B.D. by & through Myer*, 91 F.4th at 861.

First, the Individual Defendants have not purposefully availed themselves of any privilege of doing business in Illinois. A defendant avails itself of a forum's benefits when they purposefully direct activities at the forum such that, by virtue of the benefits received, they should reasonably expect to be haled into that forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473-76 (1985). While Plaintiff alleges that "some part" of the Tencent Acquisition took place in Illinois (AC ¶ 22), that transaction has nothing to do with Illinois and its drafting, negotiations, and approvals took place in China. Yu Xim. Decl. ¶ 42 (Dkt. 55-2); *see AIT Worldwide Logistics, Inc. v. Ramp Logic, Inc.,* No. 03 C 7661, 2004 WL 769399, at *3 (N.D. Ill. Apr. 9, 2004) (granting motion to dismiss; even though "the [defendants] did have frequent telephone and facsimile contact with [plaintiff] in Illinois, these communications related to the contract which was to be performed entirely outside of Illinois ... Moreover, the [defendants] never traveled to Illinois in negotiating the contract, did not execute any part of the contract in Illinois and none of the Assets were located in Illinois.").

The only alleged connection to Illinois is that Ximalaya transmitted an email attaching the VUL to Plaintiff "in this Judicial District" from Shanghai. (AC ¶ 29). But the Individual Defendants were not involved in the drafting of the VUL.[3] *See* Yu Decl. ¶ 12; Chen Decl. ¶ 12; Li Decl. ¶ 12. Further, the VUL was drafted and negotiated in China. *See* Yu Decl. ¶ 12. The email transmitting the VUL was directed to Shanghai, not Illinois.[4] Indeed, "Hughes River has never informed Ximalaya that it maintains offices in Illinois, and has held itself out as a Chinese business." Yu Xim. Decl. ¶ 17 (Dkt. 55-2). Ximalaya's Shareholders Agreement indicates that Plaintiff's principal office is in Shanghai. *Id.* ¶ 18.

In January 2025, Plaintiff moved offices from one address in Shanghai to another in Shanghai. *See id.* ¶ 19. The contemporaneous email correspondence from Plaintiff indicate that it is and has been based in Shanghai at all relevant times. *Id.* ¶¶ 33, 41, Exs. 6, 7. Prior to and after the transmission of the VUL, representatives of Ximalaya and Plaintiff, including Mr. Jiang, had multiple in-person meetings – *in Shanghai*. *See Id.* ¶ 38. Thus, to the extent Plaintiff alleges that Ximalaya directed any activity at Illinois by sending the VUL through email, that argument has no merit. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Painall, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014), *as corrected* (May 12, 2014) (no personal jurisdiction where defendant sent multiple emails to the forum; "email does not exist in any location at all; it bounces from one server to another, it starts wherever the account-holder is sitting when she clicks the 'send' button, and it winds up wherever the recipient happens to be at that instant"); *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1052-53 (N.D. Ill. 2015) (no personal jurisdiction where the

---

[3] Mr. Li had no part in any approvals or disclosures of the Tencent Acquisition or VUL because he is not a Ximalaya Director or Officer. *See* Li Decl. ¶ 10.

[4] The VUL was sent to the sole member and Mr. Peter Zhu, who are Plaintiff's notice parties under Ximalaya's Shareholder Agreement—which provides an address for each recipient in Shanghai. *See* Yu Xim. Decl. ¶ 33, Ex. 2 at Schedule E (Dkt. 55-2).

majority of communications took place with an individual whose signature block's address was outside of the forum, and one call and email chain was "too sparse to create personal jurisdiction").

Second, the AC does not allege a substantial connection between the VUL or the Tencent Acquisition and the Individual Defendants' conclusorily-alleged, supposedly Illinois-based torts. "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264. The circumstances underlying Plaintiff's claims, allegedly being the approval of the Tencent Acquisition and withholding undisclosed information, have no relation to Illinois. *Richardson v. Se. Conf.*, 612 F. Supp. 3d 753, 766 (N.D. Ill. 2020) ("where a plaintiff alleges an intentional tort . . . 'the inquiry focuses on whether the conduct underlying the claim[ ] was purposely directed at the forum state.'") (citation omitted).

Third, it would not comport with the principles of fair play and substantial justice to require the Individual Defendants -- all of whom reside in China, did not direct any actions into Illinois, do not own property in the United States, do not have a bank account in the United States, and do not conduct business in the United States -- to defend themselves in Illinois. *See* Yu Decl. ¶¶ 6-11; Li Decl. ¶¶ 4-8; Chen Decl. ¶¶ 4-8; *Solo Cup Co. v. First Sw. Vending & Food Serv.*, No. 07 C 4384, 2008 WL 2787442, at *7 (N.D. Ill. July 17, 2008) (personal jurisdiction did not comport with fair play and substantial justice where defendant's premises, employees and relevant documents were out of state); *Richardson RFPD, Inc. v. Nexus Techs.*, Inc., No. 20-CV-02754, 2021 WL 4264380, at *2-5 (N.D. Ill. Sept. 20, 2021) (finding "it would not be fair to require [defendant] to defend the lawsuit in Illinois when it lacks the minimum contacts with the state").

Plaintiff has entirely failed to state any competent basis for the exercise of personal jurisdiction over the Individual Defendants. And there is no prospect that the Plaintiff will be able

to cure these wholesale failures of jurisdictional pleading. The claims against the Individual Defendants therefore must be dismissed in their entirety, and should be dismissed with prejudice.

## II. THE COMPLAINT WAS NOT PROPERLY SERVED ON THE INDIVIDUAL DEFENDANTS.

### A. Legal Standard

"A defendant may enforce the service of process requirements through a pretrial motion to dismiss." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011) (citing Fed.R.Civ.P. 12(b)(5)). "Only proper service [can] vest[] a district court with personal jurisdiction over a defendant." *Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 391 F. Supp. 3d 816, 821 (N.D. Ill. 2019). "The plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Cardenas*, 646 F.3d at 1005.

Fed. R. Civ. Proc. 4(f) "governs service upon foreign individuals [and] provides that service is to be made by internationally agreed means, such as those authorized in the Hague Convention[.]" *NSM Music, Inc. v. Villa Alvarez*, No. 02 C 6482, 2003 WL 685338, at *1 (N.D. Ill. Feb. 25, 2003). "Both the United States and China are signatories to the Hague … which governs the service of process in civil matters when a defendant's address is known." *Chen v. Partnerships & Unincorporated Associations Identified on Schedule A*, 2025 WL 47972 (N.D. Ill. Jan. 8, 2025); "A plaintiff cannot close its eyes to the obvious to avoid the Hague [Convention]; the plaintiff must make reasonably diligent efforts to learn the defendant's mailing address." *Luxottica*, 391 F.Supp. 3d at 823.

The Hague Convention "contemplates personal service via the authorities of the country of destination, or through the originating country's consular officials in the country of destination." *See NSM Music, Inc.*, WL 685338, at *1. "[C]ompliance with the [Hague] Convention is

mandatory in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988); *Water Splash Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017).

**B. The Complaint Should Be Dismissed Because It Was Not Served on The Individual Defendants Through The Procedures of The Hague Convention.**

As memorialized in Plaintiff's purported proofs of service (Dkt. 27, 29, 31, 32), Plaintiff attempted to serve the Individual Defendants, who reside in China (*See* Yu Decl. ¶ 7; Li Decl. ¶ 4; Chen Decl. ¶ 4), solely by delivering copies of the Complaint and Summons to Ximalaya's agent in the Cayman Islands—which is impermissible under the Hague. Service on Chinese citizens located in China is prohibited by any means other than through China's embassy or consulate. *See, e.g.*, *Yates v. Yee Mei Cheung*, No. C10-5404 TEH, 2012 WL 3155700, at *3 (N.D. Cal. Aug. 2, 2012) ("[W]here the foreign nation is a party to the Hague Convention … an individual residing in that country shall be served by the method dictated in the Hague Convention."); *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 927 (N.D. Ill. 2019) ("The embassy or a consulate in the People's Republic of China of a foreign state may serve documents on, investigate, and take evidence from its citizens … no foreign agency or individual may, without the consent of the competent authorities of the People's Republic of China, serve documents…"). China's Civil Procedure Law accords with the Hague Convention and specifies that service may only be made by way of China's Central Authority, and that "[t]here is no [informal delivery] process in the Chinese domestic law, and the addressee may refuse to accept it [if made informally] in any case."[5]

Plaintiff has admitted to making no attempt to serve the Individual Defendants pursuant to the Hague Convention and/or through China's Central Authority. In the parties' joint initial status

---

[5] *See Hague Conference on Private International Law, China-Central Authority & Practical Information*, available at https://www.hcch.net/en/states/authorities/details3/?aid=243 (last visited July 17, 2025).

report to the Court, Plaintiff stated that it "is considering attempting to serve the Individual Defendants personally by way of the Hague Convention." *See* Dkt. 26 at p. 5, § 2(a).

Accordingly, Plaintiff's attempt to bypass the Hague Convention should be rejected and the Individual Defendants respectfully request that the claims against them be dismissed pursuant to Fed. R. Civ. P. 12(b)(5). *See, e.g.*, *High v. Oberhelman*, No. 97 C 0184, 1999 WL 47034, at *4 (N.D. Ill. Jan. 25, 1999) ("The court has no personal jurisdiction over [defendant] since [defendant] has not been served in accordance with Fed.R.Civ.P. 4.").

In any event, service upon the Individual Defendants by delivering copies of the AC intended for them to Ximalaya's Cayman agent is improper because "[u]nder Illinois law, serving an individual's employer or other putative agent is not sufficient for service on the individual." *Cardenas*, 646 F.3d at 1005; *see also Merrill Lynch Equity Mgmt., Inc. v. Kazmi*, No. 87 C 10712, 1988 WL 121585, at *2 (N.D. Ill. Nov. 4, 1988) ("[s]ervice upon an individual through a nonauthorized agent for service of process at the individual's place of business is not proper means of service of process under the Federal Rules of Civil Procedure.") (citation omitted).

## III. THE DOCTRINE OF *FORUM NON CONVENIENS* REQUIRES DISMISSAL.

The Individual Defendants assert that this matter should be dismissed in favor of an arbitration in Hong Kong under the doctrine of *forum non conveniens*. The Individual Defendants rely on the law and argument regarding dismissal under the doctrine of *forum non conveniens* contained in Ximalaya's dismissal briefing, and hereby incorporate the same.

## IV. PLAINTIFF'S DERIVATIVE CLAIMS MUST BE DISMISSED FOR FAILURE TO COMPLY WITH RULE 23.1.

The Individual Defendants likewise concur with Ximalaya's argument in its Motion to Dismiss that Plaintiff's derivative claims must be dismissed for failure to comply with Rule 23.1.

## V. PLAINTIFF'S RULE 10B-5 CLAIM (COUNT I) MUST BE DISMISSED.

### A. Legal Standard

"In a typical § 10(b) private action, a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008) (citing *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761, 768, 169 L. Ed. 2d 627 (2008)).

Heightened pleading requirements apply to claims of fraud under § 10(b). Federal Rule of Civil Procedure 9(b) provides that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." This generally means "describing the 'who, what, when, where, and how' of the fraud." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir 2011). Even before the enactment of the Private Securities Litigation Reform Act of 1995 (PSLRA), this court held that securities fraud claims must satisfy Rule 9(b)'s particularity standard. *See Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990). "Section 21D(b)(2) of the PSLRA added the requirement that complaints alleging securities fraud 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.' 15 U.S.C. § 78u-4(b)(2)(A)." *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 598-99 (7th Cir. 2019). "Any complaint alleging a material misstatement or omission must also 'specify each statement alleged to have been misleading' and the 'reason or reasons why the statement is misleading.' *Id.* § 78u-4(b)(1)." *Id.*

To satisfy Rule 9(b)'s particularity standard, a complaint must "state 'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and

the method by which the misrepresentation was communicated to the plaintiff.'" *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (internal quotation marks omitted) (quoting *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992)). As a result, "[a] complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient." *Sears*, 912 F.2d at 893 (*quoting Design Inc. v. Synthetic Diamond Tech., Inc.*, 674 F. Supp. 1564, 1569 (N.D. Ill. 1987)).

**"**Reliance on a misrepresentation (sometimes called 'transaction causation') is an essential element of a Rule 10b-5 action, but the Supreme Court has recognized a rebuttable presumption of reliance for anyone who purchased a security in an efficient market." *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 429 (7th Cir. 2015) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988)). "The presumption recognized in *Basic* is premised on the 'fraud on the market' theory, which posits that 'in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business. ... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.'" *Id.* To invoke the presumption, the plaintiffs must prove: "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 134 S. Ct. 2398 (2014).

A plaintiff in a securities fraud action under Rule 10b-5 must also plead, not only "transaction causation," but also "loss causation." *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997). To plead transaction causation, the plaintiff must allege that it would not have invested in the instrument if the defendant had stated truthfully the material facts

at the time of sale. To plead loss causation, the plaintiff must allege that it was the very facts about which the defendant lied that caused its injuries. *See LHLC Corp. v. Cluett, Peabody & Co.*, 842 F.2d 928, 931 (7th Cir. 1988). In other words, "[t]he plaintiff must allege that it was in fact injured by the misstatement or omission of which it complains." *Caremark*, 113 F.3d at 649.

The "forced seller" doctrine "broadly construes the term 'sale' in Rule 10b-5 and considers shareholders to be sellers under the Act when the nature of the investment had been fundamentally and involuntarily changed even though they had not actually sold or purchased shares of stock." *Beale v. Edgemark Fin. Corp.*, 164 F.R.D. 649, 655 (N.D. Ill. 1995) (citing *Ray v. Karris,* 780 F.2d 636, 640 fn. 1 (7th Cir. 1985)). However, the Seventh Circuit has limited the application of the forced seller doctrine to exclude claims such as the Plaintiff's claim against the Individual Defendants here. For instance, in *SEC v. Jakubowski*, 150 F.3d 675 (7th Cir. 1998), the court rejected the application of the forced seller doctrine and emphasized that Rule 10b-5 requires a direct connection to an investment decision, such as a purchase or sale of securities, rather than a broader interpretation involving fundamental changes to the investment not connected to a purchase or sale. This reflects the influence of the Supreme Court's decision in *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 51 L. Ed. 2d 480, 97 S. Ct. 1292 (1977), which held that corporate mismanagement or breaches of fiduciary duty do not constitute securities fraud under Rule 10b-5 unless they involve deceptive or manipulative practices in the purchase or sale of securities.

**B. Plaintiff Has Failed to Properly Allege a 10b-5 Claim.**

Plaintiff's 10b-5 claim must be dismissed because Plaintiff has not pled it with the heightened particularity required for securities fraud claims and failed to allege all elements required to sustain such a claim. Plaintiff's 10b-5 claim wholly fails to meet Rule 9(b)'s heightened pleading standard. The AC does not allege a single specific misrepresentation or omission made by the Individual Defendants. Instead, the 10b-5 claim is premised on a few

conclusory allegations, including that: (i) the Individual Defendants "failed to timely disclose that the sale of Ximalaya's assets to Tencent… excluded certain assets of the Company… and that there was a disparity in share price being paid to shareholders of Ximalaya by Tencent under the terms of the Merger;" (ii) the Individual Defendants "failed to include the multiple external investments and the fair value of the same" in connection with the Merger; and (iii) the Individual Defendants were "aware of the Excluded Assets, lack of fair valuation of the shares, and the disparity in compensation to be paid to them." AC ¶¶ 48, 55, 57.

These allegations fall far short of Rule 9(b)'s particularity requirement. The AC conspicuously omits any allegations concerning specific circumstances that might give rise to the alleged 10b-5 fraud -- who, what, when, where, and how of the alleged fraud. It fails to state allegations of specific fact showing any actionable misrepresentation or omission. *See, e.g.*, *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019) (Rule 9(b) requires that each instance of fraud must be alleged with "precision and some measure of substantiation"). The AC refers nebulously to certain meetings and email communications, but those allegations are visibly unconnected to the Plaintiff's acquisition of shares in Ximalaya.

The Plaintiff's factual allegations thus fail to allege specific facts showing a connection between any misrepresentation or omission and the Plaintiff's acquisition of the Company's shares, and also fail to allege reliance. *See, e.g., Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 429 (7th Cir. 2015). The Supreme Court has recognized a rebuttable presumption of reliance, and thus transaction causation, for anyone who purchased a security in an efficient market. *Id.* (*citing Basic*, 485 U.S. 224, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988)). To invoke the presumption, though, the plaintiffs must allege facts showing: "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in

an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed." *Id*. Here, Plaintiff merely states that it "relied upon the accuracy and completeness of the disclosures and the lack of any further disclosures… in connection with the Merger." AC ¶ 58. This conclusory allegation of reliance cannot sustain a 10b-5 cause of action.

Moreover, because the Plaintiff also fails to allege any loss (and the forced seller doctrine does not apply), the Plaintiff has also failed to allege loss causation or injury. *See, e.g.*, *Tricontinental Indus. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 843 (7th Cir. 2007) (loss causation requires a showing that defendant's misrepresentation or omission was the proximate cause of plaintiff's loss). "The allegations of the complaint, as well, must set forth 'the economic loss and proximate cause' for which the plaintiff seeks recovery." *Id.* (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)). Specifically:

> The statute insists that securities fraud complaints "specify" each misleading statement; that they set forth the facts "on which [a] belief" that a statement is misleading was "formed"; and that they "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §§ 78u-4(b)(1), (2). And the statute expressly imposes on the plaintiffs "the burden of proving" that the defendant's misrepresentations "caused the loss for which the plaintiff seeks to recover." § 78u-4(a)(4).
>
> The statute thereby makes clear Congress' intent to permit private securities fraud actions for recovery where, but only where, plaintiffs adequately allege and prove the traditional elements of causation and loss.

*Id*. Here, Plaintiff has failed to allege that *any* alleged misrepresentation caused *any* loss. *See* AC ¶¶ 46-60 (failing to allege Plaintiff suffered an actual loss).

Plaintiff has also failed to adequately plead scienter. "To establish liability under § 10(b) and Rule 10b-5, a private plaintiff must prove that the defendant acted with scienter, 'a mental state embracing intent to deceive, manipulate, or defraud.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48, 131 S. Ct. 1309, 1323 (2011) (citation omitted). Under the PSLRA, "a plaintiff

must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. § 78u-4(b)(2)(A) (2006 ed., Supp. IV)). "A complaint adequately pleads scienter under the PSLRA 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Id.* (*quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324, 127 S. Ct. 2499 (2007)). Here, Plaintiff does not even attempt to properly allege scienter. and offers only a conclusory allegation, failing to state particular facts showing the Individual Defendants' scienter. See AC ¶¶ 46-60 (alleging no facts with particularity to establish scienter).

In short, the Plaintiff's securities fraud claim against the Individual Defendants is *comprehensively* ill-pled, and must be dismissed.

## VI. PLAINTIFF'S ILLINOIS BUSINESS CORPORATION ACT CLAIM (COUNT IV) MUST BE DISMISSED.

Remarkably, the Plaintiff fails even to identify a cause of action in support of its claim for "Violation of the Illinois Business Corporation Act." Instead, Plaintiff's stated claim merely cites the Act *in its entirety*, *see* AC at ⁋⁋ 79-84, and then recites a handful of conclusory allegations repeating its allegations elsewhere regarding its claims for breach of fiduciary duty. This is a wholesale (and deeply irresponsible) failure even to state a claim on this count, and accordingly, Count IV must also be dismissed.

## VII. PLAINTIFF'S CONVERSION CLAIM (COUNT VI) MUST BE DISMISSED.

### A. Legal Standard

To state a claim for conversion under Illinois law, a plaintiff must allege: "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the

property." *Toll Processing Servs., LLC v. Kastalon Polyurethane Prods.*, 880 F.3d 820, 824 (7th Cir. 2018) (quoting *Gen. Motors Corp. v. Douglass*, 206 Ill. App. 3d 881, 565 N.E.2d 93, 96-97, 151 Ill. Dec. 822 (Ill. App. Ct. 1990)).

An action for conversion may be maintained where the converted property is money if "the converted funds are capable of being described, identified, or segregated in a specific manner." *Groot Indus. v. Cordell*, No. 08 C 4907, 2009 U.S. Dist. LEXIS 107628, at *12-13 (N.D. Ill. Nov. 17, 2009) (citing *Bill Mareks the Competitive Edge, Inc. v. Mickelson Group, Inc.*, 346 Ill. App. 3d 996, 1003, 806 N.E.2d 280, 282 Ill. Dec. 305 (Ill. App. Ct. 2004). But "an action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money," *In re Thebus*, 108 Ill.2d 255, 259, 483 N.E.2d 1258, 91 Ill. Dec. 623 (Ill. 1985), or to enforce a right to an "indeterminate sum." *Bill Mareks the Competitive Edge, Inc. v. Mickelson Group, Inc.*, 346 Ill. App. 3d 996, 1003, 806 N.E.2d 280, 282 Ill. Dec. 305 (Ill. App. Ct. 2004).

### B. Plaintiff Has Failed to Properly Allege the Elements of a Conversion Claim

Plaintiff's conversion claim must be dismissed because Plaintiff has failed to allege the most fundamental element required to sustain such a claim: Plaintiff has failed entirely to state allegations of fact showing that any of the Individual Defendants undertook any "unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personalty." *Toll Processing*, 880 F.3d at 824. Otherwise put, in support of its ostensible claim for conversion, the Plaintiff does not allege any fact even suggesting that any of the Individual Defendants took any property from Plaintiff. See AC ¶¶ 96-101 (failing to allege that Individual Defendants took any cash or property from Plaintiff). This claim, too, is thus wholly unsupported by the allegations of the AC (and sanctionable), and must be dismissed.

## VIII. PLAINTIFF'S CLAIM FOR DECLARATORY JUDGMENT (COUNT XII) MUST BE DISMISSED.

### A. Legal Standard

Plaintiff brings Count XII pursuant to the Declaratory Judgment Act, which provides "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "The Declaratory Judgment Act provides that a court *may* declare the rights and other legal relations of any interested party, . . . not that it must do so." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) (emphasis in original).

"A 'case of actual controversy' for purposes of § 2201(a) means a case or controversy as those terms are employed in Article III of the Constitution delimiting the scope of the federal judicial power." *Huang v. Fluidmesh Networks*, LLC, No. 16-cv-9566, 2017 U.S. Dist. LEXIS 111608, at *21 (N.D. Ill. July 18, 2017) (citing U.S. Const. art. III, § 2, cl. 1.). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *MedImmune, Inc.*, 549 U.S. at 127). In declaratory judgment cases involving a contract, "relevant Article III considerations include whether the contractual dispute is real, in the sense that it is not factually hypothetical; whether it can be immediately resolved by a judicial declaration of the parties' contractual rights and duties; and whether 'the declaration of rights is a *bona fide* necessity for the natural defendant/declaratory judgment plaintiff to carry on with its business.'" *Id.* (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002)).

### B. Plaintiff Has Failed to Properly Allege a Claim for Declaratory Judgment.

Plaintiff's claim for declaratory judgment must be dismissed, as it is simply duplicative and redundant of Plaintiff's claim for breach of fiduciary duty. *See Cohn v. Guaranteed Rate Inc.*, 130 F. Supp. 3d 1198, 1206 (N.D. Ill. 2015) (courts in this district decline to hear a declaratory judgment action "where the claim for declaratory judgment substantially overlaps Plaintiff's claims" and "routinely dismiss declaratory judgment claims as duplicative of substantive claims even when the relief requested may differ."); *Long v. Bank of Am., N.A.*, No. 17 CV 2756, 2018 U.S. Dist. LEXIS 190124, at *14-15 (N.D. Ill. Nov. 7, 2018) (dismissing plaintiffs' declaratory judgment count with prejudice where it "raises no issue not otherwise addressed in the substantive action, it serves no useful purpose."); *Dixie Gas & Food, Inc. v. Shell Oil Co.*, No. 03 C 8210, 2005 U.S. Dist. LEXIS 12010, 2005 WL 1273273, at *7 (N.D. Ill. May 25, 2005) (finding declaratory judgment claim asserted by plaintiff redundant because determination of the issues raised therein was already under way based on the other counts in the plaintiff's complaint).

Therefore, Plaintiff's claim for declaratory judgment must be dismissed with prejudice.

## IX. THE BREACH OF FIDUCIARY DUTY CLAIM MUST BE DISMISSED.

### A. Plaintiff's Breach of Fiduciary Claim Must Be Brought Derivatively.

Plaintiff's breach of fiduciary duty claim (Count III) must be dismissed because it may only be brought derivatively. Under Illinois law, "which govern[s] this case because it was filed in Illinois, a suit for breach of fiduciary duty is governed by the law of the state of incorporation." *Northbound Grp., Inc. v. Norvax, Inc.*, 5 F. Supp. 3d 956, 979 (N.D. Ill. 2013), *aff'd*, 795 F.3d 647 (7th Cir. 2015).

Ximalaya is incorporated in the Cayman Islands and therefore Cayman Islands law applies. Expert Declaration of Judge Alexander Henderson in support of Ximilaya's Motion to Dismiss (Dkt. 55-16) ("**Henderson Decl.**") ¶ 35. Under both Cayman Islands and Illinois law, given that

"Hughes River claims damages for 'the loss in fair market value in the preferred stock of Ximalaya' … an individual shareholder cannot advance such a claim solely in its own name; a derivative action is required." *Id.* ¶ 44; *see also Strnad v. Kabel*, No. 24-cv-6177, 2024 WL 4802565, at *5 (N.D. Ill. Nov. 15, 2024) (same under Illinois law).

Plaintiff's damages are alleged solely as a diminution in the value of its shares. *See, e.g.*, AC ¶¶ 67, 76-77. Plaintiff has not alleged "a distinct injury apart from injuries suffered by all shareholders," and therefore its breach of fiduciary duty claim must be "dismissed."[6] *Toscano v. Koopman*, 148 F. Supp. 3d 679, 688 (N.D. Ill. 2015); *see also* Henderson Decl. ¶¶ 45-46 (under Cayman Islands' law, "[w]hen a shareholder suffers a loss because the value of its stock has declined due to decisions and actions of the directors, its loss is merely "reflective" of the loss suffered by the company itself and the shareholders as a class … [i]t is the company that must initiate the claim against its directors for damages.") (Dkt. 55-16); *see also Strnad*, No. 24 CV 6177, 2024 WL 4802565, at *5 (N.D. Ill. Nov. 15, 2024) (dismissing claim where shareholders "would have been injured in the same way" and therefore the claim could "only be brought as a derivative action").

### B. The Claim Against Mr. Li and Ms. Chen Fails Because They Did Not Owe a Fiduciary Duty.

Plaintiff's breach of fiduciary duty claim against Mr. Li and Ms. Chen must be dismissed, because Mr. Li never served on Ximalaya's Board of Directors and left Ximalaya on January 15, 2022, and Ms. Chen ceased to be a director of Ximalaya on April 30, 2021, several years before the Tencent Acquisition and the transmission of the VUL. *See* Li Decl. ¶ 10; Chen Decl. ¶ 10.

[6] The claim should further be dismissed because no demand was made on Ximalaya's Board of Directors. *See* Fed. R. Civ. P. 23.1(b)(3) (requiring a demand be made on the board in a derivative action); *see also* Henderson Decl. ¶¶ 45-46 (same under Cayman Islands law) (Dkt. 55-16).

"Ximalaya is a Cayman Islands company, [therefore] the presence or absence of [a fiduciary duty] must be determined under Cayman Islands law." Henderson Decl. ¶ 35(Dkt. 55-16) ; *see also Northbound Grp., Inc.*., 5 F. Supp. 3d at 979 (same). *See* Li Decl. ¶ 10. Although the AC alleges Mr. Li and Ms. Chen "breached the fiduciary duties they owed to Hughes River at the time of the Merger and delivery of the [VUL]" (AC ¶ 76 ), they did not owe a fiduciary duty to Plaintiff at those times, and therefore the Court need not accept this patently false and conclusory allegation as true. *See* Henderson Decl. ¶ 40 ("The pleading contains no basis [that Mr. Li had fiduciary obligations]. Even if he owed a fiduciary duty at some time in the past, his obligation would have ended in January, 2022."); *see also Laures v. Progressive Cas. Ins. Co.*, 2022 WL 4778000, at *2 (S.D. Ill. Oct. 2, 2022) ("If the documents contradict Plaintiff's allegations, the Court will not accept Plaintiff's allegations as true and will instead, rely on the actual documents themselves."). Accordingly, Plaintiff's claim against Mr. Li and Ms. Chen must be dismissed.

## CONCLUSION

The Individual Defendants respectfully request that the Court dismiss the Complaint in its entirety against them pursuant to Fed. R. Civ. P. 12(b)(2), (4), (5), and (6) with prejudice.[7]

Dated: August 27, 2025

RESPECTFULLY SUBMITTED,

By: */s/Todd Gale*

Todd Gale (ARDC # 6229288)
Lu Harmening (ARDC # 6335999)
DYKEMA GOSSETT PLLC
10 S. Wacker Drive, Suite 2300

[7] If Plaintiff's breach of fiduciary duty claim survives this Motion, the Individual Defendants reserve all rights, including as to *forum non conveniens*. *See Wragge v. Boeing Co.*, No. 20-CV-04457, 2022 WL 4119777, at *4 (N.D. Ill. Sept. 9, 2022) (motion timely where defendant included *forum non conveniens* affirmative defense in its Answer and stated in the joint initial status report that it was considering filing a motion to dismiss based on *forum non conveniens*).

Chicago, IL 60606
312 627-2173
tgale@dykema.com
lharmening@dykema.com

Timothy J. McCarthy (*admission pending*)
DYKEMA GOSSETT PLLC
Comerica Bank Tower
1717 Main Street, Suite 4200
Dallas, TX 75201
tmccarthy@dykema.com

Mark J. Makoski (*admission pending*)
DYKEMA GOSSETT PLLC
777 Woodward Ave., Suite 400
Detroit, MI 48226
mmakoski@dykema.com

*Counsel for Defendants Ximalaya, Inc., Yu Jianjun, Seaman Yu (duplicate of Yu Jianjun), Xiaoyu [sic] Chen, asnd Li Haibo*

## CERTIFICATE OF SERVICE

I certify that on August 27, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF. system, which will send notification of such filings to all registered users.

Dated: August 27, 2025

*/s/ Todd Gale*
Todd Gale