IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HUGHES RIVER FM, LLC, a Delaware limited liability company, individually, and derivatively on behalf of XIMALAYA, INC., | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:25-cv-06217 |
| XIMALAYA, INC., a Cayman Islands corporation, YU JIANJUN, an individual, SEAMAN YU, an individual, XIAOYU CHEN, an individual, LI HAIBO, an individual, and TENCENT MUSIC ENTERTAINMENT GROUP, INC., a Cayman Islands corporation, | ) ) ) ) ) ) ) ) ) ) ) | Judge Edmond E. Chang |
| Defendants. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR THE ENTRY OF AN AMENDED PROTECTIVE ORDER**

Plaintiff, HUGHES RIVER FM, LLC ("Hughes River"), by and through its undersigned attorney, submits this Reply in Support of its Motion for the Entry of an Amended Protective Order, as follows:

### I. ARGUMENT

**A. Hughes River Has "Good Cause" To Desire To Share The Unlawful, Unfair And Oppressive Conduct On The Part Of Defendants With State And Federal Government Officials.**

In its Motion, Hughes River seeks explicit language in the Protective Order permitting it to share discovery materials from this matter with state and federal government officials. Defendants oppose this, arguing that Hughes

1

River offers "no good cause or legal authority to support any of these atypical amendments." (Opposition p. 2). However, this claim is unfounded.

The Amended Complaint details conduct by Defendants that is plainly unlawful, unfair, and oppressive, justifying the need for transparency and appropriate government scrutiny. The alleged misconduct has harmed American investors (AC ¶ 3) and has enabled Tencent Music Entertainment Group, Inc. ("Tencent"), a company listed on the New York Stock Exchange (AC ¶ 11), but hiding behind a purported Chinese domicile and Cayman Islands shell company, to manipulate market prices.

Hughes River alleges that Ximalaya, Inc. ("Ximalaya"), its Board of Directors ("Board Members"), and Tencent intentionally harmed Hughes River and other Ximalaya shareholders in this state and district by selling Company assets via a merger that unfairly benefited the Board Members at certain shareholders' expense.

Tencent structured the transaction to pay the Board Members a premium for their shares, in exchange for their agreement to breach fiduciary duties to Ximalaya and certain shareholders. A written solicitation sent to Hughes River and other Illinois-based shareholders omitted critical facts, thus facilitating the scheme described in the Amended Complaint. (AC at ¶¶ 29, & 32-35).

The Amended Complaint further alleges that the Board Members knowingly failed to inform shareholders that they received double per share compared to others, such as Hughes River, constituting deliberate deception. (AC ¶ 35). Additionally, key business assets of the Company were secretly

2

excluded from the merger and retained by Ximalaya's founder, Yu Jianjun, or his affiliates, further violating legal obligations. (AC ¶¶ 33-34).

Notably, Ximalaya has admitted to the retention of the "Excluded Assets" in its moving papers. ("Pursuant to the agreement, two business segments of Ximalaya, the Parent-Child Training Business and Xibo Business ('Carve-Out Business'), will be carved out and divested from the assets acquired by TME prior to the closing of the Cayman Merger. *Id*. ¶ 43, Ex. 8.") (ECF #55). "Ximalaya and TME negotiated the carve-out of two business segments as part of the Cayman Merger. *Id*. ¶ 43." (Opposition p. 12). Ximalaya makes no mention in its Motion of where the Excluded Assets (or "Carve-Out Business") will land after the merger is consummated.

Defendants emphasize that Ximalaya and Tencent are incorporated in the Cayman Islands and headquartered in China, with the merger negotiated in the Cayman Islands. These facts underscore Defendants' apparent attempts to evade the government's and the Court's oversight, supporting the call for greater transparency and disclosure.

None of the Defendants has a genuine operational connection to the Cayman Islands; incorporating there is part of a trend among Chinese companies to sidestep shareholder and creditor obligations and evade Chinese regulation, through the use of a shell company in the Cayman Islands. Neither Tencent nor Ximalaya operates in the Cayman Islands; their addresses exist solely for legal process.

In fact, Ximalaya and Tencent, as "exempted companies," are prohibited from engaging in business in the Cayman Islands except in

3

furtherance of the business of the corporation carried on outside the Cayman Islands and must make annual declarations to that effect. See, Cayman Islands: Review of Cayman Islands and U.S. Laws Applicable to U.S. Persons' Financial Activity in the Cayman Islands, (GAO-08-1028SP), an E-supplement to GAO-08-778, July 2008).

These Variable Interest Entities (VIEs) are established to circumvent Chinese law and regulation, hampering claims of fraud and related suits. U.S. courts and regulators are often unable to enforce actions against such entities. (see *Council of Institutional Investors*, "Behind the Veil: Risks of Chinese Companies and the VIE Structure," August 2025).

On January 2, 2025, the U.S. Department of Defense/Secretary of Defense designated Tencent as an instrumentality of the Chinese military (see Exhibit "A" hereto). Tencent's connections to the Chinese military heighten the need for transparent conduct for the benefit of state and federal authorities.

Given Tencent's NYSE listing (TME) and the allegations of unequal consideration and undisclosed asset carve-outs, there is a legitimate need to communicate, confidentially, with U.S. market and enforcement authorities tasked with investor protection.

Moreover, " [a]s a general proposition, pretrial discovery must take place in the [sic] public unless compelling reasons exist for denying the public access to the proceedings." *American Tel. & Tel. Co. v. Grady, 594 F.2d 594, 596 (7th Cir. 1978), cert. denied, 440 U.S. 971, 99 S. Ct. 1533, 59 L. Ed. 2d 787 (1979).* As it is Defendants who are attempting to deviate from this rule, they,

4

not Hughes River, bear the burden to show why Hughes River should not be permitted to share information with state and federal government officials. Defendants have failed to meet that burden, and Hughes River's Motion should be granted. And while discovery can be protected for good cause, judicial records carry a strong presumption of public access in this Circuit—another reason to require surgical sealing rather than blanket redactions. In its Motion, Hughes River seeks explicit language in the Protective Order permitting it to share discovery materials from this matter with state and federal government officials (e.g., "officials[1]").

Hughes River is not seeking to publicize discovery. The amendment allows confidential communications to regulators and oversight staff, with a required confidential-treatment request and notice, so potential violations impacting U.S. investors can be evaluated while this case proceeds.

### B. The Purposes Of Protective Orders Are Not Compromised By The Government Disclosure Exception Sought By Hughes River In Its Motion.

In their eleven-page Opposition, Defendants have failed to identify any specific harm they would suffer if the Court grants Hughes River's Motion. Their claims are sheer speculation. (*See, e.g.,* "…which will create unnecessary discovery disputes and motion practice." Opposition p. 4).

Protective orders exist primarily to prevent the disclosure of trade secrets, personal data, and other confidential information. See generally, Jepson, Inc. v. Makita Electric Works, Ltd., *30 F.3d 854 (7th Cir. 1994);* Citizens

---

[1] For avoidance of doubt, the contemplated recipients are enforcement and market-oversight authorities (e.g., SEC Division of Enforcement, SEC Division of Trading & Markets, NYSE Regulation, and the U.S. Department of Justice (Antitrust)), as well as congressional oversight staff for relevant committees. Any such communication would be made confidentially, with a request for confidential treatment and contemporaneous notice to the designating party unless prohibited by law.

First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943 (7th Cir. 1999); and* Union Oil Co. v. Leavell*, 220 F.3d 562 (7th Cir. 2000)*. None of these concerns will be compromised by adopting the government disclosure exception requested by Hughes River. Defendants' concern that "recipients are not bound" is addressed by the safeguards in Plaintiff's proposed language: Hughes River must request confidential treatment to the maximum extent permitted and provide contemporaneous notice—standard measures that respect agency processes while protecting designating parties.

Under Rule 26(c), the question is good cause and tailoring. Hughes River's proposal does not alter the Order's core protections for trade secrets and personal data; it adds a narrow, case-specific exception limited to confidential communications with regulators and oversight staff in light of the NYSE-listed ADR and alleged unequal treatment of U.S. investors.

Far from "multiplying costs," the amendments reduce satellite disputes. A public-record safe harbor avoids fights over plainly public material, and a surgical-sealing standard aligns with Local Rule 26.2, ensuring page-and-line justifications instead of blanket sealing.

Defendants attempt to portray Hughes River's request for governmental assistance as improper, stating, for example: "Defendants are concerned that Plaintiff's threatened ability to disclose confidential materials to outside actors will be used to advance Plaintiff's tactical interests in this litigation and broader interests against Defendants outside the judicial process. Plaintiff has provided no reasoned justification for this and its other substantial departures." (Opposition p. 2). However, Hughes River is fully

entitled, under the United States Constitution—specifically, the First Amendment—to bring its concerns to the attention of government. *Thomas v. Collins, 323 U.S. 516, 530 (*"It was not by accident or coincidence that the rights to freedom in speech and press were coupled in a single guaranty with the rights of people to peaceably assemble and to petition for redress of grievances.") Any restriction on this right would constitute an unconstitutional "prior restraint." *Near v. Minnesota ex rel. Olson, 283 U.S. 697, 716 (1931)*.

In summary, based on the factual allegations in the Amended Complaint, the nature of the transaction, the claimed harm to American investors, and the national threat recognized in the recent U.S. Department of Defense announcement regarding Tencent, there is good cause to grant Hughes River's requested amendments to the current Protective Order.

## II.  CONCLUSION

WHEREFORE, Plaintiff, HUGHES RIVER FM, LLC, individually, and derivatively, on behalf of XIMALAYA, INC., respectfully requests this Court to grant the Motion of Plaintiff, HUGHES RIVER FM, LLC, for the Entry of an Amended Protective Order and/or for such other and further relief as the Court deems necessary and/or appropriate under the circumstances.

Respectfully submitted,

HUGHES RIVER FM, LLC,
individually, and derivatively
on behalf of XIMALAYA, INC.,
Plaintiff

By:*/s/Daniel J. Voelker*
Its Attorney

Daniel J. Voelker, Esq.
**Voelker Litigation Group**

7

33 N. Dearborn Street
Suite 400
Chicago, Illinois 60602
312.505.4841
dvoelker@voelkerlitigationgroup.com
ARDC #6189578

Dated: September 19, 2025

## CERTIFICATE OF SERVICE

I, Daniel J. Voelker, an attorney, hereby certify that on September 19, 2025, I caused to be filed the foregoing **Plaintiff's Reply In Support Of Its Motion For Entry Of An Amended Protective Order** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, via the ECF/ECM Filing System.

/s/Daniel J. Voelker

EXHIBIT A TO REPLY BRIEF: HUGHES RIVER V. TENCENT

**Entities Identified as Chinese Military Companies Operating in the United States in Accordance with Section 1260H of the William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal Year 2021 (Public Law 116-283)[1]***

360 Security Technology Inc. (Qihoo 360)

Aerospace CH UAV Co., Ltd (CH UAV)

Autel Robotics Co., Ltd.

Aviation Industry Corporation of China Ltd. (AVIC)
- AVIC Aerospace Systems Co., Ltd.
- AVIC Airborne Systems Co., Ltd. (formerly China Avionics Systems Co., Ltd.)
- AVIC Asset Management Corporation Ltd.
- AVIC Aviation High-Technology Company Limited (AVIC Aviation Hi-Tech)
- AVIC Electromechanical Systems Co. Ltd.
- AVIC Heavy Machinery Company Limited (AVIC Heavy Machinery)
- AVIC JONHON Optronic Technology Co., Ltd. (AVIC Jonhon)
- AVIC Shenyang Aircraft Company Limited (AVIC Shenyang)
- AVIC Xi'an Aircraft Industry Group Company Ltd. (AVIC Xi'an)
- Changhe Aircraft Industries (Group) Co., Ltd.
- Jiangxi Hongdu Aviation Industry Co., Ltd. (Hongdu Aviation)
- Shenyang Aircraft Design Institute
- Xi'an Aircraft Industry Group Co., Ltd.
- Zhonghang Electronic Measuring Instruments Company Limited (ZEMIC)

Baicells Technologies Co., Ltd.

Beijing Zhidao Chuangyu Information Technology Co., Ltd. (Knownsec)

BGI Group
- BGI Genomics Co., Ltd. (BGI)
- Forensic Genomics International (FGI)
- MGI Tech Co., Ltd. (MGI)

ChangXin Memory Technologies, Inc. (CXMT)

Chengdu JOUAV Automation Tech Co., Ltd. (JOUAV)

Chengdu M&S Electronics Technology Co., Ltd. (M&S Electronics)

China Aerospace Science and Industry Corporation Limited (CASIC)
- Addsino Co., Ltd.

---

[1] Hesai Technology Co., Ltd. was previously identified as and remains a Chinese military company operating in the United States in accordance with Section 1260H of the William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal Year 2021 (Public Law 116-283) as reported in 89 Fed. Reg. 86230 (October 29, 2024).

    Aerospace Precision Products Co., Ltd.
    Aerosun Corporation (Aerosun)
    Aisino Corporation
    China Aerospace Automotive Co., Ltd.

China Cargo Airlines Co., Ltd.

China Communications Construction Group (Limited) (CCCG)
    China Airport Construction Group Corporation
    China Communications Construction Company Limited (CCCC)
    China Communications Constructions USA, Inc.
    China Traffic Construction USA, Inc.
    John Holland Group Pty Ltd.
    John Holland Services Pty Ltd.

China Construction Technology Co., Ltd. (CCTC)

China COSCO SHIPPING Corporation Limited (COSCO SHIPPING)
    COSCO SHIPPING (North America) Inc.
    COSCO SHIPPING Finance Co., Ltd.

China Electronics Corporation (CEC)
    China International Information Services Ltd.

China Electronics Technology Group Corporation (CETC)
    Anhui Sun Create Electronics Co., Ltd.
    Cheng Du Westone Information Industry Co., Ltd.
    GLARUN Technology Co., Ltd.
    Guangzhou GCI Science & Technology Co., Ltd.
    Hangzhou Hikvision Digital Technology Co., Ltd. (Hikvision)
    Phoenix Optics Company Limited
    Shanghai East China Computer Co., Ltd.
    Taiji Computer Co., Ltd.

China General Nuclear Power Corporation (CGN)

China International Marine Containers (Group) Co., Ltd. (CIMC)

China Mobile Communications Group Co., Ltd. (China Mobile Comm)
    China Mobile Limited (China Mobile)

China National Chemical Corporation Ltd. (ChemChina)

China National Chemical Engineering Group Corporation (CNCEC)
    China National Chemical Engineering Co., Ltd.

China National Nuclear Corporation (CNNC)

China National Offshore Oil Corporation (CNOOC)
    CNOOC China Limited (CNOOC China Ltd.)
    CNOOC International Trading Co., Ltd. (CNOOC International Trading)

China North Industries Group Corporation Limited (Norinco Group)
    Harbin First Machinery Group Ltd.
    Inner Mongolia First Machinery Group Co., Ltd. (Inner Mongolia)

China Shipbuilding Trading Co., Ltd. (CSTC)

China South Industries Group Corporation (CSGC)
    Costar Group Co., Ltd. (Costar)
    Heilongjiang Northern Tools Co., Ltd.

China SpaceSat Co., Ltd. (China SpaceSat)
    Oriental Blue Sky Titanium Technology Co., Ltd.
    Xi'an Aerospace Tianhua Data Technology Co., Ltd.

China State Construction Engineering Corporation Limited (CSCEC)
    China Construction America, Inc.

China State Shipbuilding Corporation Limited (CSSC)

China Telecom Group Co., Ltd. (China Telecom)
    China Telecom Corporation Limited

China Three Gorges Corporation (CTG)

China United Network Communications Group Co., Ltd. (China Unicom)
    China Unicom (BVI) Co., Ltd.
    China Unicom (Hong Kong) Limited (China Unicom HK)
    China Unicom Group (BVI) Co., Ltd.
    China United Network Communications Co., Ltd.

CloudWalk Technology Co., Ltd. (CloudWalk)

Commercial Aircraft Corporation of China Limited (COMAC)
    Beijing Aeronautical Science & Technology Research Institute (Beijing Research Center)
    COMAC America Corporation (CAC)
    Shanghai Aircraft Manufacturing Co., Ltd. (Assembly Manufacturing Center)

Contemporary Amperex Technology Co., Ltd. (CATL)

CRRC Corporation Limited (CRRC)

CSSC Offshore & Marine Engineering (Group) Company Limited (COMEC)
    Guangzhou Wenchong Shipyard Co., Ltd.
    Huacheng (Tianjin) Ship Leasing Co., Ltd.

Dawning Information Industry Co., Ltd. (Sugon)

Global Tone Communication Technology Co., Ltd. (GTCOM)
    GTCOM Technology Corporation (GTCOM-US)

Guizhou Aviation Technical Development Co., Ltd. (Guizhou Aviation Tech)

Huawei Investment & Holding Co., Ltd. (Huawei Holding)
    Huawei Technologies Co., Ltd. (Huawei)

Inspur Group Co., Ltd. (Inspur)

NetPosa Technologies, Ltd. (NetPosa)

Origincell Technology Co., Ltd.

Quectel Wireless Solutions Co., Ltd.

SDIC Intelligence (Xiamen) Information Co., Ltd.
    Xiamen Meiya Zhongmin Electronic Technology Co., Ltd.

Semiconductor Manufacturing International Corporation (SMIC)
    Better Way Enterprises Limited
    China IC Capital Co., Ltd.
    Magnificent Tower Limited
    Semiconductor Manufacturing International (Beijing) Corporation (SMIC Beijing)
    Semiconductor Manufacturing International (Shenzhen) Corporation (SMIC Shenzhen)
    Semiconductor Manufacturing International (Tianjin) Corporation (SMIC Tianjin)
    Semiconductor Manufacturing North China (Beijing) Corporation
    Semiconductor Manufacturing South China Corporation (SMIC South China)
    SilTech Semiconductor Corporation
    SMIC Holdings Limited (SMIC Holdings)
    SMIC Semiconductor Manufacturing (Shanghai) Co., Ltd (SMIC Shanghai)
    SMIC, Americas

SenseTime Group, Inc.

Shanghai Yitu Network Technology Co., Ltd. (Yitu)

Shenzhen DJI Innovation Technology Co., Ltd. (DJI)
    Shenzhen Dajiang Baiwang Technology Co., Ltd.

Sinotrans & CSC Holdings Co., Ltd.

Tencent Holdings Limited

Wuhan Geosun Navigation Technology Co., Ltd. (Geosun)

Yangtze Memory Technologies Co., Ltd. (YMTC)

Zhejiang Dahua Technology Co., Ltd. (Dahua)
    Chengdu Dahua Wisdom Information Technology Co., Ltd.

\* Subsidiaries Listed with Parent Companies

**The Following Previously Listed Entities Did Not Meet the Requirements of Section 1260H of the William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal 2021 (Public Law 116-283) Because They Do Not Operate Directly or Indirectly in the United States as Mandated by Section 1260H(a).**

Beijing Megvii Technology Co., Ltd. (Megvii)

China Marine Information Electronics Company Limited (China Marine Info Elec)

China Railway Construction Corporation Limited (CRCC)

China State Construction Group Co.

China Telecommunications Corporation

ShenZhen Consys Science & Technology Co., Ltd. (Consys)