EXHIBIT A TO AFFIDAVIT OF KAI JIANG



GARY A. JUNGELS
Partner

Freeborn & Peters LLP
*Attorneys at Law*
311 South Wacker Drive
Suite 3000
Chicago, IL 60606

(312) 360-6834 direct
(312) 360-6520 fax

gjungels@freeborn.com

**www.freeborn.com**

June 10, 2020

To whom it may concern

Dear Sir or Madam:

Re: Hughes River FM, LLC

This is to certify that the copies attached here are true copies of documents relating to Hughes River FM, LLC (the "Company"), a limited liability company formed and organized in the State of Delaware (United States of America).

Attached are true copies of the following documents relating to the Company:-

1. The Company's Certificate of Formation (as filed in Delaware);
2. An executed copy of the Company's LLC operating agreement;
3. A copy of its register of Manager(s) and address(es);
4. A copy of the United States passport of Kai Jiang, the sole Manager of the Company.

Yours faithfully,

**Gary A. Jungels**

Freeborn & Peters LLP
Address:      311 S. Wacker Drive
              Suite 3000
              Chicago, IL  60606
Tel:          (312) 360-6000

5283449v1/30946-0001

Chicago, IL • New York, NY • Richmond, VA • Springfield, IL • Tampa, FL

## CERTIFIED TRUE COPIES

I, Gary A Jungels, lawyer at Freeborn & Peters LLP, counsel to Hughes River FM, LLC (the "Company"), hereby declare and certify that the documents listed below are true copies to the originals in respect of the Company organized in the State of Delaware, United States of America.

► Certificate of Formation of the Company in Delaware
► LLC Operating Agreement of Company
► Name of Manager of the Company and Address of the Company
► United States Passport of Kai Jiang, Manager of the Company

Dated: June 10, 2020

*[signature]*

**Gary A. Jungels**
Partner, Freeborn & Peters LLP
Licensed in the State of Illinois, USA
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 360-6834

# Delaware



Page 1

The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF FORMATION OF "HUGHES RIVER FM, LLC", FILED IN THIS OFFICE ON THE TWENTY-NINTH DAY OF JUNE, A.D. 2018, AT 12:03 O`CLOCK P.M.

Jeffrey W. Bullock, Secretary of State

6955312 8100
SR# 20185442342

Authentication: 202986776
Date: 06-29-18

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 12:03 PM 06/29/2018
FILED 12:03 PM 06/29/2018
SR 20185442342 - File Number 6955312

# CERTIFICATE OF FORMATION
# OF
# HUGHES RIVER FM, LLC

This Certificate of Formation of Hughes River FM, LLC (the "**Company**") is being executed by the undersigned for the purpose of forming a limited liability company pursuant to the Delaware Limited Liability Company Act.

1. The name of the Company is:

    Hughes River FM, LLC

2. The address of the registered office of the Company in the State of Delaware is 850 New Burton Road, Suite 201, Dover, Delaware 19904 (County of Kent). The Company's registered agent at that address is COGENCY GLOBAL INC.

**IN WITNESS WHEREOF**, the undersigned, an authorized person of the Company, has caused this Certificate of Formation to be duly executed this 28th day of June, 2018.

/s/ Gary A. Jungels
Gary A. Jungels
Authorized Person

4478292v1/30946-0002

# OPERATING AGREEMENT

# OF

# HUGHES RIVER FM, LLC

OPERATING AGREEMENT
OF
HUGHES RIVER FM, LLC

OPERATING AGREEMENT (as amended from time to time in accordance with its terms, this "Agreement"), dated as of June 29, 2018, of Hughes River FM, LLC (the "Company").

ARTICLE 1

DEFINITIONS

As used in this Agreement, the following terms shall have the meanings set forth below:

"Agreement" has the meaning set forth in the preamble.

"Certificate" means the certificate of formation of the Company and any amendments thereto.

"Code" means the United States Internal Revenue Code of 1986, as amended, and corresponding provisions of any subsequent United States federal revenue act.

"Company" has the meaning set forth in the preamble.

"Indemnified Person" has the meaning set forth in Article 12.

"IRS" means the United States Internal Revenue Service.

"LLC Act" means the Delaware Limited Liability Company Act, as in effect on the date of the Agreement and as amended thereafter from time to time.

"Manager" has the meaning set forth in Section 7.1.

"Member" means, initially, Kai Jiang, and any other Person subsequently admitted as a member of the Company.

"Person" means any natural person, corporation, partnership, trust, limited liability company, association or other entity.

ARTICLE 2

FORMATION; TERM

2.1. Formation. The Member(s) hereby acknowledge the formation of the Company as a limited liability company pursuant to the LLC Act by virtue of the filing of the Certificate with the Secretary of State of the State of Delaware on June 29, 2018.

2.2. Term. The Company commenced on the date of the filing of the Certificate with the Secretary of State of the State of Delaware. The Company shall continue until terminated pursuant to the provisions hereof.

ARTICLE 3

NAME AND PLACE OF BUSINESS

3.1. Name. The business of the Company shall be conducted under the name "Hughes River FM, LLC" or such other name as the Manager deems necessary or desirable and that complies with applicable laws (including the LLC Act).

3.2. Principal Place of Business. The principal place of business of the Company shall be at such place as the Manager shall determine. The Company may maintain such other office or offices for the transaction of business at such other locations as the Manager may deem advisable.

ARTICLE 4

PURPOSES AND POWERS

4.1. Purposes. The transaction of any or all lawful business for which Limited Liability Companies may be organized under the LLC Act.

4.2. Powers. The Company shall have all lawful powers and authorities necessary, suitable or convenient for the furtherance of the aforesaid purposes.

ARTICLE 5

CAPITAL CONTRIBUTIONS

5.1. Capital Contributions. The Member(s) hereby initially agree to contribute $100 in the aggregate on a pro rata basis to the capital of the Company as called from time to time by the Manager.

5.2. Limitation on Other Capital Contributions. Except as set forth in this Agreement or as required by law, the Members shall not be personally liable for any obligations of the Company and shall not at any time be required to make any contribution to the capital of the Company (except as set forth in Section 5.1 above) or any loans to the Company.

ARTICLE 6

DISTRIBUTIONS AND ALLOCATIONS

6.1. General. Distributions may be made to the Members on a pro rata basis determined according to their capital contributions, as determined by the Manager from time to time.

6.2. Distribution in Kind. At any time or from time to time the Manager may determine to make all or a part of a distribution permitted under this Article 6 in property other than cash.

6.3. Allocations. All income, gain, loss and deductions in any year shall be allocated to the Members on a pro rata basis determined according to their capital contributions, as determined by the Manager from time to time.

ARTICLE 7

MANAGEMENT

7.1. Manager. The Company will be managed by the Manager. The Manager shall be deemed to be a "manager" as defined in the LLC Act for all purposes thereof. Kai Jiang shall be the initial Manager.

7.2. Manager Authority. Except as otherwise expressly provided in this Agreement, all material Company consents, decisions, determinations and interpretations shall be made by the Manager, including, without limitation, all Company consents, decisions, determinations and interpretations relating to (a) distributions of Company cash and securities, (b) distributions of cash and securities from escrow accounts, (c) the borrowing of money, (d) hiring, terminating and establishing the compensation of employees and agents, if any, of the Company, (e) accounting procedures and determinations, (f) adopting (and, if advisable, amending) the annual budget of the Company, (g) establishing reserves for anticipated and contingent obligations, losses and commitments of the Company, and (h) if unbudgeted, the incurring of expenses on behalf of the Company.

7.3. Delegation of Authority. The Company may (a) appoint such officers or employ such Persons, who may but need not be Members, on behalf of the Company to carry out such terms and to perform such functions as determined by the Manager, (b) appoint or otherwise contract with such other Persons for the transaction of the business of the Company or the performance of services for or on behalf of the Company as determined by the Manager and (c) delegate to any such officer or Person such authority to act on behalf of the Company as the Manager may from time to time deem appropriate.

ARTICLE 8

WITHDRAWAL

8.1. Voluntary Withdrawal. No Member may voluntarily withdraw from the Company without the consent of the Manager.

8.2. Rights of Withdrawn Member. Following the withdrawal of the Member pursuant to Section 8.1, the withdrawn Member shall cease to have an interest in the Company and shall thereafter have the status of a creditor of the Company with respect to an amount equal to the balance in such Member's capital account immediately prior to the effective time of such Member's withdrawal, which shall be paid to the withdrawn Member when and as cash is available to the Company.

ARTICLE 9

DISSOLUTION AND LIQUIDATION

9.1. Events of Dissolution. The Company shall be dissolved reasonably promptly after approval of the Manager.

9.2. Liquidation. If the Company is dissolved, the remaining Member(s) (or any liquidator appointed by the Manager) shall promptly file any notice, publish any advertisement or take any other action required under applicable law to effect such dissolution and wind up the affairs of the Company and liquidate the assets of the Company. The net proceeds of the liquidation shall be distributed in the following order of priority:

    (a) <u>first</u>, to the payment of all debts and obligations of the Company (including any debts of the Company to the Members) and the expenses of liquidation; <u>provided</u> that, in lieu of prior payment of certain debts and obligations, the remaining Member(s) (or any liquidator appointed by the Manager) may establish a reasonable reserve for payment of such debts and obligations and such reserve if remaining after payment of such debts and obligations shall be distributed to the Members as soon as practicable.

    (b) <u>second</u>, all remaining assets shall be distributed to the Members in accordance with Article 6.

ARTICLE 10

TAX MATTERS

    10.1. <u>Status of Company</u>. It is intended that the Company be treated as a "disregarded entity" for federal income tax purposes for so long as it has a single Member; otherwise, it is intended that the Company be treated as a "partnership" for federal income tax purposes for so long as it has more than a single Member. The Company shall prepare and file tax returns as necessary, and the Members shall prepare tax returns consistently with such tax returns. If treated as a "partnership," Kai Jiang shall be the "partnership representative" under the Code, and the Company shall establish and maintain capital accounts for each Member in accordance with Treas. Reg. Section 1.704-1(b)(2)(iv).

    10.2. <u>Taxable Year</u>. The taxable year of the Company shall be the calendar year.

    10.3. <u>Tax Elections</u>. All tax elections required or permitted to be made under the Code and any applicable state, local or foreign tax law shall be made in the discretion of the Manager, and any decision with respect to the treatment of Company transactions on the Company's federal, state, local or foreign tax returns shall be made in such manner as may be approved by the Manager.

ARTICLE 11

LIMITATION ON LIABILITY

    Except as otherwise required by law or the provisions of this Agreement, the debts, obligations, and liabilities of the Company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the Company, and none of the Members, the Manager, or any of their respective equityholders, partners, members, shareholders, officers, directors, employees and agents, and, if so approved by the Manager, none of the Company's other officers, employees or agents, if any, shall be personally liable to the Company or any Member or terminated Member solely by reason of being a Member, a Manager, or such other Person, as the case may be, or for participating in the management of the Company, or for (a) any action taken or omitted to be taken with respect to the Company which is not in violation of the provisions of this Agreement, except in the case of and to the extent of such Person's own gross negligence or willful malfeasance, (b) any action or inaction arising from reliance in good faith upon the opinion or advice as to legal matters of legal counsel or as to accounting matters of accountants selected by any of them with reasonable care, or (c) any action or inaction of any agent, contractor or consultant selected and monitored by any of them with reasonable care. The failure of the Company to observe any formalities or requirements relating to the exercise of its powers or management of its business or affairs under the LLC Act or this Agreement shall not be grounds for imposing personal liability on any Member or a Manager for liabilities of the Company.

ARTICLE 12

INDEMNITIES

Except as otherwise required by law, the Company shall indemnify, defend and hold harmless each Member, the Manager, and each officer, employee or agent of the Company, and their respective equityholders, directors, officers, employees, or agents and, to the extent approved by the Manager, the Company's other officers, employees and agents (each, an "Indemnified Person," and collectively, the "Indemnified Persons"), from and against any loss, damage, liability, cost or expense (including fees and expenses of counsel selected by the Indemnified Person) to which the Indemnified Person may become subject arising out of or in connection with the business and operation of the Company to the fullest extent permitted by law if such Indemnified Person acted in good faith and in a manner which such Person believed to be in or not opposed to the best interests of the Company, and with respect to any criminal action or proceeding had no reasonable cause to believe such Person's conduct was unlawful. Such fees and expenses of counsel shall be paid by the Company as they are incurred upon receipt, in each case, of an undertaking by or on behalf of the Indemnified Person to repay such amounts if it is ultimately determined that such Indemnified Person is not entitled to indemnification with respect thereto.

ARTICLE 13

MISCELLANEOUS

13.1. Amendments. The terms and provisions of this Agreement may be modified or amended at any time and from time to time by the written consent of the Manager.

13.2. Binding Effects; Benefits. This Agreement shall be binding upon and inure to the benefit of the Members and their legal representatives, as applicable. No Person other than the Members shall be entitled to any benefits under the Agreement, except as otherwise expressly provided.

13.3. Headings. The article, section and other headings of this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

13.4. Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which together shall be deemed to be one and the same agreement.

13.5. Governing Law. This Agreement shall be governed by and construed both as to validity and enforceability in accordance with the laws of the State of Delaware, without regard to the conflict of laws provisions thereof.

13.6. Separability. Any term or provision of this Agreement which is invalid or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms or provisions of this Agreement or affecting the validity or enforceability of any of the terms or provisions of this Agreement in any other jurisdiction.

13.7. Entire Agreement. This Agreement constitutes the entire agreement between the parties hereto and supersedes any prior agreements, understandings and arrangements, oral or written, between the parties with respect to the subject matter hereof.

\* \* \* \* \* \*

IN WITNESS WHEREOF, the Members have executed this Agreement as of the date first above written.

**MEMBERS:**

_____
Kai Jiang

# Hughes River FM, LLC

(the "LLC")

(State of Delaware)

## REGISTER OF MANAGER(S)

| DATE OF APPOINTMENT | FULL NAME - IDENTIFICATION NO. /REGISTRATION NO. | NATIONALITY/ PLACE OF INCORPORATION | ADDRESS | DATE CEASED TO ACT |
|---|---|---|---|---|
| 29.06.2018 | Kai Jiang | American / United States | 1100 JENSEN DRIVE, LAKE FOREST, Illinois 60045 | |

4563685v1/30946-0002