**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

<table>
<tr>
<td>

HUGHES RIVER FM, LLC,
*a Delaware limited liability company*,

                    Plaintiff,

               -against-

XIMALAYA, INC.,
*a Cayman Islands corporation*,
YU JIANJUN, *an individual*,
SEAMAN YU, *an individual*,
XIAOYU CHEN, *an individual*,
LI HAIBO, *an individual*,
and TENCENT MUSIC ENTERTAINMENT
GROUP, INC., *a Cayman Islands
corporation*,

                  Defendants.

</td>
<td>

Civil Case No. 1:25-cv-06217


Hon. Edmond E. Chang

**ORAL ARGUMENT REQUESTD**

</td>
</tr>
</table>

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT
<u>XIMALAYA, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................ 1

**ARGUMENT** ........................................................................................................................... 3

    **I.**     **XIMALAYA IS NOT SUBJECT TO GENERAL JURISDICTION IN ILLINOIS** ........... 3

    **II.**    **THERE IS NO SPECIFIC JURISDICTION OVER XIMALAYA IN ILLINOIS** ............. 7

    **III.**   **PLAINTIFF'S DERIVATIVE CLAIMS MUST BE DISMISSED FOR FAILURE TO COMPLY WITH RULE 23.1** ............................................................................................. 9

    **IV.**   **THE COURT SHOULD DISMISS THE FRAUD CLAIM AGAINST XIMALAYA FOR LACK OF PARTICLARITY AND FAILURE AS A MATTER OF LAW** ................................... 10

    **V.**    **PLAINTIFF'S NEW CLAIM FOR VICARIOUS LIABILITY IS MERITLESS** ............. 12

    **VI.**   **THE DOCTRINE OF *FORUM NON CONVENIENS* WARRANTS DISMISSAL** .......... 13

**CONCLUSION** ...................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abbott Lab'ys Infant Formula S'holder Derivative Litig.*,
No. 22 CV 05513, 2024 WL 3694533 (N.D. Ill. Aug. 7, 2024) ...............................................10

*ABC Corp. v. Partnerships & Unincorporated Associations Identified on Schedule A*,
No. 22-CV-7079, 2022 WL 18937941 (N.D. Ill. Dec. 19, 2022) ..............................................8

*ACUITY v. Roadtec, Inc.*,
No. 13-CV-6529, 2013 WL 6632631 (N.D. Ill. Dec. 16, 2013) .................................................5

*Adams v. Raintree Vacation Exchange, LLC*,
702 F.3d 436 (7th Cir. 2012) ...................................................................................................14

*Alera Grp., Inc. v. Houghton*,
No. 23 C 1109, 2024 WL 942627 (N.D. Ill. Mar. 5, 2024) .....................................................15

*Bogie v. Rosenberg*,
705 F.3d 603 (7th Cir. 2013) .....................................................................................................8

*Bordelais v. Kuhn*,
No. 19 CV 8348, 2023 WL 5934895 (N.D. Ill. Sept. 12, 2023), *appeal dismissed*, No. 23-3176, 2024 WL 5692002 (7th Cir. Dec. 31, 2024) .....................................8

*Borsellino v. Goldman Sachs Grp., Inc.*,
477 F.3d 502 (7th Cir. 2007) ...................................................................................................10

*Bridge v. New Holland Logansport, Inc.*,
815 F.3d 356 (7th Cir. 2016) .....................................................................................................6

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
230 F.3d 934 (7th Cir. 2000) .....................................................................................................6

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)..............................................................................................................2, 4

*DeLeo v. Swirsky*,
No. 00 C 6917, 2002 WL 989526 (N.D. Ill. May 14, 2002) .............................................9, 10

*G Six Consulting LLC v. Mullett*,
No. 2025 CV 2166, 2025 WL 2522757 (N.D. Ill. Sept. 2, 2025)..............................................1

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011).................................................................................................................7

iii

*Gruca v. Alpha Therapeutic Corp.*,
  19 F. Supp. 2d 862 (N.D. Ill. 1998) ................................................................................5

*Gutierrez v. Wemagine.AI LLP*,
  No. 21 C 5702, 2022 WL 252704 (N.D. Ill. Jan. 26, 2022) ........................................5

*In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*,
  No. 23-CV-0818, 2025 WL 1331791 (N.D. Ill. May 7, 2025) ....................................4

*Hyperquest, Inc. v. NuGen I.T., Inc.*,
  627 F. Supp. 2d 884 (N.D. Ill. 2008) .............................................................................7

*Instituto Mexicano del Seguro Soc. v. Zimmer Biomet Holdings, Inc.*,
  29 F.4th 351 (7th Cir. 2022) ........................................................................................15

*Kipp v. Ski Enter. Corp. of Wisconsin*,
  783 F.3d 695 (7th Cir. 2015) ..........................................................................................4

*Labuda v. Schmidt*,
  No. 04 C 1281, 2005 WL 2290247 (N.D. Ill. Sept. 19, 2005)....................................13

*Marks v. Worldwide Robotic Automated Parking, LLC*,
  No. 16-CV-8656, 2017 WL 2985757 (N.D. Ill. July 13, 2017)....................................5

*Miller v. Mercuria Energy Trading, Inc.*,
  291 F. Supp. 3d 509 (S.D.N.Y. 2018), *aff'd*, 774 F. App'x 714 (2d Cir. 2019).........6

*Nulogy Corp. v. Menasha Packaging Co., LLC*,
  76 F.4th 675 (7th Cir. 2023) .................................................................................3, 14, 15

*Schmees v. HC1.COM, Inc.*,
  77 F.4th 483 (7th Cir. 2023) .....................................................................................1, 12

*Smith v. CIty of Harvey*,
  No. 24-CV-03611, 2025 WL 437889 (N.D. Ill. Feb. 7, 2025) .....................................3

*Trinidad v. PDD Holdings, Inc.*,
  No. 23-CV-04786, 2024 WL 3177912 (N.D. Ill. June 26, 2024)..................................9

*Vitellaro v. City of Park Ridge*,
  No. 24-CV-04797, 2025 WL 2176961 (N.D. Ill. July 31, 2025)...................................4

*Volkswagen AG v. iman365-usa*,
  No. 18-CV-06611, 2020 WL 977969 (N.D. Ill. Feb. 28, 2020) (Chang, J.).................4

**Other Authorities**

5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1297
  (4th ed. 2012)................................................................................................................11

Fed. R. Civ. P. 23.1(b)(3)(B) ................................................................................................10

Ximalaya, Inc. ("**Ximalaya**") by and through its undersigned counsel, respectfully submits this Reply Memorandum of Law in further support of its Motion to Dismiss ("**Motion**")[1] Plaintiff Hughes River FM, LLC's ("**Hughes River**") Amended Complaint ("**AC**") and in response to Plaintiff's Memorandum of Law in Opposition ("**Opposition**," Dkt. 76). For the reasons set forth herein, Ximalaya respectfully requests the Motion be granted in its entirety.

<u>**PRELIMINARY STATEMENT**</u>

When convenient to support its arguments, Plaintiff ignores the allegations in the AC, and asserts new allegations wholly absent from the AC. The Opposition seeks to reconstruct the AC's alleged jurisdictional bases—which are insufficient to maintain this Action in Illinois—and replead the claims for fraud (Fifth Claim) and breach of fiduciary duty (Third Claim) against Ximalaya. These newly asserted allegations and arguments should be disregarded in their entirety as an improper attempt to amend a complaint through a brief in opposition to a motion to dismiss.[2] In any event, these new allegations do not redeem the AC's defective claims.

The Opposition urges the Court to exercise general jurisdiction over Ximalaya based on its alleged operation of a Chinese language website, isolated jurisdictional contacts of a Ximalaya subsidiary, and Ximalaya's proposed offering of American Deposit Shares ("**ADSs**") on the New York Stock Exchange ("**NYSE**") which offering was never made. *See* Opp. at 7-8. Plaintiff's request for jurisdiction defies controlling Supreme Court jurisprudence concerning the exercise of general jurisdiction: namely, a corporation can only be subject to general jurisdiction in two "paradigm all-purpose forums," i.e., its place of incorporation and principal place of business,

---

[1] Capitalized terms not defined shall have the same meanings prescribed to them in the Motion.
[2] *See, e.g.*, *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 489-90 (7th Cir. 2023) (arguments in an opposition brief that constitute "a new claim" are "generally impermissible," and "[i]t will rarely be appropriate" to present new claims for the first time in briefing); *G Six Consulting LLC v. Mullett*, No. 2025 CV 2166, 2025 WL 2522757, at *3 (N.D. Ill. Sept. 2, 2025) (holding "it is 'axiomatic' that a complaint may not be amended by a brief in opposition to a motion to dismiss").

barring exceptional circumstances. *See Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014). None of the alleged contacts are sufficiently continuous and systematic to support general jurisdiction over Ximalaya in Illinois. The Opposition further fails to cure the deficiencies concerning specific jurisdiction, despite asserting new allegations that Plaintiff acquired its shares in Ximalaya from a non-party individual in Illinois in 2017 and it purportedly assisted in Ximalaya's business expansion. *See* Opp. at 7, 15. Plaintiff again fails to explain how it could have purchased its shares in Ximalaya or helped with Ximalaya's business expansion, both alleged to have occurred in 2017, when Plaintiff was not incorporated until June 29, 2018. Nevertheless, Plaintiff's purported efforts to assist in Ximalaya's business expansion are wholly unrelated to its underlying claims for purposes of establishing specific jurisdiction and therefore insufficient to do so.

The Opposition also ignores the requirements of Rule 23.1 by failing to address the conflicting interests arising from Plaintiff's parallel individual claims asserted *against* Ximalaya and the derivative claims it asserts *on behalf of* Ximalaya. The Opposition fails to address demand futility under Cayman Islands law or satisfy its particularity requirement. Instead, it conclusorily dismisses the existence of five non-party independent Ximalaya directors as "irrelevant."

Moreover, the Opposition and AC both fail Rule 9(b)'s particularity requirement by omitting necessary allegations concerning who made which statements underlying the alleged fraud or when and where the alleged omissions of fact occurred. Despite the undisputed documentary evidence submitted by Ximalaya, Plaintiff continues to misinterpret the significance of the Carve-Out Business by asserting that Ximalaya failed to disclose it in 2017, even when the concept of Carve-Out Business did not then exist.

The Opposition also presents a new claim by arguing that Ximalaya is vicariously liable for unalleged breaches of fiduciary duty of *all* Board Members, whomever they may be, and

thereby effectively transforming Ximalaya from a derivative victim to a tortfeasor. *See* Opp. 14, 21-24. These assertions significantly deviate from the allegations in the AC which asserts that only the three named Individual Defendants[3] breached their fiduciary duty to Plaintiff. *See* AC ¶ 65. In any event, Plaintiff's legal theory is not recognized under Cayman Islands law, its cited authorities have been overruled or are irrelevant, and a personal claim by Plaintiff against Ximalaya's directors would be subject to mandatory arbitration. Finally, Plaintiff's reliance on *Nulogy* as a defense to the doctrine of *forum non conveniens* is misplaced.

## ARGUMENT

### I. XIMALAYA IS NOT SUBJECT TO GENERAL JURISDICTION IN ILLINOIS

Plaintiff changes tact and now bases its theory of general jurisdiction on new unpled facts: (i) Ximalaya's operation of a Chinese website[4]; (ii) sporadic contacts between Ximalaya's indirect Delaware subsidiary Himalaya Media, Inc. ("**Himalaya**") and Illinois; and (iii) Ximalaya's long withdrawn ADSs offering. *See* Decl. of Kai Jiang ("**Jiang Decl.**," Dkt. 76-1), Ex. B at 16, 172. Notably, the assertions concerning Himalaya are made for the first time in the Opposition after Ximalaya *corrected* Plaintiff's erroneous contention that Ximalaya operates an App which is available for download from the U.S. Apple Store or Google Play—when the App is in fact operated by Himalaya. *See* AC ¶ 5; Declaration of Jianjun Yu ("**Yu Decl.**," Dkt. 55-2) ¶ 15; Reply Declaration of Jianjun Yu ("**Yu Reply Decl.**") ¶ 25.

As a preliminary matter, this Court should exercise its discretion and decline to consider the new assertions made in the Opposition. *See, e.g.*, *Smith v. CIty of Harvey*, No. 24-CV-03611,

---

[3] Plaintiff apparently does not know the identity of Ximalaya's directors. It recently dismissed two defendants after learning that one of them never served as a director. Mot. at 10; Dkt. 74.
[4] Plaintiff attaches a screenshot of part of Ximalaya's website. Jiang Decl., Ex. D. The second half of the webpage, which provides Ximalaya's address in Shanghai and lists the Chinese business licenses necessary for its operation, is conspicuously omitted. Yu Reply Decl. ¶ 25.

2025 WL 437889, at *2 (N.D. Ill. Feb. 7, 2025) (considering "only facts as pled in the Complaint"); *Vitellaro v. City of Park Ridge*, No. 24-CV-04797, 2025 WL 2176961, at *4 (N.D. Ill. July 31, 2025) (same). In any event, these new assertions fail to establish general jurisdiction.

First, there can be no question that Ximalaya is not subject to general jurisdiction in Illinois due to its operation of a Chinese language website which is accessible to users outside of China. Other than in "exceptional" cases—which do not exist here—a corporation is not subject to general jurisdiction in any forum beyond the "paradigm all-purpose forums," i.e., its place of incorporation and principal place of business. *Daimler*, 571 U.S. at 118, 138-39, n. 19 (refusing to "approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business'" as "unacceptably grasping"). General jurisdiction "should not lightly be found," which "exists only when the organization is "essentially at home." *Kipp v. Ski Enter. Corp. of Wisconsin*, 783 F.3d 695, 698 (7th Cir. 2015) (internal citations omitted).

It is well established in the Seventh Circuit that "simply running a website that is accessible in all 50 states is not enough . . . to establish personal jurisdiction in the forum state." *In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, No. 23-CV-0818, 2025 WL 1331791, at *6 (N.D. Ill. May 7, 2025) (internal citations omitted); *see Volkswagen AG v. iman365-usa*, No. 18-CV-06611, 2020 WL 977969, at *3 (N.D. Ill. Feb. 28, 2020) (holding "because the Defendant is an internet store operating from China, it most certainly is not 'at home' in Illinois") (Chang, J.).

Contrary to Plaintiff's assertion (*see* Opp. at 10-11), *Curry v. Revolution Lab'ys, LLC* does not support jurisdiction over Ximalaya in Illinois. *Id*. 949 F.3d 385, 399 (7th Cir. 2020) (defendant "explicitly provided that Illinois residents could purchase its products through [its] website," and sent confirmations and shipped products to Illinois customers). Notably, the *Curry* court distinguished the defendant from other companies that "merely operate[] a website, even a 'highly

4

interactive' website, that is accessible from, but does not target, the forum state." *Id*. (quoting *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011)). Here, other than generally asserting that Ximalaya operates a Chinese language website which is accessible in Illinois and that a separate company "sells products and services belonging to Ximalaya" in Illinois (*see* Opp. at 8, 10-11), Plaintiff has offered no fact that could even remotely overcome the *prima facie* bar to establishing personal jurisdiction. *See Gutierrez v. Wemagine.AI LLP*, No. 21 C 5702, 2022 WL 252704, at *3 (N.D. Ill. Jan. 26, 2022) (declining to find personal jurisdiction over mobile App owner where the App was used by Illinois residents, and where owner "[wa]s not registered to do business in Illinois, ha[d] no employees in Illinois," and there was no evidence of "any Illinois-specific" activities).

Second, the limited jurisdictional contacts between Himalaya and Illinois are irrelevant and cannot be attributed to Ximalaya. Plaintiff does not allege that Himalaya[5] is subject to general jurisdiction in Illinois.[6] Plaintiff asserts no meaningful jurisdictional contacts between Himalaya and Illinois other than a few conclusory statements that Himalaya operates a website and a mobile App accessible to users across the U.S. *See ACUITY v. Roadtec, Inc.*, No. 13-CV-6529, 2013 WL 6632631, at *5 (N.D. Ill. Dec. 16, 2013) (no general jurisdiction based on defendant's operation of a website through which it offers subscriptions and sells products to Illinois consumers).

As a general rule, "the jurisdictional contacts of a subsidiary corporation are not imputed to the parent corporation." *Marks v. Worldwide Robotic Automated Parking, LLC*, No. 16-CV-8656, 2017 WL 2985757, at *5 (N.D. Ill. July 13, 2017) (refusing to find general jurisdiction based

---

[5] Himalaya is incorporated in Delaware and is registered to do business in California. Yu Reply Decl. ¶¶ 20-21.

[6] Plaintiff's argument that general jurisdiction over Ximalaya is proper due to its filings of consolidated financial statements with its subsidiary Himalaya, which also is not an Illinois company, is meritless. Opp. at 11; *see Gruca v. Alpha Therapeutic Corp.*, 19 F. Supp. 2d 862, 869 (N.D. Ill. 1998) (finding consolidated financial statements could not establish jurisdiction over parent where subsidiary maintained separate books and records). Likewise, the fact that its affiliates had offices in the U.S. (Opp. at 8) does not subject Ximalaya to jurisdiction in Illinois.

on the contacts of defendant's subsidiary where plaintiff "cannot establish that [the parent] exercises a high degree of control over [the U.S. subsidiary]" even though the subsidiary shares website with the parent and the two companies share a brand logo). The lack of factual basis here is striking. Plaintiff merely asserts that "[m]any of the products sold by" the Delaware subsidiary Himalaya "are the property of Ximalaya." *See* Opp. at 8. It asserts no fact suggesting Ximalaya exerted any level of control over Himalaya or would otherwise support piercing the corporate veil. *See, e.g., Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 947 (7th Cir. 2000) (refusing to order jurisdictional discovery "without any showing that the defendants exercised an unusually high degree of control over [subsidiary] or that corporate formalities were not substantially observed"); *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 364 (7th Cir. 2016) (declining to pierce the corporate veil where parent and subsidiary shared similar names, directors, employees, the same address, and a website).

Third, Plaintiff's reliance on Ximalaya's long withdrawn[7] ADSs offering and the proposed use of Citibank, N.A.[8] as the depositary (Opposition at 7, 11; Jiang Decl., Ex. B at 221) to establish general jurisdiction is insufficient. Federal courts have consistently declined to confer jurisdiction based on a defendant's ADSs offering. *Accord Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 523, n. 5 (S.D.N.Y. 2018), *aff'd*, 774 F. App'x 714 (2d Cir. 2019) (where the "only connection that either defendant has to New York is [defendant]'s ADRs. This contact is not enough, standing alone, to confer jurisdiction"); *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1307 (D. Del. 1990) (same). Nevertheless, there is no jurisdictional connection between the

---

[7] Plaintiff fails to disclose that the proposed ADSs offering was withdrawn less than five (5) months later, on September 9, 2021. *See* Yu Reply Decl. ¶ 27. It is preposterous for Plaintiff to allege that "Ximalaya banks at Citibank, N.A." (Opp. at 7; Jiang Decl. ¶ 30) when it was fully aware that Citibank was only the proposed depositary and the ADSs offering had been withdrawn.
[8] Plaintiff argues that Citibank "has several branches in . . . Illinois" (Opp. at 11), but ignores the disclosure that "Citibank's depositary offices are located at" New York. Jiang Decl., Ex. B at 221.

6

proposed ADSs listing on the NYSE and Illinois. In all premises, Plaintiff fails to make a *prima facie* case of general jurisdiction over Ximalaya.

## II.      THERE IS NO SPECIFIC JURISDICTION OVER XIMALAYA IN ILLINOIS

Plaintiff does not dispute that specific jurisdiction requires an "'affiliatio[n] between the forum and the underlying controversy,' principally, [an] activity or an occurrence that takes place in the forum State," and is therefore "confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal citations omitted). Plaintiff speculates that the Cayman Merger (a transaction between two Cayman Islands companies that are both headquartered in China) and Plaintiff's acquisition of its shares in Ximalaya (a transaction to which Ximalaya is not a party) are "intended to affect Illinois interests,"[9] but provides no supporting evidence. Opp. at 13. Plaintiff suggests that the Cayman Merger was "structured" to harm Illinois residents (*id*. at 12), even though it does not dispute that the Merger Agreement was negotiated and executed in China (Mot. at 3) and the transaction has no connection to Illinois other than the transmission of one email from Ximalaya to Mr. Jiang, who purports to have been in Illinois at the time the email was transmitted. AC ¶ 29. Plaintiff also does not dispute that Mr. Jiang attended four (4) in-person meetings in Shanghai shortly before and after the email was transmitted on April 16, 2025, including meetings held on April 10 and 22, thereby indicating his presence in Shanghai—not Illinois—during this period. Mot. at 3.

Contrary to the allegations of the AC and the documentary evidence submitted by Ximalaya, Plaintiff now asserts that it acquired its shares in Ximalaya in 2017, from a so-called

---

[9] Plaintiff's reliance on *Hyperquest, Inc. v. NuGen I.T., Inc.*, 627 F. Supp. 2d 884, 894 (N.D. Ill. 2008) is misplaced. Opp. at 13. There, the court expressly rejected the argument that activities "intended to affect Illinois residents" as "an impact theory," because it is "too speculative to show the requisite intent on behalf of the Defendants to affect an Illinois interest." *Id*.

7

founder, Dai Zhikang. Opp. at 15. Dai Zhikang is not a founder of Ximalaya, nor does the AC make any allegation concerning him. *See* Yu Reply Decl. ¶ 9; Jiang Decl., Ex. B at 6, 9. Further, Plaintiff does not explain how it could have entered that transaction in 2017 when it was not incorporated until June 29, 2018. Mot. at 2; Jiang Decl., Ex. A at 3. Indeed, Mr. Jiang's sworn declaration contradicts this allegation. *See* Jiang Decl. ¶¶ 13, 21 (stating Plaintiff invested in ZendaiFM LP on June 5, 2017 and "converted its stake in Ximalaya (*held via ZendaiFM, LP*) into a formal stock certificate" in July 2020) (emphasis added). This corroborates Ximalaya's evidence, including the STA, which conclusively establishes that Plaintiff acquired 5,078,577 Series B-1 Preferred Shares of Ximalaya from ZendaiFM LP in 2020. Mot. at 3; Yu Decl. ¶¶ 21-23; *see Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (ruling against plaintiff is justified "[w]hen an exhibit contradicts the allegations in the complaint").

In a feigned attempt to salvage jurisdiction, Plaintiff submits anecdotal evidence—a heavily edited document purporting to contain screenshots of WeChat communications involving Mr. Yu and Mr. Jiang. *See* Jiang Decl., Ex. C. That document, however, is inadmissible and appears wholly irrelevant to these issues. It is a "well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation." *ABC Corp. v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 22-CV-7079, 2022 WL 18937941, at *1 (N.D. Ill. Dec. 19, 2022) (internal citations omitted). Plaintiff did not provide certified translation of the WeChat communications.[10] In any event, the screenshots do not show that Mr. Yu had any involvement in Plaintiff's alleged investment in ZendaiFM LP in

---

[10] A statement by Mr. Jiang that the translations were "certified by me as a native Chinese speaker" does not meet this requirement. Jiang Decl., at ¶ 15; *see Bordelais v. Kuhn*, No. 19 CV 8348, 2023 WL 5934895, at *3 n. 7 (N.D. Ill. Sept. 12, 2023), *appeal dismissed*, No. 23-3176, 2024 WL 5692002 (7th Cir. Dec. 31, 2024) (ordering plaintiff to provide certified translation of a French judgment "with a sworn verification from a professional translator").

8

June 2017 or its acquisition of shares in Ximalaya in June 2020. *See* Jiang Decl., Ex. C at 6. In fact, the screenshots do not contain any communications from 2020. *See generally id*., Ex. C. Importantly, all the WeChat communications, except for a brief exchange in 2019 (*id*., Ex. C at 39), appear to have taken place in 2017, *before* Hughes River was incorporated. *See id*. Ex. A at 3. Further, there is no evidence supporting Plaintiff's assertion that Mr. Yu solicited Mr. Jiang's assistance in Ximalaya's business expansion in the U.S. and in Illinois. Opp. at 13. The cited WeChat screenshots do not contain any reference to Illinois. *See generally* Jiang Decl., Ex. C. In any event, any alleged attempts by Plaintiff to expand Ximalaya's business outreach in the U.S. or Illinois would not be connected to the underlying controversy and are insufficient to give rise to specific jurisdiction. *See Trinidad v. PDD Holdings, Inc.*, No. 23-CV-04786, 2024 WL 3177912, at *5 (N.D. Ill. June 26, 2024) (contacts unrelated to the underlying claim "are not relevant to a specific jurisdiction inquiry") (internal citations omitted).

### III.   PLAINTIFF'S DERIVATIVE CLAIMS MUST BE DISMISSED FOR FAILURE TO COMPLY WITH RULE 23.1

The Court should dismiss Plaintiff's derivative claims for failure to satisfy Rule 23.1.

Plaintiff fails to explain how it can fairly and adequately represent the interests of other Ximalaya shareholders and bring a derivative action on behalf of Ximalaya when it has asserted independent claims of fraud and breach of fiduciary duty *against Ximalaya* and Mr. Yu, including the newly asserted claim that Ximalaya is vicariously liable for the alleged breaches of fiduciary duty by its *entire* Board of Directors. Opp. at 14-15, 21-24; *see DeLeo v. Swirsky*, No. 00 C 6917, 2002 WL 989526, at *3 (N.D. Ill. May 14, 2002), *report and recommendation approved*, No. 00 C 6917, 2002 WL 1447855 (N.D. Ill. July 2, 2002). In a haste to circumvent the anti-antagonistic requirement, Plaintiff contends that the allegations underlying its derivative and individual claims "are entirely consistent." Opp. at 14. In so doing, Plaintiff ignores the fact that the circumstances

surrounding Plaintiff's acquisition of its shares in Ximalaya—which underlies its individual claims for fraud and breach of fiduciary duty against Ximalaya and Mr. Yu—are unique to Plaintiff and have no bearing on the derivative claims. *See* Mot. at 8-9. Plaintiff does not dispute that the more than $250,000 in damages it seeks from Ximalaya in relation to the fraud claim (Fifth Claim) would ultimately be borne by the other shareholders, thereby further justifying disqualification of Plaintiff and dismissal of its proposed derivative action. *See DeLeo*, 2002 WL 989526 at *6.

Moreover, Plaintiff fails to address the issue of demand futility under Cayman Islands law. *See* Mot. at 10; Henderson Decl. ¶¶ 53-60; *see also In re Abbott Lab'ys Infant Formula S'holder Derivative Litig.*, No. 22 CV 05513, 2024 WL 3694533, at *5-6 (N.D. Ill. Aug. 7, 2024). It instead argues, without any evidence, that all of the "Board Members . . . whoever they are[], control Ximalaya," and that the "fact that there are five independent directors is irrelevant." Opp. at 14. This is a remarkable shift from its original theory that only three individuals, namely Mr. Yu, Ms. Chen, and Mr. Li, who Plaintiff previously alleged collectively controlled the Board, were responsible for the alleged wrongdoing. AC ¶¶ 41-42. Plaintiff would now have the Court believe that Ximalaya's *entire* Board, "all of whom (whomever they were)"[11] are implicated. Opp. at 14-15. It does not dispute that the other five, non-party directors are independent or that it could have made a demand on them. Instead, Plaintiff asserts that their independency is "irrelevant," *id.* at 14, ignoring its burden to show demand futility with particularity. Fed. R. Civ. P. 23.1(b)(3)(B).

## IV. THE COURT SHOULD DISMISS THE FRAUD CLAIM AGAINST XIMALAYA FOR LACK OF PARTICLARITY AND FAILURE AS A MATTER OF LAW

Plaintiff does not allege that it satisfies Rule 9(b)'s particularity requirement by identifying "the who, what, when, where, and how," *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502,

---

[11] Plaintiff insists that all Board Members were involved in the alleged wrongdoing despite admitting that it did not know the identity of Ximalaya's directors when it filed the AC. *See* Jiang Decl. ¶ 8 (conceding Plaintiff does not know "the identity of the Board Members of Ximalaya").

10

507 (7th Cir. 2007), instead, it advocates a different pleading standard—one that only requires "sufficient identification of the circumstances constituting fraud." Opp. at 16. Plaintiff cites no binding authority articulating this standard, nor does its cited authority support its proposed relaxed standard. *Id.*; *see* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1297 (4th ed. 2012) (the circumstances of fraud including "the who, what, when, where, and how" must be stated with particularity). Rather than curing its pleading deficiencies, Plaintiff merely repeats the allegations of the AC. Opp. at 16-17. It provides no details about who made which statements concerning the Carve-Out Business, or when and where the alleged omissions of fact occurred. Instead, the Opposition asserts that Plaintiff acquired its shares in Ximalaya from a non-party Dai Zhikang in 2017, and that neither Mr. Dai nor Mr. Yu disclosed the ownership of the Carve-Out Business. Opp. at 15-16; Jiang Decl. ¶¶ 12-13. The Opposition does not explain Mr. Yu's involvement in Plaintiff's transaction with Mr. Dai,[12] what specific omissions were made by Mr. Yu or Mr. Dai, or where Mr. Yu or Mr. Dai was located when they made the alleged omissions.

Moreover, Plaintiff does not explain how any Defendant could have failed to disclose that the Carve-Out Business was not owned by Ximalaya in 2017 when Ximalaya owned the Carve-Out Business *at all relevant times and still does*. *See* Mot. at 12; Yu Decl. ¶ 43, Ex. 8. Plaintiff continues its meritless assertions concerning ownership of the Carve-Out Business (or what it asserts to be "Excluded Assets") despite the documentary evidence submitted by Ximalaya providing that the Carve-Out Business has been owned by Ximalaya at all relevant times. *See* Mot. at 3-4 (attaching an excerpt of the Merger Agreement and explaining that the two business segments defined as Carve-Out Business therein have always belonged to Ximalaya and still do). Plaintiff instead facetiously claims not to comprehend (Opp. at 18) the fact that Ximalaya only

---

[12] Plaintiff's submissions contradict its assertions. *See* Jiang Decl., Ex. C at 6.

agreed to "exclude" the two business segments from its assets pursuant to the Cayman Merger, and no assets were "excluded" in 2017 or 2020 when Plaintiff acquired its shares in Ximalaya. Plaintiff's response ignores the absence of an omission at the time of its purchase of its shares in Ximalaya which dooms its fraud claim.

## V. PLAINTIFF'S NEW CLAIM FOR VICARIOUS LIABILITY IS MERITLESS

In response to Ximalaya's expert testimony that a company cannot owe a fiduciary duty to its shareholder under Cayman Islands law (Mot. at 12), Plaintiff asserts a new claim providing that Ximalaya is vicariously liable for the breaches of fiduciary duty by all its directors, due to their "special factual relationship" with Plaintiff and certain shareholders. Opp. at 21-24. The Court should exercise its discretion to disregard the new argument and related factual allegations. *See, e.g.*, *Schmees*, 77 F.4th at 490. In any event, these new allegations and claims are meritless.

First, Plaintiff's proposed theory of a "special factual relationship" is unsupported and its cited authorities are either overruled or irrelevant. *See* Henderson Reply Decl. ¶¶ 9-13. Under Cayman Islands law, directors act as the company's agents, not the shareholders' agents. *Id*. ¶¶ 11-12. Second, Plaintiff fails to properly plead an agency relationship that would allow it to attribute liability to Ximalaya. *See id*. ¶¶ 14-20. Plaintiff offers no allegation "that might explain how the directors came to be acting as 'agents for certain shareholders rather than for the company as a whole.'" *Id*. ¶ 19. Neither does it point to controlling authorities that "analyze the relationship between a company and its directors in terms of 'vicarious liability.'" *Id*. ¶ 14. Although it is theoretically permissible for a shareholder to advance a personal action against the directors (*id*. ¶ 15), "[s]uch an action is essentially a claim for damages for breach of contract and is governed by Ximalaya's Shareholders Agreement" and therefore, subject to the mandatory arbitration clause therein. *Id*. Third, Plaintiff cannot invoke the doctrine of vicarious liability to transform Ximalaya from a victim to a tortfeasor. *Id*. ¶ 24. A properly constituted derivative action against the directors

12

"must necessarily" exclude a parallel personal action against Ximalaya. *Id*. Moreover, Plaintiff's reliance on foreign law without providing the underlying authorities or an expert declaration should be given no weight. *See Labuda v. Schmidt*, No. 04 C 1281, 2005 WL 2290247, at *6 (N.D. Ill. Sept. 19, 2005) ("expert testimony accompanied by extracts from foreign legal material is the preferred method by which foreign law is determined") (internal citations omitted).

## VI.     THE DOCTRINE OF *FORUM NON CONVENIENS* WARRANTS DISMISSAL

Plaintiff does not dispute that it is subject to the cited mandatory arbitration clause, nor does it dispute that public interest factors[13] weigh heavily in favor of dismissal. *See* Opp. at 18-21. Instead, it argues that Ximalaya cannot enforce the arbitration clause because it is not a party to the STA that contains the clause but suggests that arbitration in Hong Kong would be appropriate as a parallel proceeding "against the Board Members." *Id*.

The fact that Ximalaya is not a party to the STA further supports the dismissal of the fraud claim (Fifth Claim), because the alleged fraud arises out of Plaintiff's purchase of its shares in Ximalaya (AC ¶¶ 88-92)—a transaction in which Ximalaya played no part and which is governed by the STA. Mot. at 3, 11, 13-14. The arbitration clause in the STA, which is governed by Cayman Islands law, "manifest[s] the considered view of Hughes River, on the date it signed the STA, as to the most convenient forum for the resolution of disputes arising out of or in connection with the STA"; in other words, the clause "function[s] as concessions or admissions" by Plaintiff that the most convenient forum to resolve any disputes concerning its purchase of those shares is arbitral tribunal seated in Hong Kong. *Id*. at 13-14; Henderson Decl. ¶ 23. Plaintiff's fraud claim against Ximalaya is not only in the wrong forum, but against the wrong party. Mot. at 11. Plaintiff "cannot

---

[13] Plaintiff fails to address the multiple public interest factors discussed in Ximalaya's Motion. Mot. at 14-15. Instead, it presumes that the designation of a non-party to the Chinese Military Companies List would somehow result in an unfair trail in Hong Kong. Opp. at 20.

subvert its agreement" by naming defendants who are not parties to the arbitration clauses.[14]
*Nulogy Corp. v. Menasha Packaging Co., LLC*, 76 F.4th 675, 681 (7th Cir. 2023).

Plaintiff's reliance on *Nulogy* is misplaced.[15] In *Nulogy*: (i) prior to commencing its action in Illinois, the plaintiff dismissed its claims against Deloitte in Canadian court due to Deloitte's insistence that "it was not subject to jurisdiction in Canada; rather the United States offered the proper forum;" (*id*. at 679); (ii) Deloitte did not seek dismissal on the ground of *forum non conveniens*; (*id*. at 681-82); and (iii) Deloitte continued to insist that it was not amenable to suit in the proposed alternate forum (Canada). *Id*. at 678. The Seventh Circuit undertook to reconcile the parties' conflicting choices of forum with the judicial preference against piecemeal litigation but was forced to keep Deloitte in Illinois court due to Deloitte's relentless assertion that Canadian courts had no jurisdiction over it. *Id*. at 682 (noting the "threat of piecemeal litigation weighs in favor of dismissing the claims against Deloitte, but Deloitte's insistence that Canadian courts lack jurisdiction counsels against dismissing it"). At bottom, the *Nulogy* court's decision not to dismiss Deloitte was not an acknowledgment that Illinois is the proper forum but a reluctance to release Deloitte in the absence of an alternative forum. *See id*. at 682-83 ("The claims against Deloitte should remain in the United States until and unless it can show a more convenient forum exists."). Notably, the "piecemeal litigation" proposed by Plaintiff is precisely the reason why the *Nulogy* court advised against keeping the action in Illinois. *Id*. at 682.

---

[14] Plaintiff's breach of fiduciary duty claim against any Ximalaya director is governed by the Shareholders Agreement and subject to mandatory arbitration in Hong Kong. *See* Henderson Decl. ¶ 49. As a party to that agreement, Ximalaya could undoubtedly enforce the arbitration clause. *See Nulogy*, 76 F.4th at 682 (considering *Adams v. Raintree Vacation Exchange, LLC*, 702 F.3d 436 (7th Cir. 2012)); *see supra* § V.

[15] Plaintiff's shameless implied accusation against counsel under Rule 3.3 is egregious. Opp. at 19. *Nulogy* is not "directly adverse" to Ximalay's position; it supports dismissal under the doctrine of *forum non conveniens*. *See* 2010 Ill. Rules of Prof'l Conduct 3.3(a)(2) (requiring disclosure of controlling authority known "to be directly adverse to the position of the client").

Unlike Deloitte, none of the Defendants in this Action have asserted that only U.S. courts can exercise jurisdiction over them. Further, Ximalaya relies upon the doctrine of *forum non conveniens* as a ground for dismissal and explains that under the governing agreements Plaintiff unequivocally chose Hong Kong as its desired forum to resolve any disputes, including the disputes before this Court. *See* Mot. at 13. The juridical preference against piecemeal litigation further supports dismissal. *See Nulogy*, 76 F.4th at 682; *cf. Alera Grp., Inc. v. Houghton*, No. 23 C 1109, 2024 WL 942627, at *7 (N.D. Ill. Mar. 5, 2024) (unlike *Nulogy*, severance of claims "does not make sense because the jurisdictional concerns . . . would not be cured by transfer").

Plaintiff's argument that there would be no "practical obstacles"[16] to litigate in Illinois is disingenuous. It conveniently omits the important factors in favor of dismissal: all defendants, potential witnesses, and a significant amount of evidence are located in China or Cayman Islands; this dispute involves issues arising under Cayman Islands law and possibly Hong Kong law; and Plaintiff has conceded on multiple occasions that arbitration in Hong Kong is the most convenient and desirable forum; among others.[17] *See* Henderson Decl. ¶¶ 29-33; *see also Instituto Mexicano del Seguro Soc. v. Zimmer Biomet Holdings, Inc.*, 29 F.4th 351, 359 (7th Cir. 2022) (private interest factors "tilt strongly towards dismissal" where "the bulk of witnesses and evidence are located in Mexico" and the "contracts were executed in Mexico between Mexican parties").

## CONCLUSION

For the foregoing reasons, Defendant Ximalaya respectfully requests that the Court Dismiss the AC against Ximalaya in its entirety with prejudice.

---

[16] Plaintiff admits that Ximalaya warned investors that their ability to protect their rights "through U.S. courts may be limited." Jiang Decl. ¶ 50, Ex. B at 62 (omitting reference to U.S. courts).
[17] Plaintiff cannot rely on *In re Hudson*. *Id*. 710 F.3d 716, 719 (7th Cir. 2013) (denying plaintiff's choice of forum in Illinois and upholding the transfer under the venue statute 28 U.S.C. § 1404(a)).

Dated: October 17, 2025

RESPECTFULLY SUBMITTED,

By: /s/ *Vincent Filardo, Jr.*
Vincent Filardo, Jr. *(pro hac vice)*
Andrew Sklar *(pro hac vice)*
Yi He *(pro hac vice)*
King & Wood Mallesons LLP
500 Fifth Avenue, 50th Floor
New York, NY 10110
(212) 319-4755
vincent.filardo@us.kwm.com
andrew.sklar@us.kwm.com
yi.he@us.kwm.com

Kenneth J. Vanko
Clingen Callow & McLean, LLC
2300 Cabot Drive, Suite 500
Lisle, Illinois 60532
(630) 871-2609
vanko@ccmlawyer.com

*Counsel for Defendant Ximalaya, Inc.*

16

**CERTIFICATE OF SERVICE**

I certify that on October 17, 2025, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system, which will send notification of such filings to all registered

users.


Dated: October 17, 2025


                                          */s/ Vincent Filardo, Jr.*
                                          Vincent Filardo, Jr.